| | | |
|---|---|---|
| AMERICAN CIVIL LIBERTIES | § | |
| UNION and THE AMERICAN CIVIL | § | |
| LIBERTIES UNION FOUNDATION, | § | |
| | § | |
| Plaintiffs, | § | 15 Civ. 1954 (CM) |
| | § | |
| v. | § | |
| | § | |
| DEP'T OF JUSTICE, et al., | § | |
| | § | |
| Defendants. | § | |
| | § | |

## SECOND DECLARATION OF JOHN F. HACKETT

Pursuant to 28 U.S.C. § 1746, I, John F. Hackett, declare and state as follows:

1.    I am the Director of the Office of Information Programs and Services ("IPS") of the United States Department of State (the "Department"). In this capacity, I am the Department official immediately responsible for responding to requests for records under the Freedom of Information Act (the "FOIA"), 5 U.S.C. § 552, the Privacy Act of 1974, 5 U.S.C. § 552a, and other applicable records access provisions. I have been employed by the Department in this capacity since June 2015. Prior to assuming this role, I served as the Acting Director of IPS since April 2014 and Deputy Director since April 2013. I make the following statements based upon my personal knowledge, which in turn is based upon information furnished to me in the course of my official duties. I am familiar with the efforts of Department personnel to process the subject request, and I am in charge of coordinating the agency's search and review efforts with respect to the FOIA request at issue in this case.

2.     The core responsibilities of IPS include: (1) responding to records access requests made by the public (including under the FOIA, the Privacy Act, and the mandatory declassification review requirements of the Executive Order governing classified national security information), by members of Congress, by other government agencies, and those made pursuant to judicial process such as subpoenas, court orders, and discovery requests; (2) records management; (3) privacy protection; (4) national security classification management and declassification review; (5) corporate records archives management; (6) research; (7) operation and management of the Department's library; and (8) technology applications that support these activities.

3.     This declaration is in support of the Department's motion for summary judgment with respect to (a) the adequacy of its searches and (b) the withholding of records responsive to items 1 and 2 of the subject request that were identified in the described searches. The government's classified, *ex parte* index provides a detailed description of the particular documents and information withheld and the justifications for those withholdings.

## I. THE ADMINISTRATIVE PROCESSING OF PLAINTIFFS' FOIA REQUEST

4.     On October 15, 2013, the American Civil Liberties Union and the American Civil Liberties Union Foundation (collectively, the "ACLU" or "Plaintiffs") submitted a request for records under the FOIA (Exhibit 1) seeking access, in pertinent part, to:

> 1.     Any and all records pertaining to the legal basis in domestic, foreign, and international law upon which the government may use lethal force against individuals or groups, including any record indicating which groups are considered to be "associated forces" of Al-Qaeda under the Authorization for Use of Military Force ... .

2

2.      Any and all records pertaining to the process by which the government designates individuals or groups for targeted killing, including who is authorized to make such determinations and against what evidentiary standard factual evidence is evaluated to support such designations.  Specifically included in this Request is the counterpart to the Presidential Policy Guidance, which Attorney General Holder described in his May 2013 letter to Congress ... .

3.      Any and all records pertaining to before-the-fact assessments of civilian or bystander casualties in targeted-killing strikes and any and all records concerning "after action" investigations into individual targeted-killing strikes.

4.      Any and all records pertaining to the number and identities of individuals killed or injured in targeted-killing strikes, including but not limited to records regarding the legal status of those killed or injured, with these separated out by individuals intentionally targeted and collateral casualties or injuries.

The ACLU also sought expedited processing of the request and a waiver of search, review, and duplication fees.

5.      By letter dated October 18, 2013 (Exhibit 2), IPS acknowledged receipt of the ACLU's request and assigned it case tracking number F-2013-17715.  In this letter, IPS denied the ACLU's request for expedited processing, stating that the ACLU had failed to demonstrate a compelling need for the requested records.  IPS granted the ACLU's request for a fee waiver.

6.      By letter dated November 6, 2013 (Exhibit 3), the ACLU appealed the denial of expedited processing.  By letter dated December 3, 2013 (Exhibit 4), IPS informed the ACLU that it had reconsidered its earlier determination and would grant expedited processing of the request.

3

7. In a letter dated February 20, 2014 (Exhibit 5), IPS asked the ACLU to clarify the scope of the request and suggested certain modifications. The ACLU responded in a letter dated March 10, 2014 (Exhibit 6), and both clarified and agreed to modify certain aspects of the request. Specifically, the ACLU confirmed that it does not seek publicly available materials in the possession of the Department that might be responsive to the ACLU's request; agreed, with respect to item 1 of the request, to limit the Department's search to records relating to the "legal basis for counterterrorism strikes targeting individuals outside of Iraq and Afghanistan"; agreed, also with respect to item 1 of the request, that the Department could "exclude records dated on or before the end date of its searches for records responsive to the ACLU's January 13, 2009 request for records" at issue in *ACLU v. CIA*, No. 1:10-cv-436 (D.D.C.); and clarified, with respect to item 2 of the request, that it was "limited to records pertaining to the process described in the penultimate paragraph of Attorney General Holder's May 22, 2013 letter to Senator Patrick Leahy and other members of Congress."

8. On March 16, 2015, Plaintiffs filed the instant lawsuit against the Department and other defendant agencies seeking the release of records sought in their October 15, 2013 request.

9. By e-mails dated June 4 and June 24, 2015, to the Department of Justice (Exhibit 7), the ACLU further clarified and modified certain aspects of the request. In particular, the ACLU agreed that the request "excludes records already processed in connection with [the ACLU's] FOIA requests that are currently the subject of litigation before Judge McMahon and Judge Collyer"; clarified that item 1 of the request is limited to strikes against "al Qaeda, the Taliban, associated forces, or any other organization the State Department, Defense Department, or CIA consider to be a terrorist organization, whatever the source of authority for the strike,

4

outside of Afghanistan, Iraq and Syria"; agreed, with respect to items 1 and 2 of the request, to exclude "drafts of documents that were eventually finalized, but only where the final versions of the drafts have been disclosed to us or are listed individually on the relevant agency's public Vaughn index"; agreed to exclude "documents created by other defendant agencies, but only where the documents have been disclosed to us or are listed individually on the other agency's public Vaughn index"; agreed to exclude all documents created for purposes of litigation or in connection with the processing or litigation of FOIA requests; and agreed to exclude documents relating to the raid that resulted in the death of Osama bin Laden.

10. By order dated July 9, 2015 (the "July 9 Order"), the Court stayed the defendant agencies' obligation to respond to items 3 and 4 of the request. The July 9 Order also stated that the Court "will not require the Government to produce in this lawsuit documents responsive to the FOIA requests made in the predecessor lawsuits that [it has] been handling for the past three years," also noting that "[t]o the extent that the FOIA requests in this lawsuit can reasonably be interpreted to include documents that were listed on the Vaughn Indices in those lawsuits, the court intends to dismiss those requests as duplicative and barred by *res judicata* without undergoing yet another round of document-by-document analysis." The Court further stated that the instant summary judgment motion "can, therefore, be limited to documents responsive to [items] (1) and (2) of [Plaintiffs' request] that were not identified as responsive to the requests in *New York Times/ACLU I*."

## II. THE DEPARTMENT'S SEARCHES

11. When the Department receives a FOIA request, IPS evaluates the request to determine which offices, overseas posts, or records systems elsewhere within the Department

5

may reasonably be expected to contain the records requested. This determination is based on the description of the records requested and requires a familiarity with the holdings of the Department's records systems, applicable records disposition schedules, and the substantive and functional mandates of numerous Department offices and Foreign Service posts and missions.

12.     Each office within the Department, as well as each Foreign Service post and mission, maintains files concerning foreign policy and other functional matters related to the daily operations of that office, post, or mission. These files consist generally of working copies of documents, information copies of documents maintained in the Department's Central Foreign Policy Records collection, and other documents prepared by or furnished to the office in connection with the performance of its official duties, as well as electronic copies of documents and e-mail messages.

13.     The Department initially determined, based on a review of Plaintiffs' request, that more than sixteen offices or records systems worldwide could potentially possess responsive records, and it tasked searches of these offices and records systems accordingly. This determination—and the breadth of the searches initially tasked by the Department—turned on the Department's initial reading of item 1 of the request as including not only any records that might address the legal basis for covered strikes in an abstract manner, but also any records that referred to the legal basis in connection with particular facts. However, upon the completion of searches of some of these offices and records systems, which resulted in the retrieval of tens of thousands of potentially responsive records, the Department determined that its originally-tasked searches were overly broad. After further reviewing Plaintiffs' request, and taking into account the Court's July 9 Order staying the defendant agencies' obligation to respond to items 3 and 4

6

of the request, the Department re-evaluated its interpretation of item 1 of the request and determined that it was reasonable to interpret this item to encompass only those records that pertain to the legal basis of covered strikes as a general matter, but not records that simply refer to such legal basis as applied to the facts of a particular strike or that simply reiterate the applicable legal basis or standards.

14.     Based on this determination, the Department concluded that it was reasonable to focus its further search efforts on records retrieved in its searches of two offices:  the Bureau of Intelligence and Research and the Office of the Legal Adviser.  Additionally, with respect to the Office of the Legal Adviser's search results, the Department concluded, based on the subject matter at issue and an understanding of the systems typically used by the Office of the Legal Adviser when addressing the subject matter covered by Plaintiffs' request, that it was reasonable to focus its search efforts on documents retrieved from the office's TOP SECRET electronic files. The work of identifying responsive records was substantial even with this narrowed focus and involved the review of an estimated 8,000 potentially responsive records or more that had been retrieved in the Department's searches of the Bureau of Intelligence and Research and the Office of the Legal Adviser (those searches are described in greater detail below).  The Department determined that a reasonable method for identifying responsive records within this large volume of records from these two offices was to review the search results document by document to identify:  (1) with respect to item 1 of the request, records pertaining to the legal basis of covered strikes as a general matter, but not records that simply refer to such legal basis as applied to the facts of a particular strike or that simply reiterate an aspect or aspects of the applicable legal basis or standards; and (2) with respect to item 2 of the request, the Presidential

7

Policy Guidance (the "PPG") itself, as well as records that elaborate on or interpret the policy standards and procedures set forth in the PPG (but not records that simply reiterate the PPG's policy standards or procedures without elaborating on or interpreting them). After de-duplicating the records identified as a result of the Department's efforts against those identified by other defendant agencies and excluding drafts of documents that were eventually finalized where the final versions had been identified by one of the defendant agencies, and after undergoing a further review for responsiveness, 26 records retrieved in the Department's searches were determined to be responsive to Plaintiffs' request. The withholdings of information in the 26 responsive records identified in this manner by the Department among the search results retrieved from the Bureau of Intelligence and Research and the Office of the Legal Adviser are described in greater detail in the government's detailed, classified, *ex parte* index that accompanies the government's motion for summary judgment. Additionally, attached as an exhibit to my declaration is an unclassified index covering these 26 records (Exhibit 8) that, due to the sensitivity of the documents at issue, is necessarily less detailed.

### The Search of the Bureau of Intelligence and Research

15.     The primary mission of the Bureau of Intelligence and Research ("INR") is to harness intelligence to serve U.S. diplomacy. Drawing on all-source intelligence, INR provides independent analysis of events to Department policymakers; ensures that intelligence activities support foreign policy and national security purposes; and serves as the focal point in the Department for ensuring policy review of sensitive counterintelligence and law enforcement activities around the world.

8

16.     A Department employee who is knowledgeable about both the FOIA request at issue and INR's records systems determined that the only INR component reasonably likely to maintain responsive records was the Office of Intelligence Operations ("INR/OPS").

17.     Among other responsibilities, INR/OPS coordinates the Department's review of sensitive civilian and military intelligence operations and programs, and it acts as INR's focal point for liaison with the Central Intelligence Agency and the Defense Intelligence Agency, including Defense Attachés abroad.

18.     An Intelligence Operations Officer in INR/OPS coordinated a search of the office's paper records.[1] The paper files of INR/OPS are organized by date and subject matter. The Intelligence Operations Officer manually searched INR's paper files for all records potentially responsive to the subject FOIA request and segregated the potentially responsive material for further review.  The date range applied to INR's search was September 15, 2009 (the end date of INR's search in response to the ACLU's January 13, 2009 request for records at issue in *ACLU v. CIA*, No. 1:10-cv-436 (D.D.C.)) through May 15, 2015 (the date INR initiated its search for records responsive to the instant request).  The INR search identified hundreds of potentially responsive records.

### The Search of the Office of the Legal Adviser

19.     The Office of the Legal Adviser ("L") furnishes advice on legal issues, domestic and international, arising in the course of the Department's work.  This includes assisting Department principals and policy officers in formulating and implementing the foreign policies of the United States, and promoting the development of international law and its institutions as a

---

[1] The Intelligence Operations Officer determined that the office's paper files were the only files in INR/OPS reasonably likely to contain responsive records.

9

fundamental element of those policies. The office is organized to provide direct legal support to the Department's various bureaus, including both regional and geographic offices (those that focus on specific areas of the world) and functional offices (those that deal with specific subject matters such as economics and business affairs, international environmental and scientific issues, or internal Department management).

20.     Five individuals in L were identified as reasonably likely to possess records responsive to the ACLU's request: three individuals in L's Office for Political-Military Affairs ("L/PM"), one individual in L's Office for Human Rights and Refugees ("L/HRR"), and one individual in L's "Front Office" (L's leadership). The four individuals in L/PM and L's leadership searched all e-mail and other electronic files on their classified and unclassified systems that were reasonably likely to contain responsive records using the following separate search terms: "nomination"; "lethal force"; "targeted kill*"; "PPG"; "policy guidance"; "OBJ"; "package"; "legal op*"; "targeted action"; "bystander casualties"; "civilian casualties"; and "associated force."[2] One individual in L/PM also manually searched all paper files in his custody that were reasonably likely to contain counterterrorism records and reviewed the documents in those files one-by-one for potentially responsive records. The date range applied by these four individuals to their searches was October 26, 2010 (the end date of L's search in response to the ACLU's January 13, 2009 request for records at issue in *ACLU v. CIA*, No. 1:10-cv-436 (D.D.C.)) through July 13, 2015 (the date on which L initiated its search for records responsive to the instant request).

---

[2] The asterisk (*) acts as a wildcard for any number of characters; thus, a search for "kill*" will retrieve "kill," "killed," "killing," etc.

*ACLU v. Dep't of Justice, et al.*
Second Hackett Declaration
Civil Action No. 1:15-cv-1954 (CM)

21.     The individual in L/HRR searched unclassified and classified e-mails and archived e-mails using the search terms "counterterrorism strike" and "drone," applying the date range of January 1, 2009 to June 1, 2015 (the date on which this individual initiated this search). This individual determined that there were no relevant paper files to be searched for material responsive to this request. There are no other paper files in L that are reasonably likely to contain responsive records. The L searches identified thousands of potentially responsive records.

## III. EXEMPTIONS CLAIMED

22.     As noted above, 26 records retrieved in the Department's searches were determined to be responsive to Plaintiffs' request. All 26 of these records are being withheld in full under one or more of the FOIA's exemptions. With respect to the records withheld in full, 23 records contain information withheld under Exemption 1, 5 U.S.C. § 552(b)(1); 16 records contain information withheld under Exemption 3, 5 U.S.C. § 552(b)(3), pursuant to Section 102A(i)(1) the National Security Act of 1947, 50 U.S.C. § 3024(i)(1); and 25 records contain information withheld under Exemption 5, 5 U.S.C. § 552(b)(5), pursuant to the deliberative process, attorney-client, and/or presidential communications privileges. The exemptions applicable to the withholdings of information in the 26 responsive records identified by the Department that are being withheld in full are described in greater detail below and in the government's classified, *ex parte* index. Additionally, as noted above, Exhibit 8 to my declaration is an unclassified index covering these 26 records that, due to the sensitivity of the documents at issue, is necessarily less detailed.

11

## FOIA Exemption 1 – Classified Information

23.    5 U.S.C. § 552(b)(1) states that the FOIA does not apply to matters that are:

> (A) specifically authorized under criteria established by an
> Executive order to be kept secret in the interest of national defense
> or foreign policy and (B) are in fact properly classified pursuant to
> such Executive order … .

24.    The information withheld under the Exemption 1, 5 U.S.C. § 552(b)(1), continues

to meet the classification criteria of E.O. 13526. This information includes information

classified at the SECRET and TOP SECRET levels. Section 1.2 of Executive Order ("E.O.")

13526 states:

> (1) "Top Secret" shall be applied to information, the unauthorized
> disclosure of which reasonably could be expected to cause
> exceptionally grave damage to the national security that the
> original classification authority is able to identify or describe.
>
> (2) "Secret" shall be applied to information, the unauthorized
> disclosure of which reasonably could be expected to cause serious
> damage to the national security that the original classification
> authority is able to identify or describe.

25.    Section 6.1(l) of E.O. 13526 defines "damage to the national security" as follows:

> "Damage to the national security" means harm to the national
> defense or foreign relations of the United States from the
> unauthorized disclosure of information, taking into consideration
> such aspects of the information as the sensitivity, value, utility, and
> provenance of that information.

12

26.     Information withheld in this case under Exemption 1 is properly classified

pursuant to Sections 1.4(a), 1.4(b), 1.4(c), and/or 1.4(d) of E.O. 13526.[3] Section 1.4 provides:

> Information shall not be considered for classification unless . . . it pertains to one or more of the following: (a) military plans, weapons systems, or operations; (b) foreign government information; (c) intelligence activities (including covert action), intelligence sources or methods, or cryptology; (d) foreign relations or foreign activities of the United States, including confidential sources ... .

27.     For information to be properly classified, and thus properly withheld from

disclosure pursuant to Exemption 1, the information must meet all of the following requirements

set forth in Section 1.1(a) of E.O. 13526:

> (1)     an original classification authority is classifying the information;
> (2)     the information is owned by, produced by or for, or is under the control of the United States Government;
> (3)     the information falls within one or more of the categories listed in section 1.4 of [E.O. 13526]; and
> (4)     the original classification authority determines that the unauthorized disclosure of the information reasonably could be expected to result in damage to the national security, which includes defense against transnational terrorism, and the original classification authority is able to identify or describe the damage.

28.     As I explain in further detail below, in my role as an original classification

authority, I have determined that the information withheld pursuant to Exemption 1 is under the

control of the United States Government, falls within one or more of the categories listed in

Section 1.4 of E.O. 13526, and requires classification at the SECRET or TOP SECRET level

because its unauthorized disclosure reasonably could be expected to cause serious damage or

---

[3] I am informed that the classification of information in these documents is also addressed in the declaration of Martha Lutz.

13

exceptionally grave damage to the national security. In addition to these substantive requirements, certain procedural and administrative requirements of E.O. 13526 must be followed before information can be considered properly classified, such as proper identification and marking of documents. I confirmed that all procedural requirements of E.O. 13526 were followed in order to ensure that the information was properly classified. Specifically, I confirmed that:

a. Each document was marked as required with the proper classification designation;
b. Each document was marked to indicate clearly which portions are classified and which portions are unclassified as set forth in Section 1.5(c) of E.O. 13526;
c. The classification criteria of Section 1.4 of E.O. 13526 and the classification duration criteria of Section 1.5 of the Executive Order were adhered to;
d. The declassification policies set forth in Sections 3.1 and 3.3 of E.O. 13526 were followed; and
e. Any reasonably segregable portion of these classified documents that did not meet the standards for classification under E.O. 13526 were declassified and marked for release, unless withholding was otherwise warranted under applicable law.

### Section 1.4(a) – Military Plans, Weapons, or Operations

29. The national security of the United States depends on its ability to protect its military interests both domestically and overseas. Some of the information withheld in this case is classified under Section 1.4(a) of E.O. 13526. This information discusses military plans, systems, operations, or relationships, including with respect to particular foreign countries, which, if disclosed, could reasonably be expected to compromise our national security. In particular, release of information regarding the details of those relationships, as well as the military capabilities and limitations of these nations, would jeopardize our defense posture. For this reason, the Department withheld information in this case that is currently and properly

14

classified pursuant to Section 1.4(a) of E.O. 13526 and is therefore exempt from release under

FOIA Exemption 1, 5 U.S.C. § 552(b)(1).

## Section 1.4(b) – Foreign Government Information

30.     Section 6.1(s) of E.O. 13526 defines "foreign government information" as

follows:

> "Foreign government information" means:
>
> (1) information provided to the United States Government by a foreign government or governments, an international organization of governments, or any element thereof, with the expectation that the information, the source of the information, or both, are to be held in confidence;
>
> (2) information produced by the United States Government pursuant to or as a result of a joint arrangement with a foreign government or governments, or an international organization of governments, or any element thereof, requiring that the information, the arrangement, or both, are to be held in confidence
> … .

31.     The ability to obtain information from foreign governments is essential to the

formulation and successful implementation of U.S. foreign policy.  Release of foreign

government information provided in confidence, either voluntarily by the Department or by

order of a court, would cause foreign officials to believe that U.S. officials are not able or willing

to observe the confidentiality expected in such interchanges.  Governments could reasonably be

expected to be less willing in the future to furnish information important to the conduct of U.S.

foreign relations, and in general be less disposed to cooperate with the United States in the

achievement of foreign policy objectives of common interest.  Protecting foreign government

*ACLU v. Dep't of Justice, et al.*
Second Hackett Declaration
Civil Action No. 1:15-cv-1954 (CM)

information, and in some cases even the fact that information has been provided, is critical to our diplomatic relationships and the conduct of foreign relations. Certain information withheld in this case is currently and properly classified pursuant to Section 1.4(b) of E.O. 13526 and is therefore exempt from disclosure under Exemption 1, 5 U.S.C. § 552(b)(1).

### Section 1.4(c) – Intelligence Activities, Intelligence Sources or Methods, or Cryptology

32.     Some of the information withheld in this case under Exemption 1 is properly classified under Section 1.4(c) of E.O. 13526. E.O. 13526 recognizes that certain information must be protected because disclosure would harm national security by compromising sensitive intelligence sources and methods and permitting adversaries to thwart U.S. intelligence collection and counterterrorism measures. For these reasons, this information is currently and properly classified pursuant to Section 1.4(c) of E.O. 13526 and is therefore exempt from disclosure under Exemption 1, 5 U.S.C. § 552(b)(1).

### Section 1.4(d) – Foreign Relations or Foreign Activities of the United States

33.     Some of the information withheld in this case under Exemption 1 is properly classified under Section 1.4(d) of E.O. 13526. E.O. 13526 recognizes that certain information pertaining to U.S. foreign relations and foreign activities must be protected because its disclosure has the potential to harm national security (which, in turn, is defined in the E.O. as the "national defense or foreign relations of the United States").

34.     Confidentiality is a vital aspect of successful foreign relations. This includes the confidentiality of diplomatic exchanges and information about the nature of other countries' engagement with the United States, when undertaken with an expectation of confidentiality. It

16

also includes the ability of U.S. government officials to engage in non-public evaluations of the United States' relationships with specific countries and leaders, without fear that the information would become public and cause damage to those very relationships. Mutual trust between governments is vital to U.S. foreign relations. The inability of the United States to maintain confidentiality in its diplomatic exchanges would inevitably chill relations with other governments and could reasonably be expected to damage U.S. national security by diminishing our access to vital sources of information. Within the U.S. government, it is likewise crucial that the Department be able to provide policymakers with candid assessments of the various nations with which the United States conducts foreign relations without fear that those internal assessments will be made public. Disclosure of the Department's internal assessments of bilateral relations could reasonably be expected to damage the mutual trust upon which successful foreign relations depends.

35.     The Department withheld information in this case pursuant to Exemption 1 that relates to the foreign relations or foreign activities of the United States and the disclosure of which reasonably could be expected to cause damage to national security. The withheld information concerns sensitive aspects of U.S. foreign relations, including issues relating to identifying potential threats to U.S. national security in various regions of the world and efforts to counter those threats. In particular, information withheld under Exemption 1 and classified under Section 1.4(d) includes discussions of sensitive national security topics involving the advancement of United States strategic interests in various regions, as well as candid assessments of the U.S. government's bilateral relationships with countries in those regions. Release of this classified information has the potential to inject friction into, or cause damage to, a number of

17

our bilateral relationships with countries whose cooperation is vital to U.S. national security, including some in which public opinion might not currently favor close cooperation with the United States. Finally, disclosure of sensitive information pertaining to U.S. strategic interests in these regions could compromise the ability of the United States to advance those interests through its foreign policy. Release of information withheld in this case under Section 1.4(d) could pose a particular threat to the national security of the United States in light of the political and security instability in the regions in question. For these reasons, the Department withheld information in this case that is currently and properly classified pursuant to Section 1.4(d) of E.O. 13526 and is therefore exempt from release under Exemption 1, 5 U.S.C. § 552(b)(1).

## FOIA Exemption 3 – Exempt by Statute

36.     Title 5 U.S.C. § 552(b)(3) states that the FOIA does not apply to matters that are:

> specifically exempted from disclosure by statute (other than section 552(b) of this title), provided that such statute (A) requires the matters be withheld from the public in such a manner as to leave no discretion on the issue or (B) establishes particular criteria for withholding or refers to particular types of matters to be withheld.

37.     In this case, the Department withheld certain information under Exemption 3 pursuant to Section 102A(i)(1) of the National Security Act of 1947, 50 U.S.C. § 3024(i)(1), because release of this information would reveal intelligence sources and methods. The National Security Act of 1947 qualifies as a withholding statute under Exemption 3, 5 U.S.C. § 552(b)(3).

18

## FOIA Exemption 5 – Privileged Information

38.     5 U.S.C. § 552(b)(5) states that the FOIA does not apply to:

> inter-agency or intra-agency memorandums or letters which would
> not be available by law to a party other than an agency in litigation
> with the agency.

39.     This exemption protects from disclosure information that is normally privileged in the civil discovery context, including information that is protected by the deliberative process and attorney-client privileges.  The deliberative process privilege protects the confidentiality of candid views and advice of U.S. government officials in their internal deliberations related to policy formulation and administrative direction, as a means of protecting the quality and integrity of agency decision-making.  If government employees knew that their preliminary advice, opinions, evaluations, proposals, or comments would be released to the public, candid discussion among employees might well be chilled.  The privilege applies to material that is "predecisional" and "deliberative."  The Department has withheld information in a number of documents in this case under Exemption 5, 5 U.S.C. § 552(b)(5), pursuant to the deliberative process privilege.

40.     The Department also has withheld certain information in this case pursuant to the attorney-client privilege.  This information reflects consultations undertaken in confidence between Department officials and Department attorneys, as well as between Department attorneys and officials elsewhere within the U.S. government, for the purpose of obtaining or providing legal advice regarding the formulation of official U.S. government action.  The withheld information reflects the two-way confidential communications that occur between attorneys and their clients when seeking and providing legal advice.  For these reasons, portions

19

of the withheld information are exempt from release under Exemption 5, 5 U.S.C. § 552(b)(5), pursuant to the attorney-client privilege.

41.     Finally, the Department also has withheld certain information in this case pursuant to the presidential communications privilege. The presidential communications privilege protects confidential communications that relate to presidential decision-making and involve the President or his senior advisors. The privilege protects both the advice or recommendations conveyed to the President by his advisors and communications among those presidential advisors made in the course of formulating such advice or recommendations, and direct, confidential communications from the President to senior officials on sensitive topics where disclosure would inhibit the President's ability to engage in effective communications and decision-making. For these reasons, portions of the withheld information are exempt from release under Exemption 5, 5 U.S.C. § 552(b)(5), pursuant to the presidential communications privilege.

## IV. DISCLOSURES REFERENCED BY THE ACLU

42.     I am aware of the Court's determination in a separate case, *ACLU v. DOJ*, No. 1:12-cv-794-CM (S.D.N.Y.), that there are certain facts relating to lethal strikes by the U.S. government that have been officially acknowledged. I also have reviewed the 13 alleged "facts" that the ACLU claims in its August 28, 2015 filing in this case have been officially acknowledged by the U.S. government. I have reviewed the responsive records identified in the Department's searches described above and determined that each of the documents withheld by the Department either does not contain officially acknowledged material or, if such material is

20

contained within the documents, it is inextricably intertwined with properly classified or otherwise exempt information.

## V. CONCLUSION

43.    In summary, all of the documents addressed herein, in the unclassified index attached to my declaration as Exhibit 8, and in greater detail in the government's classified, *ex parte* index have been carefully reviewed for reasonable segregation of non-exempt information, and the Department has determined that there is no additional meaningful, non-exempt material that can be reasonably segregated and released, without disclosing information warranting protection under the law.

\*\*\*

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Executed this 2nd day of October 2015, Washington, D.C.

_____
John F. Hackett

21