TS/▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
————————————————————————————x

AMERICAN CIVIL LIBERTIES
UNION and THE AMERICAN CIVIL
LIBERTIES UNION FOUNDATION,

       Plaintiffs,

    -against-                   15 Civ. 1954 (CM)

DEPARTMENT OF JUSTICE, et al.,

       Defendants.
————————————————————————————x

## MEMORANDUM DECISION AND ORDER DECIDING THE GOVERNMENT'S AND PLAINTIFFS' RESPECTIVE MOTIONS FOR SUMMARY JUDGMENT

McMahon, C.J.:

      This lawsuit is the "son of" companion Freedom of Information Act (FOIA) lawsuits brought by The New York Times (Docket # 11 Civ. 9336 (CM)) and The American Civil Liberties Union (Docket # 12 Civ. 794 (CM)) (hereafter referred to as "NYT"). The original lawsuits sought the disclosure of information relating to the targeted killing of alleged militants and terrorists away from the battlefield; FOIA requests for documents relating to that subject had been denied by the Departments of Justice and Defense and by the Central Intelligence Agency. In a decision dated January 24, 2013, this court, with considerable reluctance, concluded that all materials sought by the plaintiffs were privileged. *See New York Times Co. v. U.S. Dep't of Justice*, 915 F. Supp. 2d 508 (S.D.N.Y. 2013).

      Almost immediately after the court issued its opinion, someone with access to classified information leaked to NBC News a key document (The Draft White Paper) that

TS/█████████████

discussed the reasons why the killing of an American citizen without trial did not offend the Constitution and laws of the United States. See, "DJ White Paper (DRAFT): Lawfulness of a Lethal Operation Directed Against a U.S. Citizen Who is a Senior Operational Leader of Al-Qa'ida of an Associated Force," November 8, 2001 (attached in this action as Exhibit 15 to the Declaration of Matthew Spurlock). The Administration thereafter declassified and released the Draft White Paper – an official disclosure that ended FOIA privilege for the contents of the document. The disclosure of the Draft White Paper, coupled with statements made over the course of a year and more by key administration officials, in speeches and to the press, persuaded the Court of Appeals to reverse this court's decision in part, by ordering the disclosure of a document colloquially identified as "the OLC Memorandum." *See New York Times Co., v. U.S. DOJ*, 756 F.3d 100 (2d Cir. 2014) (hereafter "*NYT I*").[1]

The Circuit remanded the case so this court could consider the status of dozens of other specifically identified documents in light of its opinion. *Id.* at 122-124. This court issued two subsequent decisions, one of which has been affirmed on appeal, *(New York Times Co. v. U.S. Dep't of Justice*, 11 Civ. 794 (CM), ECF Docket #139, Revised Decision on Remand with Respect to Issue (3), 5/11/16), and one of which is still under review (*American Civil Liberties Union v. U.S. Dep't of Justice*, 2015 WL 4470192 (S.D.N.Y. July 15, 2015)).

---

[1] Officially the OLC Memorandum can be described as a memorandum from David Barron, Acting Assistant Attorney General, OLC to Attorney General Holder dated July 16, 2010, the subject heading of which was "Re: Applicability of Fed. Criminal Law and the Constitution to Contemplated Lethal Operations Against Shaykh Anwar Aulaq." In this action it is attached as Exhibit 8 to the Declaration of Matthew Spurlock.

TS/████████████████████

Early last year, the ACLU (but not the Times[2]) commenced a second lawsuit,

contesting the Government's response to a second FOIA request it had made in 2013.

The 2013 Request was addressed to the Department of Justice (specifically to the Office

of Legal Counsel and the Office of Information Policy), the Departments of Defense and

State, and the CIA. The Request sought four general types of documents: (1) documents

discussing the legal basis for the targeted-killing program (also the subject of the 2011

Requests); (2) the standards and evidentiary processes used by the Government to

evaluate and approve or reject the use of lethal force (including the Presidential Policy

Guidance applicable to targeted killings outside "areas of active hostilities"); (3) before-

the-fact and after-action assessments of civilian and bystander casualties; and (4) the

number, identities, legal status, and suspected affiliations of those who were killed

(whether intentionally or not).

After the CIA issued a hybrid *Glomar* and "no number no list" response to the

Request, and the ACLU's administrative appeal there from was denied, the ACLU agreed

to modify the first two categories of documents, limiting them to documents discussing

all targeted-killing strikes, whether against individuals or groups, outside of Iraq,

Afghanistan or Syria, but excluding (i) documents dated before September 11, 2001; (ii)

documents that are publicly available; (iii) documents relating to the raid that resulted in

the death of Osama Bin Laden; (iv) documents already processed and identified as

responsive to the FOIA Requests that underlay the previous lawsuit before this court, as

well as a lawsuit filed in March 2010 in the District of Columbia District Court, *ACLU v.*

---

[2] The Times' co-plaintiffs were two of its reporters, Charlie Savage and Scott Shane. During 2015, Mr. Savage published a book entitled "Power Wars" (Little, Brown and Company), which discussed, *inter alia*, the legal analysis undergirding the assassination of Anwar al Aulaqi – the writing of which was one of the reasons the Times, or at least Mr. Savage, brought the prior lawsuit in the first place.

TS/█████████████████

CIA, 10 Civ. 436; (v) purely internal communications within OLC; (vi) drafts of records that were eventually finalized, but only where the final versions of the drafts have been disclosed or are listed individually on the other relevant agency's public Vaughn index in this action; (vii) records created by another defendant agency; subject to the same reservation as it item vi; and (ix) with respect to the Department of State (DOS) only, records not pertaining to the process described in the penultimate paragraph of Attorney General Holder's May 23, 2013 letter to Senator Patrick Leahy and other members of Congress.

Because a pending appeal in the D.C. Circuit was highly likely to affect the propriety of Request Categories (3) and (4) (the prongs relating to casualties, as opposed to legal analysis), the court stayed litigation relating to those requests. *See ACLU v. CIA*, 2015 WL 3777275 (D.D.C. June 18, 2015).Therefore, this decision relates only to Request Categories (1) and (2). I note that the D.C. Circuit appeal was recently decided in favor of the Government, and the parties are in the process of deciding whether anything remains for this court to adjudicate with respect to the Category (3) and (4) requests; I will certainly not be issuing an order in contravention of the ruling recently affirmed by the D.C. Circuit.

Having been around this racetrack before, the court issued, and subsequently modified, an order directing how the parties should limit and format their cross-motions for summary judgment and responses. ECF Docket #16 and #25. The initial exchange of unclassified briefs resulted in still further negotiations between the parties on the scope of the ACLU's requests. The court has been advised that the ACLU is now seeking disclosure of a total of 128 challenged documents: 43 classified records providing

TS/█████████████████

─TS/███████████

confidential OLC advice to Executive Branch policymakers (withheld by DOJ/OLC); one

classified memorandum (withheld by DOJ/OIP); 18 classified memoranda withheld by

National Security Division of the Department of Justice (NSD); 13 classified memoranda

withheld by CIA; 14 classified memoranda withheld by DOS; 36 classified memoranda

withheld by DOD; a portions of three documents -- two DOD Reports to Congress; and

one Presidential Policy Guidance. (Govt' Corrected Reply Memorandum, ECF Docket

#62, at n.I)

Standards for Summary Judgment in FOIA Case

Summary judgment may be entered is there is no genuine dispute as to any

material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P.

56(a).

In a FOIA case, such as this one, the burden to justify the refusal to turn over

responsive documents rests with the Government. *Bloomberg, L.P. v. Bd. of Governors of*

*the Federal Reserve System*, 601 F. 3d 143, 147 (2d Cir. 2010). An agency may satisfy its

burden by providing the court with, "Affidavits or declarations supplying facts indicating

that the agency has conducted a thorough search and giving reasonably detailed

explanations why any withheld documents fall within an exemption..." *Carney v. DOJ*,

19 F. 3d 807, 812 (2d Cir. 1994).[3] In cases involving national security, like this one,

courts must accord "substantial weight" to such affidavits, *NYT J* at112, citing *Wilner v.*

*NSA*, 592 F. 3d 60, 73 (2d Cir. 2009), and "is not to conduct a detailed inquiry to decide

whether it agrees with the agency's opinion...," that "disclosure of withheld information

would pose a threat to national security." *Halperin v. CIA*, 629 F. 2d 144, 148 (D.C. Cir.

---

[3] Because agency affidavits alone can support summary judgment in a FOIA case, Local Rule 56.I does not apply and statements are unnecessary. *Ferguson v. FBI*, 1995 WL 329307, at *2 (S.D.N.Y. June 1, 1995), aff'd 83 F. 3d 41 (2d Cir. 1996).

─TS/███████████

1980); ACLU v. DOJ, 681 F. 3d 61, 70-71 (2d Cir. 2012). That said, the Government must provide "reasonably detailed explanations why any withheld documents fall within an exemption," *Carney v. DOJ, supra.*, 19 F. 3d at 812, and, "….conclusory affidavits that merely recite statutory standards, or are overly vague or sweeping will not…carry the government's burden." *Larson v. DOS*, 565 F. 3d 857, 864 (D.C. Circ. 2009).

When it is unclear from the Government's affidavits whether a particular document should be produced or not, a court is within its rights to insist on reviewing the document itself – and, indeed, the ACLU asks that the court exercise that power in this case. However, with respect to responses from the CIA, one of the Agencies here at issue, *in camera* review of documents is discouraged, because 50 U.S.C. § (f) (2) directs that "the court shall, to the fullest extent practicable, determine issues of fact based on sworn written submissions of the parties." I have to the fullest extent practicable determined issues of fact on the basis of the CIA's sworn written submissions; however, I have, as will be seen, asked the Government to produce a few documents for *in camera* inspection and I reviewed them prior to issuing the rulings in this opinion.

The Government has presented both classified and unclassified affidavits from representatives of each Defendant Agency, explaining in considerable detail why the Government is entitled to the benefit of one or more FOIA exemptions for the requested documents. Consistent with the court's direction, the Government has presented the court with a separate FOIA exemption analysis for each of the 128 documents still sought by the ACLU and not produced by the Government. After addressing some preliminary issues, the court will consider each document individually.

TS/████████████████

## Adequacy of Search

An agency can show that it has conducted an adequate search for records responsive to a FOIA request by submitting affidavits or declarations demonstrating that it has conducted a search reasonably calculated to uncover all relevant documents. *Weisberg v. DOJ*, 705 F. 2d 1344, 1351 (D.C. Cir. 1983). The agency is not required to search every record system, but may limit itself to those systems in which it believes responsive records are likely to be located. *Amnesty Int'l USA v. CIA*, 728 F. Supp. 2d 479, 497 (S.D.N.Y. 2010). The adequacy of a search is measured by its method, not by its results. *NYT 1* at 124.

In its opening brief, the Government summarizes the unclassified declarations submitted by the defendant agencies, thereby providing the court and the ACLU with information about its search for documents responsive to Requests 1 and 2. The court has been provided with additional, classified declarations containing additional information about each agency's search. The totality of this information reveals that the Defendant Agencies put considerable effort into locating potentially responsive documents. In its Memorandum in Opposition to the Government's opening brief, (Docket #52), the ACLU does not contest the adequacy of the Agencies' searches.

The court is, therefore, satisfied that the Defendant Agencies have complied with their legal obligation under FOIA to conduct an adequate search.

TS/████████████████

─TS/█████████████

Waiver Analysis: Officially Acknowledged Facts

1. The Law of Waiver

Voluntary disclosure by the Government of all or part of a document may waive an otherwise valid FOIA exemption. *NYT 1* at 114. The "official acknowledgement doctrine" applies in the context of all three exemptions asserted by the agencies in this case: Exemptions 1, 3 and 5. *Wilson v. CIA*, 586 F. 3d 171, 186 (2d Cir. 2009); *NYT 1* at 114.

Once again, I express my deep regret that the Court of Appeals has not been more definitive in its discussion of how "closely" an official acknowledgement had to track information contained in a document that would otherwise be exempt from disclosure. *Wilson* – described as "the law of this Circuit" by the panel in *New York Times* – holds that the doctrine applies where the withheld information is "as specific as the information previously released" and "matches the information previously disclosed." However, in *New York Times*, the Circuit suggested that an "overly stringent" application of *Wilson* "may not be warranted" (*NYT 1* at 120, n.19) – although the panel did not say that a "stringent" application "was not warranted."

This court generally finds it prudent to apply Second Circuit precedent rather stringently, especially as I am in no position to overturn "the law of this Circuit." What the Second Circuit did not do in *New York Times* was explain where the line between "stringent" and "overly stringent" might be found. I have always considered words and phrases like "as specific as" and "matches" to mean what they say, and to cabin fairly restrictively the extent of any waiver. To date the Court of Appeals has given me no reason not to continue in this vein, and so I shall.

─TS/█████████████

TS/███████████

I thus remind the parties that I do not read *Wilson* to require that the withheld information correspond verbatim to information previously released, or that the prior release have been made by the very official whose statement appears in the withheld document, or by an official in the agency where the discloser works, or even by an official in the branch of Government where the discloser works. The Government is the Government; and if, for example, the Attorney General makes a factual assertion about the Defense Department, then that fact has been "officially acknowledged" by the Government for purposes of the *Wilson* rule – but only to the extent of the specificity of the public statement.

There is but one exception to the preceding sentence; as already noted, the "law will not infer official disclosure of information classified by the CIA from…release of information by another agency, or even by Congress." *Wilson*, 586 F.3d at 186-87. That, too, is the "law of this Circuit."

It is equally the law of this Circuit that facts pertaining to the operation of the Executive Branch cannot be "officially acknowledged" by members of Congress. *See Wilson*, 586 F.3d 186; *NYT I* at 119 n. 18; *see also*, Final Remand Decision dated July 15, 2015, ECF No. 128 at 27. As it did on remand in the sibling action, *NYT*, the ACLU insists that this rule has been overturned by the Second Circuit's decision in *NYT I*, in which the Court of Appeals discussed extensively statements made by Senator Feinstein and Congressman Rogers in their roles as Chairs of the Senate and House Select Committees on Intelligence. And as I did in the July 15 Decision, which is presently under review, I take the position that, as to the issues discussed by Senator Feinstein and Congressman Rogers, the "official acknowledger," according to the Court of Appeals

TS/███████████

TS/▮▮▮▮▮▮▮▮▮▮

itself, was the Director of the CIA, Leon Panetta -- not a member of Congress. The statements of Senator Feinstein and Congressman Rogers about the CIA's role in the use of drones appear to have been entirely confirmatory of Director Panetta's disclosures; indeed, the Circuit's point was not that Congress had disclosed this fact, but that if the Chairmen of the Senate and House Select Committees on Intelligence felt free to discuss a fact publicly, it meant that the fact was no secret -- even at the CIA. I do not read the Circuit's reference to these public statements as overturning the quoted ruling in *Wilson* concerning who can and cannot officially disclose information that has been classified by the CIA, or the rule that members of Congress cannot officially acknowledge information (and so waive privilege) on behalf of the Executive Branch, a separate and co-equal branch of our Government. If that was the intention of the Court of Appeals, it will have to so state more clearly.

In yet another reprise of its argument on remand in *NYT*, the ACLU takes the position that official acknowledgement of a fact constitutes waiver with respect to the any information that is "similar" to the information disclosed. And once again, I respond by saying that the ACLU's position is overbroad; "similar" is not a synonym for "matching." Certainly, if what the ACLU means is that official acknowledgement of a particular fact (for example, the CIA's operational involvement in the drone strike that killed Aulaqi) waives FOIA exemptions for all details about the CIA's operational involvement in the Aulaqi mission, it goes too far. Nothing in the Second Circuit's opinion in *New York Times* can be read to suggest that acknowledgement of the CIA's "operational role" in the Aulaqi killing -- including its statement that two senior members of Congress "publicly discussed CIA's role in targeted killings by drone strikes" -- mandates

TS/▮▮▮▮▮▮▮▮▮▮

—TS/███████████

disclosure of such details as the names of any CIA personnel who were involved, or what exactly each of them did; where they were located when they did it; what equipment was used; or who (if anyone) offered assistance. All the Second Circuit said was that the "identity of the agency, in addition to DOD, that had an operational role in the drone strike that killed Aulaqi" had been officially acknowledged – and, more generally, "It is no secret that the CIA has a role in the use of drones." *NYT I* at 119. Acknowledgement of operational *involvement*, in other words, does not eviscerate the privilege for operational *details*. I very much doubt that the Court of Appeals meant for this court to disregard *Wilson*, or to conclude that disclosure of a specific fact entailed waiver of exemption for all information about the subject to which that fact pertains. Otherwise, it would not have redacted significant portions of the OLC-DOD Memorandum – a document that indisputably qualifies as "legal analysis" – due to the mention of facts relating to intelligence gathering activities.

## 2. Continuing Waivers In Light of NYT I

In *NYT I* (the "mother case" to this one), this court and the Second Circuit between them concluded that certain facts had been publicly disclosed by authorized Governmental entities, such that the Government had waived any FOIA exemption (including specifically classification) with regard to those specific facts. They are:

1. The fact that the Government uses drones to carry out targeted killings overseas;

2. The fact that both DOD and CIA have an intelligence interest in the use of drones to carry out targeted killings;

3. The fact that both DOD and the CIA have an operational role in the use of drones and in targeted killings;

4. Information about the legal basis (constitutional, statutory, common law, international law and treaty law) for engaging in the targeted killings abroad, including specifically the targeted killing of a U.S. national.

5. The fact that the Government carried out the targeted killing of Aulaqi;

6. The fact that Aulaqi was killed during an operation in Yemen.

7. The fact that the Government believed that Samir Khan was involved in jihad.

All of those facts will be deemed acknowledged for purposes of the court's review of the Defendant Agencies' Vaughn Indices. In particular, while the Government persists in its position that the CIA's involvement in drone strikes has somehow not been disclosed – a position that it takes before this court (Govt. Reply Memo, ECF 62, at 12-15) and elsewhere, or at least so it is speculated (*see ex.*, Agencies Battle Over What Is 'Top Secret' in Hillary Clinton's Emails, http://www.nytimes.com/2016/02/06/us/politics) —it is the law in this circuit (and certainly the law as between the parties to this case) that the CIA has waived the right to invoke FOIA exemptions as to this particular fact. Nothing the CIA does or does not do, in this case or elsewhere, can walk back that cat.[4]

In this court's final decision on remand in the previous case, I opined that additional information identified by the ACLU (identified in that opinion as "Listed Fact #6, but not to be confused with Fact #6 on the immediately preceding list of facts) probably should be deemed to have been officially acknowledged; but I concluded that

---

[4] On February 14, 2016, CIA Director John Brennan appeared on CBS' Sixty Minutes – the very show on which his predecessor, Leon Panetta, gave the nod of the head that proved fatal, in the opinion of the Second Circuit, to the CIA's ability to assert FOIA exemptions for the proposition that it had never acknowledged its operational involvement in drone strikes. See *NYT I*, 756 F. 3d at 118. This court noted with interest Mr. Brennan's carefully rehearsed responses to Scott Pelly's questions about CIA involvement in drone strikes; Mr. Brennan had been well coached and he gave nothing now away. But his responses did not undo whatever "damage" to CIA interests had been done by Mr. Panetta's revealing head bob. An official acknowledgment, like the contents of Pandora's Box, cannot be taken back; once it occurs, the fact is in the public domain.

TS/███████████

only the Court of Appeals could so order, since it had redacted that very information from its earlier opinions in *NYT I. See American Civil Liberties Union v. Department of Justice*, 12 Civ. 794, 2015 WL 4470192, at *6 (S.D.N.Y, July 16, 2015) (July 2015 Decision). The Court of Appeals has not yet ruled on the ACLU's appeal from that decision. Until it does, I have no choice but to conclude that this court, bound by the Second Circuit's redaction decisions, is not free to rule that any of the following information about Aulaqi has been officially acknowledged – even though (as I stated in the June 2015 Opinion), I believe the evidence shows it to have been officially acknowledged.

Those facts are: his leadership role in al-Qaeda in the Arabian Peninsula, including Aulaqi's role as an operational planner, recruiter and money-raiser; his role in the failed attempt to bomb the Northwest Airlines jetliner on December 2009 (the Detroit bombing attempt); and his role in planning other attacks (which never took place), including specifically attacks on two U.S.-bound cargo planes in October 2010. All of these fall within the rubric of reasons why the Government targeted Aulaqi. Every one of these facts was disclosed by an executive branch official in one or more of the exhibits to the Colin Wicker Declaration. These disclosures appear in Wicker Ex. 7 (Jake Tapper's June 27, 2010 Interview with Leon Panetta, *see* page 5 of 15), Wicker Ex. 8 (U.S., Department of Treasury Press Release dated July 16, 2010), Wicker Ex. 9 (letter, Attorney General Holder to The Hon. Patrick Leahy, dated May 22, 2013, at 3-4 of 16); Wicker Ex. 10 (Transcript of Hearing Before the Committee on Homeland Security of the House of Representatives, Feb. 9, 2011, at 25 of 35); Wicker Ex. 11 (Remarks by the President at the "Change of Office" Ceremony for the Chairman of the Joint Chiefs of

TS/███████████

TS/▮▮▮▮▮▮▮▮▮▮

Staff, Sept. 30, 2011); and Wicker Ex. 12 (Government's Sentencing Memorandum in
*United States of America v. Umar Farouk Abdulmutallab*, No. 10 CR 20005, United
States District Court, Eastern District of Michigan, at 3).

All but one of those documents was created before this court issued its original
ruling. The one document that was created after -- Attorney General Holder's Letter to
Senator Leahy -- was virtually contemporaneous with the post-opinion release of
documents that the Second Circuit found dispositive when it held that there had been
waiver with respect to the legal analysis in the OLC-DOD Memorandum.

Should the Second Circuit adopt my reasoning in its decision on the appeal from
the July 15 Order and conclude that there has been a waiver with regard to these facts, I
will of course revisit the issue here.

### 3. Additional Issue Waivers Proposed by the ACLU

For purposes of this new case, the ACLU argues that the court should deem
certain additional material to have been "officially acknowledged" by the Government.

The ACLU first asks that this court deems that certain "disclosures relating to the
legal basis for the targeted killing program" have been officially acknowledged and any
corresponding protection under the FOIA exemptions has been waived. These are set out
in the first part of a "waiver table," which the ACLU appends to its memorandum of law
opposing the Government's motion for summary judgment. The table consists of every
issue of law that was discussed in (1) the OLC-DoD Memorandum (referred to as the
July 2010 Memo), the document ordered disclosed by the Second Circuit in NYT I; and
(2) the draft white paper (referred to as the May and November 2011 White Papers) the

TS/▮▮▮▮▮▮▮▮▮▮

T̶S̶/ ███████████████████

leaking of which was the basis for the Second Circuit's determination that the OLC-DoD Memorandum should be disclosed.

If all the ACLU wanted was disclosure of the already-disclosed legal advice, this court would have to wonder why its time was being wasted refereeing a battle already fought and won. The ACLU has the legal analysis; it is contained in the OLC-DOD Memorandum. The ACLU does not suggest that the already-disclosed analysis has changed – or at least, changed in a way that has been "officially acknowledged."

But the ACLU does not really want just the legal analysis; it wants to know whether and how that analysis has been applied to justify decisions to target or not target specific individuals or situations. It argues that, in at least some instances, legal advice offered in specific situations (what I will call "case specific legal advice") must represent either "working law" or agency policies, either of which would render that advice subject to disclosure under FOIA.

The ACLU offers no evidence that anyone in a responsible Government position has "officially acknowledged" the details of how the general legal principles discussed in the OLC-DOD Memorandum and the Draft White Paper were applied to particular fact situations -- or even to specific types of generic situations ████████ ███ ███
██████████████████████████████████. The same is true of so-called "after analyses;" the ACLU does not point to any official acknowledgement of how (if at all) the legal principles that have already been disclosed were applied during some detailed case-specific analysis of a particular operation. The Government is correct in its basic premise: legal analysis is rarely discussed in a vacuum, but is usually presented in a particular factual context. The Government has already disclosed the

15

TS/

principles that it claims to apply when deciding, either *ex ante* or *post hoc*, that a
particular lethal counterterrorism operation either will be or was lawful. That is as general
as the discussion could possibly be; any further, more detailed discussion would of
necessity focus on applying those principles to particular sets of classified facts.

To take but one example, the Government's official acknowledgement that it
assesses the feasibility of capture when deciding whether a person identified as a terrorist
is an appropriate target for a lethal operation does not mean that the details of any
assessment about whether it was feasible to capture Anwar al-Aulaqi were also officially
acknowledged. Those details would necessarily include information that is properly (and
in some cases statutorily) classified – including information about intelligence sources
and methods, about operatives, about the types of capture operations that are or are not
possible in particular locations, and about sensitive relations with foreign Governments.

The fallacy in the ACLU's position becomes obvious once we take it out of the
politically fraught national security context. A lawyer applying general principles of law
that are discussed in a vacuum in textbooks and treatises would surely not waive any
attorney-client or work product privilege by applying those well-known general
principles to a particular fact situation facing a particular client. Nor would she waive
privileges by applying those same principles to a different fact situation facing the same
client – even if, by some happenstance, his client had waived the privilege as to the first
such application. So too here: the fact that the Government has disclosed its textbook, its
legal treatise, on the law that it applies to targeted lethal operations, proposed or
completed, does not impliedly disclose or waive any privilege concerning how its
lawyers have applied that law in specific instances.

TS/

-TS-/■■■■■■■■■■■■■

Additional evidence for this proposition can be found in the May 2011 Draft White Paper, which was initially leaked to the press on February 4, 2013 (less than a month after this Court issued its first decision *(New York Times Co. v. U.S. Dep't of Justice*, 915 F.Supp2d 508 (S.D.N.Y. 2013), and subsequently officially disclosed by DOJ four days later.  It begins as follows: "This white paper sets forth the legal basis upon which the Central Intelligence Agency ("CIA") could use lethal force in Yemen against a United States citizen who senior officials reasonably determined was a senior leader of al-Quida or an associated force of al-Qaida." (Spurlock Ex. 12 at 1). With the benefit of hindsight it is clear that the reference is to the possible targeting of Mr. Aulaqi. The White Paper was prepared at the request of a client to explore whether there was a legal basis for killing rather than capturing him in Yemen (i.e., away from  a hot battlefield, which the United States Supreme Court has found to be subject to distinct rules, *Hamdi v. Rumsfeld*, 542 U.S. 507 (2004)).  The idea that legal advice can, in the ordinary course, be shorn of the particular facts that impel a client to seek it is ludicrous. Government lawyers are employed to advise clients who need to decide whether or not to take action – not to write treatises on particular areas of law.[5]

Therefore, for these reasons and on the authorities set forth in the Government's Unclassified Reply Brief at pages 1-2, I reject the ACLU's argument that legal analysis "as applied" cannot be classified or protected from disclosure by statute under some "working law" doctrine (a proposition that was in any event rejected by the Second Circuit. *See New York Times Co. v. U.S. Dept. of Justice*, 806 F. 3d 682, 687 (2d Cir. 2015) (hereinafter *"NYT II"*). For the reasons set out at page 5 of the Government's

---

[5] Ironically, the OLC-DoD Memorandum is about as close to a treatise on the law applicable to the targeted killing of a United States person by this Government as one could possibly imagine.

-TS-/■■■■■■■■■■■■■

TS/ ███████████████████

Unclassified Reply Brief, I similarly reject the ACLU's speculative contention that the application of general legal principles to specific facts (what I will henceforth refer to as "case specific legal analysis") must constitute "agency policy" that is subject to disclosure. "At most…[case specific legal analysis] provide[s], in [its] specific context[], legal advice as to what a department or agency 'is *permitted* to do.'" *NYT II*, 806 F. 3d at 687 (quoting *EFF*, 739 F. 3d at 10). Permission is not policy, and the lawyers who are offering their (informed) opinion about particular operations are rarely if ever the people who will make ultimate decisions about policy -- whether broadly or on a case-by-case basis.

      Of course anyone (including the folks at the ACLU) who has become familiar with the general principles discussed in the White Papers and the OLC-DoD Memorandum is free to apply those principles to publicly known facts about a particular lethal operation, to guess at the conclusion the Government must have reached about the legality of that operation, and to applaud or criticize the legality of the Government's conduct in connection with that operation. But that is as far as the Government's official acknowledgement of the general legal principles discussed in the OLC-DoD Memorandum and the White Papers (and the briefs or speeches cited by the ACLU in its waiver table) takes us. The fact that the general legal principles are publicly known does not "officially acknowledge" any case-specific legal analysis performed by Government attorneys in connection with particular proposed or completed operations. Unless and until the Government both (1) declassifies information about a particular operation and (2) waives attorney-client privilege concerning advice given (i) in advance of any particular operation or (ii) in any assessment of the legality of an operation already

18

T-S/

concluded, that case-specific application of disclosed legal principles is protected from

FOIA disclosure – under the classification, deliberative and attorney-client privileges.

### 4. Specific Additional Fact Waivers Proposed by the ACLU

The ACLU's Waiver Table also includes a list of some 13 new facts that it

contends should be deemed "officially acknowledged." I will discuss each in turn.

*(i)     The Government uses drones to carry out targeted killings.*

Ruling: Officially acknowledged. I do not understand the Government to dispute

this. In any event, President Obama gave a speech in May 2013 in which he stated, "The

United States has taken lethal, targeted action against al Queda and its associated forces,

including with remotely piloted aircraft commonly referred to as drones." That's about as

official as acknowledgement can get. I note, however, that acknowledging that the

Government has taken such action in the past (i.e., prior to May 2013) does not constitute

an official acknowledgement that the Government carried out any particular targeted

killing using drones.

*(ii)  The Government uses manned aircraft to carry out targeted killings.*

On or about June 18, 2015, Col. Steven Warren, a DoD spokesman, stated, "I can

confirm that the target of last night's counterterrorism strike in Libya was Mokhtar

Belmokhtar." I infer from Spurlock Ex. 49, which is a New York *Times* story reporting

on the strike, that some U.S. Government spokesman confirmed that the strike was

carried out by multiple American F-15E fighter jets. From this, the ACLU draws the

conclusion that the Government has engaged in the sweeping confirmation quoted above.

The exact thing that can be said to have been officially acknowledged in this

instance – which is literally the only instance cited by the ACLU – is that, on one

T-S/

~~T S /~~ ████████████████

occasion in 2015, some unspecified party used U.S. fighter jets (which, unless I misread

the news, have been sold by this country to multiple foreign Governments) to conduct a

counterterrorism operation against Mr. Mokhtar -- and the Government knew that Mr.

Mokhtar was the target. I deem that information, and nothing more, to have been

officially acknowledged. The Libyan Government, not the United States government,

announced that Mokhtar had been killed; the United States Government specifically

declined to confirm that fact. The Libyan Government cannot officially acknowledge

anything on behalf of the United States of America.

This does not constitute official acknowledgement that the United States

Government uses manned aircraft to carry out "targeted killings." Contrasting the specific

and limited language in Col Warren's press statement with the far more sweeping

statements made by President Obama and CIA Director Brennan about drone strikes

generally underscores the extremely limited nature of this official acknowledgement.

(iii)    *The CIA and DoD have operational roles in targeted killings.*

At least where the CIA is concerned, this statement was deemed officially

acknowledge in NYT. In *NYT I*, the panel said, "The statements of Panetta when he was

Director of CIA and later Secretary of Defense....have already publicly identified CIA as

an agency that has an operational role in *targeted drone killings.*" (emphasis added). I

have already said that I am bound by that ruling. I need not consider any of the ACLU's

other evidence on that score.

And so we turn to DoD. In the July 15, 2015 decision this court ruled that the

Government had officially acknowledged DoD's involvement in both drone strikes and

targeted killings. *American Civil Liberties Union v. U.S. Dep't of Justice*, 2015 WL

~~T S /~~ ████████████████

TS/███████████████████

4470192. I am not going to rule differently in this case; the fact has been officially

acknowledged; indeed, it is already on the list. *See supra.*, page 11, Fact 3.

I assume to bolster its case, the ACLU points to a few statements that cannot be

read, singly or together, to acknowledged that DoD has any operational role in targeted

killings: a March 2011 speech by then-Defense Secretary Gates, in which he mentioned

that the Air Force at that time had 48 predator and Reaper combat air patrols flying, with

more anticipated in the future (Spurlock Ex. 10) and a speech by Defense Secretary

Panetta in October 2011, in which he noted that there are more weapons available to the

Secretary of Defense than there were to the Director of the CIA (Spurlock Ex. 14). If this

were all that I had had before me last summer, I would not have ruled as I did.

The ACLU also adds to the mix the February 2014 testimony of Director of

National Intelligence James Clapper before Senate Armed Services Committee, to the

effect that the Administration was considering the possibility of shifting responsibility for

drone strikes from CIA to DoD. Not only does this testimony not establish that DoD had,

in February 2014 or at any time prior thereto, any operational role in the conduct of

targeted killings, but it strongly suggests that DoD did *not* have any such operational role.

This is the antithesis of official acknowledgement; indeed, it actually undermines the

ruling that this court made last summer!

The remaining statements were made by members of Congress. Only one of them

goes to the issue of DoD's operational role in targeted killings, and it (a statement made

by Senator John McCain in a February 2013 interview (Spurlock Ex. 25)) -- like Director

Clapper's testimony of a year later -- discusses the *possibility* of transferring the drone

program out of the CIA and placing under the auspices of DoD. Senator McCain's

TS/███████████████████

TS/███████████

statement also implies that DoD had no operational role in targeted killings at that time. And indeed, in a more recent (April 2015) interview, the Senator said that there was still an internal struggle going on within the administration over whether to give DoD an operational role in drone strikes. (Spurlock Ex. 47).[6]

In short, none of the additional evidence provided to the court by the ACLU bolsters the case it already made. I am not sure why it put the court through this exercise when it already had the ruling it now seeks.

       (iv)    *The Government conducts targeted killings in Pakistan, including through the use of drones.*

The ACLU argues that this fact was acknowledged in four public statements: an August 2013 statement by Secretary of State John Kerry (Spurlock Ex. 34); a June 2012 statement by White House Press Secretary Jay Carney (Spurlock Ex. 20); a May 2009 speech by then-CIA Director Leon Panetta (Spurlock Ex. 4); and a June 10, 2009 interview with Director Panetta (Spurlock Ex. 7).



_____
[6] The rest of the Congressional statements to which the ACLU calls the court's attention either refer to Congress' oversight role where drone strikes are concerned or discuss in one way or another the unresolved struggle over which agency should actually carry out targeted killings. They do nothing to advance the ACLU's "official disclosure" argument.

TS/███████████



In a supplemental submission made to the court during the Government's classification review of the court's proposed final draft of this opinion, the Government took the opportunity to reargue this point.



TS/ ████████████████████████

████████████████████████████████████████
██████████████████████████████
██████████████████████████████████████
████████████████████████████████████████████
██████████████████████████████████████████
██████████ █ ████████████████████

Press Secretary Carney -- ████████████████████████ and in keeping

with the cautious minuet he undoubtedly had to dance every day as part of his job --

acknowledged nothing at the June 2012 press briefing on which the ACLU relies. Indeed,

he specifically declined to say anything at the June 2012 press conference/briefing,

except to confirm that intelligence sources "believed" that a particular leader of al-Queda,

one al-Libi, was dead. Carney repeatedly declined to discuss either the location of al-

Libi's death or the method used to bring it about. And he simply would not respond in

any meaningful way to reporters' leading questions that assumed the use of drones inside

Pakistan. Questions that assume answers do not become acknowledgements when the

person being questioned repeatedly refuses to play along with the questioner's

assumptions.

Way back in 2009, CIA Director Panetta gave a speech to the Pacific Council on

International Policy (Spurlock Ex. 4), in which he said that some unspecified strategy in

Pakistan's tribal regions was "working". When a questioner (not Director Panetta)

identified that strategy as being "remote drone strikes," the Director responded, "On the

first issue, obvious because these are covert and secret operations I can't go into

particulars. I think it does suffice to say that these operations have been very effective

because they have been very precise in terms of targeting and it involved a minimum of collateral damage [as opposed to airplane attacks]....But I can assure you that in terms of that particular area, it is very precise and it is very limited in terms of collateral damage and, very frankly, it's the only game in town in terms of confronting and trying to disrupt the al-Queda leadership." ▮▮▮▮▮▮▮▮▮▮ the Director was not specific enough in his response to acknowledge the existence of the "remote drone strikes" referenced by his questioner; he started his answer by saying he could "not go into particulars" and thereafter referred only to unspecified "operations." Six years on and a lot of knowledge later, it is virtually impossible to read the Secretary's statement as referring to anything other than "remote drone strikes;" but waiver does not occur retroactively. One must place oneself in the shoes of the speaker at the time the alleged acknowledgement was made. Secretary Panetta was very careful not to adopt his interlocutor's characterization of the "operations" as "remote drone strikes" or otherwise to acknowledge the existence of any such program. Pakistan is mentioned not at all.

　　Finally, in June 2010, Director Panetta acknowledged that the late Osama Bin Laden (who, as we all know, was not killed in a targeted drone strike in which the CIA was operationally involved, but with a number of targeted gunshots to the head and torso applied at close range by Navy SEAL Team Six) was in the tribal area of Pakistan -- and then went on to say that "we" are "continu[ing] to disrupt Al Qaida's operations, and we are engaged in the most aggressive operations in the history of the CIA in that part of the world, and the result is that we are disrupting their leadership. We've taken down more than half of the Taliban leadership....." Assuming *arguendo* that the phrase "this part of the world" refers back to Pakistan, Director Panetta's statement did not mention the

phrase "drone strikes," let alone equate them with the "aggressive operations" that were taking place in "that part of the world." In order to make the necessary inferential leap, the ACLU references the May 2009 speech (made over a year earlier), in which Director Panetta responded to that question about "remote drone strikes" in the manner discussed above – that is, by refusing to go into particulars or to adopt the questioner's hypothesis that we were conducting drone strikes in Pakistan. He did indeed say that the unspecified "operations" in Pakistan that he was discussing were "very precise" and "very limited in terms of collateral damage;" one could – and with the benefit of hindsight one probably would – conclude that these operations were drone strikes. Director Panetta also acknowledged that these operations, whatever they might be, were "the only game in town in terms of confronting and trying to disrupt the al-Queda leadership." (Spurlock Ex. 4 at 7). But he never said that the Government was engaged in targeted killings using drones in Pakistan.

The court is not suggesting that the American people should behave like ostriches. It is certainly possible to piece together snippets from this statement and that speech and someone's answer to a leading question – each of them inconsequential in its own right – and conclude there from (often with the benefit of hindsight) that this or that proposition which the Government refuses to confirm directly is in fact the case. Indeed, the ACLU argues that the Second Circuit did precisely that in *NYT I* – it looked at a series of statements (and one very expressive nod) by senior Government officials, none of which (except possibly the aforementioned nod) was terribly consequential when viewed on its own. After discussing these and other matters, the Court of Appeals concluded that the Government had waived any and all privileges and FOIA exemptions with respect to the

—TS/█████████████

legal analysis enshrined in the DoD Memorandum and the White Papers. *NYT 1* at

*passim.*

The problem with drawing any conclusion from this particular discussion in *NYT
1*, however, is that the Circuit never really decided whether all those statements and
gestures were enough to constitute "official acknowledgment." That is because, just
weeks after this court issued its original January 3, 2013 opinion in that case, someone
leaked the Draft White Paper to NBC News. As far as the Court of Appeals was
concerned, that highly consequential leak rendered the entire discussion of who said
what, how much and when moot. The cat was out of the bag, and the Second Circuit had
no difficulty concluding that the Government had let the cat out of the bag.

So as this court reads *NYT 1*, the Court of Appeals' discussion of statements made
by CIA Director Brennan and Defense General Counsel Johnson and Attorney General
Holder in the months prior to the Big Reveal of February 2013 provided context, but
nothing more – certainly not a rule of law that a district court can follow when confronted
with the sort of piecemeal argument the ACLU is making.

In any event, the statements made by those gentlemen in the run-up to the leaking
of the Draft White Paper were far less oblique than the snippets on which the ACLU here
relies. In particular, they do not require the reader to assume that the speaker adopted his
questioner's premise – an old trial lawyer's trick that is even less persuasive in this
context than I find it to be in a court of law.

There are undoubtedly a lot of classified things that all informed citizens "know"
-- not because anyone in the Government has officially acknowledged the fact, but
because we (or historians, or journalists, or even politicians) put two and two together

—TS/█████████████

─TS/███████████████

and figure them out. Once we have done so, we tend to accept what we have figured out as the truth. In a FOIA case like this one, when the Government asserts exemptions and the plaintiff cries "waiver," the court's job is to discern whether the thing that informed citizens accept as "truth" is in fact "revealed truth" – that is, whether some authorized Government official or officials disclosed it, or whether the informed citizen figured it out by piecing together snippets of this and that. I fully understand the ACLU's position, because those of us who have played this sort of "connect the dots" game with publicly available information about drone strikes "believe" what we have figured out—who carries out drone strikes, when, where and why. But the evidence the ACLU places before this court does not come close to establishing that authorized representatives of the United States Government revealed what many informed citizens have come to believe to be true.



─TS/███████████████

TS/ ████████████████

   (v)   *The CIA conducts targeted killing in Pakistan, including through the use of drones.*

The same analysis applies to this variant of the previous "fact." The ACLU relies on the same two statements by then-CIA Director Panetta – the above-discussed May 2009 speech and subsequent questions, and a June 2010 interview in which the Director discussed the CIA's "aggressive operations" in Pakistan (Spurlock Ex. 4 and 7) – as waiving FOIA exemptions with regard to the asserted fact. I have already concluded that the May 2009 speech/question and answer did not constitute official acknowledgement of any drone program, so it certainly cannot be read as official acknowledgement of the CIA's role in any such program. As for the interview, Director Panetta is interviewed at length about the Administration's efforts, in Pakistan and elsewhere, to eliminate al-Queda. At no point does he disclose that the CIA is involved in targeted killings in Pakistan, through the use of drones or otherwise. Again, when a questioner, Jake Tapper of ABC News, asks him whether the CIA is complying with U.S. and international law in its overseas operations, Tapper himself begins the question by saying, "I know you can't discuss certain classified operations or even acknowledge them, but even since you've been here today, we've heard about another drone strike in Pakistan and there's been much criticism of the predator drone program, of the CIA." To which the Director responds, "There is no question that we are abiding by international law and the law of war…And anyone who suggests that somehow we're employing other tactics here that somehow violate international law are dead wrong." That is not an official acknowledgement that the CIA in particular conducts targeted killings in Pakistan, including through the use of drone strikes. It is an assertion that whatever tactics the

TS/ ████████████████

—TS/███████████████████

United States might be employing (which tactics are not identified) do not violate international law.

The ACLU then points to a statement ostensibly made by Panetta in a recent documentary film, one made long after he left Government service. Second Spurlock Declaration, Ex. 54. As Mr. Panetta's name is not even mentioned in the news story about the documentary that was provided to the court, I fail to see why Spurlock Ex. 54 was brought to my attention. Furthermore, even if Panetta is the unnamed person who allegedly "opened up" to a documentary filmmaker about "signature drone strikes," (exactly what he said appears nowhere in the article), he is no longer in the Government; he is a private citizen. The law is quite clear that only persons currently in Government can waive privileges that belong to the Government. *See Afshar v. Dep't of State, et al.,* 702 F.2d 1125, 1133 (D.C. Cir. 1983) (statements by former agency officials do not constitute "official and documented disclosure").

The ACLU argues that I should ignore this legal precept,  but I am cannot. Former Secretary and Director Panetta may have occupied high governmental office for many years, and been involved in numerous matter of great moment; but he is no longer a Government official, and he no longer acts or speaks for the United States. The benefit of the FOIA exemptions that are being invoked in this case belongs to the Executive Branch of the Federal Government, not to its former officials. If, when the documentary airs, we learn that former Congressman-Director-Secretary Panetta has violated Government secrecy rules (which continue to bind officials after they leave office), the Executive Branch can take appropriate action against him.

    (vi)    *The Government conducts targeted killings in Yemen, including through the use of drones.*

—TS/███████████████████

TS/ ▮▮▮▮▮▮

(vii)   *The CIA in particular conducts targeted killings in Yemen, including
through the use of drones.*

I will discuss these two "facts" together, since the second is just a more specific
version of the first. Neither has been officially acknowledged.

The ACLU's support for the more general proposition that the US Government
conducts "targeted killings" in Yemen comes from *NYT I,* in which the Second Circuit
stated, "It is no secret that al-Awlaki was killed in Yemen." Since the Government has
officially acknowledged that it killed Aulaqi, it certainly can be held to have officially
acknowledged that it conducted at least one targeted killing using a drone in Yemen.
Also, it is the law from and after *NYT I* that the CIA had some sort of unspecified
operational role in the use of drones – although the Second Circuit has repeatedly refused
to rule that anything more specific than this had been officially disclosed. I simply cannot
read anything more into the sources cited by the ACLU that has already been discussed
by the Court of Appeals in *NYT I.* To the extent of the Circuit's holding in *NYT I* the
fact of targeted killing using drones in Yemen has been officially acknowledged – but
nothing more has been acknowledged.

As for the June 2010 quote from then-CIA Director Panetta, the gentleman would
not even confirm that Aulaqi was on an "assassination" list – he only confirmed that the
United States Government considered the man to be a terrorist. One cannot infer from
that statement any involvement by the CIA in any targeted killings, using drones or
otherwise, in Yemen or anywhere else. The CIA's operational involvement in the use of
drones is deemed admitted. The Second Circuit has so held. The Government did not
appeal from that decision. End of discussion.

TS/ ▮▮▮▮▮▮

TS/███████████

(viii)   *The Government conducts targeted killings in Somalia, including through the use of drones.*

(ix)   *The Government conducts targeted killings on Libya, including through the use of drones.*

Again, I will discuss these two propositions together.

The broadly-worded statements the ACLU would have me deem officially disclosed do not pass muster. However, Pentagon spokesmen have disclosed that (1) the United States military has taken direct action in Somalia against members of al-Queda, killing in particular Ahmed Godane, Yusuf Dheeq and Adan Garar; (2) a U.S. conducted airstrike killed Godane and drone strikes killed Dheeeq and Garar. There has been official acknowledgement of those particular targeted killings. Indeed, it would be correct to say that the Government has acknowledged that the United States has carried out three targeted killings in Somalia, and that two of them involved the use of drones.

As for the statement about Libya: again, Pentagon spokesmen have confirmed, and so have officially acknowledged, that one targeted killing has been carried out in Libya, that of Mokhtar Belmokhtar, an al-Queda operative. The means used to carry out the killing is not specified and so is not acknowledged. The statements by Secretary Panetta from 2011 do not constitute official acknowledgement of any fact.

(x)   *A September 17, 2001 Memorandum of Notification signed by President Bush authorizes the CIA to take lethal action against suspected terrorists.*

The ACLU's primary source for this proposition cited by the ACLU is a book written by a former CIA lawyer, John Rizzo, entitled "Company Man: Thirty Years of Controversy and Crisis in the CIA." Mr. Rizzo served for seven years as the CIA's Chief Legal Officer during the Administration of George W. Bush. The ACLU offers not a scintilla of evidence that any current Government official – indeed, that any official who

33

TS/

worked in the Administration that has been in office now for over seven years — has ever acknowledged the stated proposition.

The CIA has particular protections against unintended FOIA waivers; Congress has expressly provided that only an official of the CIA can waive FOIA exemptions with respect to information about the Agency and its operations. *See Wilson*, 586 F. 3d 171, 186-87 (2d Cir. 2009). Coupled with the settled proposition (discussed above) that vests only current Government officials with the power to waive FOIA exemptions on behalf of their agencies, it stands to reason that nothing in Mr. Rizzo's memoir can possibly be held to constitute "official acknowledgement" of anything. The ACLU again argues that this court should ignore the fact that Mr. Rizzo, a private citizen long out of Government, is no longer authorized to speak for the CIA (if indeed he was ever authorized to speak publicly for the CIA about classified matters, which I very much doubt). Once again, I decline to do so.

The ACLU than adds an interesting twist to its argument. It notes that Rizzo's book must have been subjected to pre-publication scrutiny by the CIA and insists that any statements that cleared such scrutiny have been officially acknowledged — and by the current Administration, for which Rizzo never worked. It is a tantalizing theory. In the end it does not succeed.

The CIA does indeed have a Publications Review Board, which is charged with reviewing, coordinating, and formally approving all proposed nonofficial, personal publications on intelligence-related matters for public dissemination. PRB review is designed to balance the First Amendment rights of current and former employees against the national security needs of the U.S. Government. All current and former employees

TS/ █████████

must submit to the PRB any written, oral, electronic or other presentation intended for publication, whether personal or official, that mentions CIA or intelligence data or activities or material on any subject about which the author had access to classified information in the course of his/her CIA employment. If the PRB identifies classified material within a publication, it will try to work with the author to find acceptable substitutions – for example, referring to a geographic area (the Middle East) instead of a specific country (Saudi Arabia).



TS/ █████████



TS/



TS/

TS/ █████████████████████

████████████████████████████████████

██████████████████████████████████████████

███████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████

██████████████████████████████████████

████████████████████████

     The other cited source is three paragraphs from a  June 2007 Declaration from

Marilyn Dorn (PX 3 at ¶¶66-68), which does identify that President Bush signed a 14

page Memorandum to the Director of the CIA on 17 September 2001, which

memorandum authorized the CIA to detain suspected terrorists. The Government

declassified this information shortly before this court wrote its final opinion in NYT and

the limited nature of the declassification was discussed in that opinion *American Civil*

*Liberties Union, et al., v. Department of Justice*, 12 Civ. 794 (CM), 6/23/15, unredacted

opinion, *supra*, at 16-29. The only disclosures in the cited paragraphs relate to CIA's

detention authority; no other type of clandestine operation is mentioned – certainly not

lethal action. The court construes this as a fishing expedition by the ACLU to try to

obtain confirmation of Mr. Rizzo's assertions, which is not a proper use of FOIA.


     (xi) *The OLC provides legal advice establishing the legal boundaries of the targeted- killing program.*

     For this general proposition, the ACLU cites testimony from both Director

Brennan and Attorney General Holder concerning the role of OLC in connection with the

TS/ ███████████████████

TS/██████████████████████

certain unspecified counterterrorism operations. Since OLC lawyers wrote the OLC-DoD Memorandum and the Draft White Paper, it would be difficult to say that OLC did not provide legal advice about targeted killing; it literally wrote the book on the subject. However, OLC does not "establish boundaries;" it offers advice about where the boundaries ought to be (generally) and whether a specific operation appears to fall within the presumed boundaries (specifically). In the end, the client agencies establish the boundaries and determine what constraints operate on their behavior. That they do so after consulting with their lawyers, including the lawyers at OLC, is only to be expected.

The court deems it officially acknowledged that OLC has provided legal advice concerning the legality of targeted killing operations. Again, and to avoid any confusion, that acknowledgement does not waive exemptions with respect to any legal advice given in connection with any particular situation.

> (xii)   *The government conducts before-and-after the fact legal and factual*
> *analysis of lethal strikes.*

Officially acknowledged. This acknowledgement does not waive exemptions with respect to the analysis of any particular situation.

> (xiii)   *Innocent bystanders have died or been injured as a result of U.S. drone or*
> *other targeted killing strikes.*

Officially acknowledged, by President Obama in May 2013.

So the following facts are deemed officially acknowledged in addition to the facts that were deemed officially acknowledges in NYT (I will pick up with the next numbered fact, the last officially acknowledged fact was Fact 7):

8.   The Government uses drone to carry out targeted killings.

TS/██████████████████████

─TS/ ███████████████

9. ████████████████████████████████████
████████████

10. The United States military has taken direct action in Somalia against members of al-Queda and has killed three of them: Godane (by air strike) and Dheek and Garar (by drone).

11. The United States killed Mokhtar Belmokhtar in Libya using fighter jets.

12. The Office of Legal Counsel has provided legal advice on issues related to targeted killings.

13. The Government conducts before and after the fact legal and factual analysis of lethal strikes.

14. Innocent bystanders have died or been injured as a result of U.S. drone or other targeted-killing strikes.

These facts, along with the seven facts listed at pages 11-12 above, will be deemed officially acknowledged as the court reviews the Vaughn Indices provided by the Defendant Agencies.

✱ ✱ ✱ ✱ ✱ ✱ ✱ ✱ ✱ ✱ ✱ ✱ ✱ ✱ ✱ ✱ ✱ ✱ ✱ ✱ ✱ ✱ ✱ ✱ ✱ ✱ ✱ ✱

What follows is a document-by-document ruling on the items that appear on the Vaughn Indices of the Defendant Agencies. A ruling in favor of the Government should be read to imply that the court has considered whether the document includes information about one or more of the 14 Officially Acknowledged Facts — and has concluded that there has been no waiver of FOIA protection for that

─TS/ ███████████████

TS/█████████████████

document by virtue of any Officially Acknowledged Fact.[8] Since nearly every

document on the Vaughn Indices contains some application of the legal analysis in the

OLC-DoD Memorandum to a particular situation, country, organization or person – and

since this court has ruled that disclosure of the "hornbook" does not constitute official

acknowledgement of the facts in every instance where the hornbook analysis is applied –

it should come as no surprise to the reader to learn that the court is essentially granting

the Government's motion for summary judgment.

---

[8] The government itself acknowledges that many of the documents include non-segregable
information about Previously Acknowledged Facts 1-4.

TS/████████████████

TS/█████████████

## OFFICE OF LEGAL COUNSEL DOCUMENTS

**OLC Document No. 306: Presidential Policy Guidance.** Copy of a classified

document, dated May 22, 2013, entitled "Procedures for Approving Direct Action

Against Terrorist Targets Located Outside the United States and Area of Active

Hostilities" (final version of the Presidential Policy Guidance, or PPG).[9] This document

provides detailed guidance from the president to his most senior advisors on the standards

and process to be applied for approval of direct action against terrorist targets. (TS/NF)

It was to obtain disclosure of this document that this case was filed.

The PPG (which is described in press accounts as "the Playbook,") is the OLC-

DoD Memorandum equivalent for this iteration of the ACLU's long-running attempt to

obtain documentation about the legal bases, both general and case-specific, for lethal

counter-terrorism operations carried out by the Obama Administration. It lays out the

rules the Government intends to follow when seeking approval for, and carrying out,

lethal operations outside the United States and "hot zones" of wartime activity.

The ACLU is aware of the existence of this document and has specifically

demanded its production by name, arguing that it is not shielded by FOIA because it

represents an actual, final United States Government working law and official policy,

and so is not shielded by FOIA Exemption (b)(5). The ACLU also argues that any FOIA

exemptions or privileges have been waived by virtue of the President's public release of a

Fact Sheet relating to this document.

---

[9] Multiple defendant agencies identified the PPG as responsive, and Plaintiff has
indicated that it continues to challenge the withholding of this document. In accordance
with the Court's instruction, the document is addressed one time, in OLC's classified
*Vaughn* index.

TS/███████████

~~TS~~/█████████████████

The Fact Sheet notwithstanding, the Government originally asserted that the full text of the PPG could not be produced, for a variety of reasons. Portions of the PPG were withheld in part under Exemptions 1 and 3, on the ground that the information contained therein were properly and presently classified (Exemption 1) and that the disclosure of portions of the document would violate the National Security Act by disclosing intelligence sources and methods (Exemption 3). Although the PPG appears to be a final policy document, it was also withheld on the grounds of attorney-client and deliberative privilege, but only as to OLC's copy; the Government did not contend that copies of the PPG that were sent to other Executive Branch agencies were exempt from disclosure under Exemption b(5) due to either attorney-client or deliberative privilege. The Government acknowledged that the document included references to several Previously Acknowledged Facts, but asserted that those facts could not reasonably be segregated from the rest of the document.

Finally, the entire PPG was withheld pursuant to the "presidential communications" privilege.

In an opinion dated February 25, 2016, the court ordered that the PPG be produced for *in camera* inspection. The Government was directed to mark the document so that any portions that had already been publicly disclosed were clearly indicated. In addition, because the Government had asserted the presidential communications privilege, the court discussed the parameters of that privilege (which had not been previously invoked, and so was not discussed in any of this court's earlier decisions) and demanded that the Government identify all recipients of the PPG, in order to facilitate assessment of whether that privilege could possibly apply to this document.

~~TS~~/█████████████████

—TS/ █████████████████

The Government's first response to the February 25 Order was to file a letter with the court, dated March 4, 2016 (Docket #67). In that letter, the Government asserted that it had long been engaged in an exercise designed to facilitate the public release of additional portions of the PPG.[10] By the time the PPG was produced to this court for *in camera* inspection, the Government had abandoned its assertion of the presidential communications privilege altogether,[11] and it was prepared to waive all other privileges as to 85% or more of the text of the PPG. Outlined in red on the copy of the PPG produced to this court are those portions of the document that the Government asserts are still exempt under one or more sections of FOIA. The Government plans to produce the rest of the document to the ACLU, though it hopes not to do so until judicial review of its remaining claims of privilege and proposed redactions is complete. (This court is not prepared to acquiesce in further delay in the production of those portions of the PPG that the Government concedes are disclosable; that will be dealt with in the final order in this action).

The information that the Government proposes to redact from the version of the PPG that it makes public falls into eleven separate categories (although many redactions fall into more than one category). The easiest thing for the court to do is to list those categories, explain why the Government believes the redacted information remains exempt from FOIA disclosure, and make a ruling with respect to the category as a whole:

Category I: ████████ █████████████████ ██████████████
████████████████████████████ ███ █████████████████

---

[10] The Government made no such assertion in its original classified Vaughn Index.

[11] I assume that its abandonment of the presidential communications privilege is the reason why the Government did not provide the court with a list of recipients of the document.

—TS/ █████████████████

T̶S̶/̶ 

*Ruling: The court has no issue with the propriety of the Group I redactions.*

**Category II:**

T̶S̶/̶

—TS/ ███████████████

████████████████████████████████████ █
███████████████████████ █

The court thus rejects the Government's assertions of privilege and concludes that any such privileges have been waived. The Government is directed to remove all redactions that are grounded solely in Category II prior to production.

███████████████████
█████████████████████████
█████████████████████████
█████████████████████████
████████████████████
██████████████████████████
██████████████████████
██████████████████████
███
█████████████████████
███████████████████
████████████████
███

**Category III:** ██████████████████
██████████████████████

**Category VIII: References to Certain Government Officials and Components**

████████████
█ █████████████████████████████ █
████████████████████████████

47

TS/ ████████████████

I discuss these two categories together, since they raise more or less the same issue.



Category VIII is another matter altogether.

There are references throughout the PPG to the many senior Government officials who play a role in the decision-making process for targeted overseas activities, ████ ████████████████████████████████ general counsels of operating agencies, the National Security Staff, the NSS Legal Advisor, members of the Counterterrorism Security Group, the Office of the Director of National Intelligence, ████████████████ the National Counterterrorism Center, and several ad hoc Counterterrorism Groups. The document also contains references to the Department of Justice (in its entirety, apparently) and to the Department of Homeland

48

T̶S̶/̶ ████████████████████

Security (also in its entirety, which would encompass agencies such as the U.S. Coast Guard, the Federal Emergency Management Agency and the Animal and Plant Health Inspection Service),

The Government asserts that the job titles of these individuals and the identity of these agencies can be shielded from public disclosure pursuant to FOIA Exemption 7, which protects from disclosure certain "records or information compiled for law enforcement purposes" to the extent that disclosure "could reasonably be expected to endanger the life or physical safety of any individual." The Government contends that the members of what I will call the "PPG Working Group" are in danger from terrorists who might target them in order to obtain revenge for operations authorized pursuant to the PPG process.

The Government's invocation of Exemption (b)(7)(F) requires the court to answer at least one and possibly two questions. The first question is whether the document known as the PPG – a document entitled Procedures for Approving Direct Action Against Terrorist Targtets Located Outside the United States and Areas of Active Hostilities" – can fairly be said to have been "compiled for law enforcement purposes?" If the answer to the first question is yes, the second question is: can it reasonably be expected that the members of the PPG Working Group would find themselves in physical danger if their identities are revealed?

I confess that I am astounded by the Government's chutzpah in invoking the exemption for law enforcement activities – an exemption written to protect informants, confidential sources, persons in witness protection and undercover law enforcement agents from public exposure, *Maydak v. Dep't of Justice*, 362 F. Supp. 2d 316, 321 n.4

T̶S̶/̶ ████████████████████

—TS/███████████████

(D.D.C. 2005) – in order to shield the titles of the members of the PPG Working Group from disclosure. For a decade and a half, through two different Presidential administrations -- one from each of the major political parties -- the Government has gone to great lengths to eschew the "law enforcement model" for dealing with international terrorism and the terrorists who are the subject of its enforcement actions abroad and the ACLU's FOIA requests. The Government's counterterrorism operations overseas are not to be thought of as "law enforcement" and they are not carried out in the manner of law enforcement; they are "war," – a Global War on Terror, to be precise. In reliance on the "war" rubric, two Presidents have specifically invoked, not their authority to "take care that the laws be faithfully executed," but their Commander-in-Chief power as unleashed by the 2001 Authorization to Use Military Force (still the only Constitutionally-compliant resolution passed by Congress in satisfaction of its unilateral Constitutional power to declare war). They have relied on that power to justify lethal action taken abroad against individuals believed to be terrorists, and to incarcerate without indictment and/or trial individuals believed to be terrorists many who were captured as "prisoners of war" (and who would have had to be tried or released long ago if they were being held under any sort of "law enforcement" scheme).

     Let us make no mistake: The Government has never treated its international counter-terrorism operations as a law enforcement operation. Rather, it has repeatedly invoked the law of war in order to treat these operations as part of a war. As Attorney General Holder said in his well-publicized speech at Northwestern Law School in 2012, "We are a nation at war." Spurlock Ex. 17, at 1 of 8. John Brennan, who then wore the hat of National Security Adviser to the President, said the same thing in a speech at The

—TS/███████████████

Wilson Center. Spurlock Ex. 19 at 10/16. And while the Government has afforded a select few accused terrorists who were captured overseas the luxury of criminal prosecution in a duly constituted United States District Court, even those fortunate few, like Ahmed Ghailani and the Somali pirate Ahmed Warsame, were captured as a result of activity that is as far removed from "law enforcement" as it is possible to get.[13]

However, the undeniable fact that the Government has not followed a law enforcement model in dealing with international terrorists is not dispositive of the FOIA question. Neither is the fact that the agencies directly involved in the PPG Working Group process -- the Department of Defense, the CIA, ███████████████ the National Security Council and the Department of State -- are not "law enforcement agencies." Agencies whose principal function is not law enforcement can invoke the law enforcement exemption and its special (b)(7) confidentiality clause -- but they can only do so if the document containing the information they seek to shield from public view was in fact "compiled for law enforcement purposes." *American Civil Liberties Union v. Dept. of Defense*, 389 F. Supp. 2d 547, 570 (S.D.N.Y. 2005). Furthermore, a court must apply "more exacting scrutiny" when considering Exemption 7 claims from agencies whose principal function is not law enforcement. *Pratt v. Webster*, 673 F. 2d 408, 416 (D.C. Cir. 1982). As one court put it, the court should "kick the tires of its claimed exemptions with a bit more force" if the principal function of the agency claiming the law enforcement exemption is not law enforcement. *Elkins v. Fed. Aviation Admin.*, 99 f.

---

[13] Ghailani was purportedly captured in Pakistan by Pakistani military forces in a joint operation with the United States; he was detained at secret locations abroad and transferred to Guantanamo Bay, where he spent many years before being transferred to the Southern District of New York, where he stood trial on an indictment that pre-dates 9/11 and the GWOT. Warsame was captured (not by law enforcement personnel) aboard a fishing vessel transiting the Gulf of Aden, in international waters between Yemen and Somalia. He was held and interrogated on a United States Naval Ship (USS Boxer); his first interrogators were not representatives of the law enforcement community, but were intelligence officers.

TS/█████████████

Supp. 3d, 90, 98 (D.D.C. 2015)(quoting *Pub. Employees for Environmental Responsibility v. U.S. Section, Int'l Boundary & Water Commission U.S. –Mexico*, 740 F. 3d 195, 203 (D.C. Cir. 2014).

Here, such forceful tire-kicking is more than warranted, if only because none of the agencies involved in the PPG decision-making process are "law enforcement agencies," and several are barred by law from undertaking law enforcement activities. The CIA is specifically barred by law from undertaking law enforcement activities in the United States. 50 U.S.C. § 3036 (d) (1) (formerly 50 U.S.C. § 403-3 (d) (1)) ("The Director of the Central Intelligence shall have no police, subpoena, or law enforcement powers or internal security functions."). The same is true of other intelligence agencies under the National Security Act of 1947. Not only is law enforcement not the "principal function" of the Army, Navy and Marine Corps – their principal function is undertaking the defense of the country -- but the armed services are actually barred by the *Posse Commitatus* Act, 18 U.S.C. §1385, from undertaking law enforcement operations – a term that includes investigating crimes, searching persons and property and interviewing witnesses, *see State v. Pattioay*, 896 F. 2d 911, 916-18 (Haw 1995) – in the absence of some express Act of Congress. Carrying out lethal operations and capturing suspected terrorists abroad does not qualify as giving "passive aid" to civilian law enforcement (the beneficiary of the law enforcement exception), which is all that is permitted under *Posse Comitatus* and its clarifying statute, the Military Support for Civilian Law Enforcement Agencies Act, 10 U.S.C. §371 et seq.. This court is unaware of any Act of Congress that carves out an exception to these statutes for operations relating to international

TS/██████████████

TS/ ████████████████████

terrorists -- certainly not the AUMF, which says nothing whatever about law enforcement and has always been treated as the equivalent of a declaration of war. The only cases this court has found in which the armed services have invoked the law enforcement exemption to FOIA relate to the investigation and prosecution of crimes by service members under the Uniform Code of Military Justice – not to counterterrorism operations of a military or quasi-military nature against foreign persons.

Interestingly, and significantly, the Executive Branch agencies whose portfolio actually does include law enforcement *have no formal role to play in the actual PPG decision-making process!* Agencies including ██████ The Department of Homeland Security (home of the Drug Enforcement Administration and Customs and Immigration Enforcement) and Treasury – all of which are, first and foremost, "law enforcement agencies" – may be invited to participate as in the PPG process, but only as "observers," not decision-makers. Furthermore, they are only invited to "observe" after some other, non-law enforcement decision makers decide that capture of a suspected terrorist is feasible. *See* Hudson Decl. at ¶43 and the PPG at Section 3.D.2. ██████, Homeland Security and Treasury are mentioned in a footnote on page 8 of the PPG as being involved in the process of "reviewing and organizing material and addressing any issues related to the nomination of an individual for capture, custody, or long-term disposition" – i.e., those individuals are invited to participate in a process to nominate" individuals who might be considered for operations that would not involve lethal action – but ████ ████████████ "observers" have no role to play in the final decision relating to any such individual, and the law enforcement agencies under the Homeland Security umbrella are not even accorded "observer" status.

—TS/█████████████████

In its supplemental submission/de facto motion for reargument, the Governemnt "respectfully" calls to the court's attention its belief that the Department of Justice and the Department of Homeland Security, both of which are law enforcement agencies, are identified in the PPG as playing a role in the decision-making process. Equally respectfully, I disagree. As the text relating to the above-mentioned footnote reveals, these agencies are represented on something called the Restricted Counterterrorism Security Group, which is convened "for the purpose of reviewing and organizing material and addressing any issues related to the nomination of an individual for capture, custody, or long-term disposition." But a close reading of the text of the PPG reveals that the RCSG does not actually nominate individuals for capture, custody or long-term disposition; it simply organizes and forwards relevant material about such individuals to the real decisionmakers in the PPG process, none of whom works for a law enforcement agency. *See* PPG at page 8, Item 2.B.5. The other references that the Government calls to my attention in order to make its point are to the same effect; for example, the Department of Justice may formally request that a suspect be considered for capture, but cannot make and does not participate in making the final decision on that request (*see* PPG at page 6, Item 2.A.1); *see also*, Section 3.D.2 at page 13 (Deputies at DoJ and DHS limited to recommending to Principal of nominating agency (which does the actual deciding) that "lethal action" without benefit of indictment and trial– which is by definition not a "law enforcement activity" under our Constitution and laws, and which I hope and pray will never be mistaken for "law enforcement" in this country – be taken;

████████████████████████████████

████████████████

54

—TS/█████████████████

The complete absence of law enforcement personnel from membership in the PPG decision-making group probably explains why the Government did not rely on the (b)(7) (F) exemption in its initial filing with this court, or at any point, during either this lawsuit or its predecessor, until the court demanded the production of the PPG for *in camera* inspection. I venture to suggest that, until the court asked to review the PPG, no one in the Government seriously considered the PPG to be document that was "compiled for law enforcement purposes."

But in order to shield the identity of the members of the PPG Working Group from disclosure, the Government now theorizes that the PPG was "compiled" for law enforcement purposes as well as counterterrorism purposes. It justifies this conclusion by noting that the term "direct action against terrorist targets" includes "procedures and criteria for the capture of individuals and the preservation of evidence for later prosecution." It further asserts that, not only the Working Group members, but the identity of the law enforcement agencies who are invited to "observe" the PPG process (DoJ, Homeland Security) is exempt from disclosure under (b)(7)(F) -- even though the exemption by its terms applies only to individuals, and not to agencies at all![14]

I applaud the lawyerly creativity that went into crafting this argument. But I reject it, as well as the Government's invitation to extend this particular FOIA exemption beyond the bounds of reason. The PPG was *not* compiled for law enforcement purposes; it does not govern the conduct of law enforcement officials or set out any procedure for making or carrying out law enforcement decisions. Its very title — *Procedures for Approving Direct Action Against Terrorist Targets Located Outside the United States*

---

[14] I am not quite sure how an entire governmental agency could be in reasonable fear for its physical safety, although several are frequently identified by members of Congress for defunding and closure.

—TS/██████████████

TS/█████████████████████

*and Areas of Active Hostilities* – gives the lie to any such notion. So does the fact that 99% or more of its contents relate exclusively to lethal action against individuals, not to their prosecution. So does the fact that, pursuant to the detailed procedures set out in the PPG, law enforcement personnel play no active role in determining the fate of the "terrorist targets" who are the subject of PPG Working Group scrutiny. And so does the fact that the miniscule aspects of the PPG that might arguably touch on "law enforcement" do not concern actual law enforcement activities, but activities precedent to law enforcement operations – such as the taking of a decision to capture a suspected terrorist, rather than to kill him. Any "law enforcement" impact resulting from the decisions of the non-law enforcement personnel who are *actors* (as opposed to *observers, or in limited circumstances, information gatherers or recommenders*) under the PPG protocol is purely incidental to and utterly attenuated from the text and the purpose of this presidential guidance -- which (and I have read every word of it) is nothing less than a set of Rules of Engagement for certain types of ██████████████ counterterrorist operations conducted abroad.

In short, this court rejects the Government's suggestion that FOIA Exemption (b)(7)(F) extends to the PPG. The exemption has nothing to do with such a document, because the document was not compiled for law enforcement purposes.

That alone is sufficient to reject the Government's argument that the job titles of the members of the PPG Working Group can be shielded from disclosure by virtue of the (b)(7)(F) exemption. However, there is yet another reason why the exemption does not apply: the Government has not demonstrated that these officials are reasonably and it may not be relied on to shield any portion of the PPG from public disclosure.

TS/██████████████████

TS/███████████

All of the members of the PPG Working Group – the persons who at any given time hold the "job titles" that the Government would keep secret -- carry out their roles in the PPG decision-making process from the relatively safety of Washington DC and Northern Virginia -- where, as the President has recently and famously asserted, they are far more likely to be killed by falling in a bathtub than by terrorists. *See*, Jeffrey Goldberg, "The Obama Doctrine," *The Atlantic*, April 2016.  Nonetheless, the Government asserts that the individuals who occupy these job titles would be in special danger of being targeted by terrorists "seeking to exact revenge on those involved in the direct action process." (Hudson Decl. at ¶¶ 20- 39 and 39-46).

In its classified submissions, the Government does not point to any intelligence that might corroborate this wholly conclusory assertion. It can hardly be asserted as an evidence-based proposition, because, to date, no high level official involved in making counter-terrorism decisions from the United States (and there have been many such decisions) has been killed, or even injured, by terrorists, foreign or domestic. Indeed, a decade and a half's experience since 9/11/2001 suggests that Government officials involved with these sorts of decisions are probably the least likely persons to be "targeted" by terrorists, who have thus far exhibited a preference for soft civilian targets within the United States – random citizens in public places, not high level decision-makers who ride around in black cars with security details,[15]

Nor have the incumbents in many of these positions taken great care to keep their participation secret. In connection with the Aulaqi targeted killing, the job titles of many

---

[15] The 9/11 attack on the Pentagon did not target the holders of specific job titles, such as the legal adviser to the National Security Agency; it was, rather, a random attack, in that it "targeted" anyone and everyone who happened to be in the building devoted to the nation's defense when a plane crashed into it.

TS/███████████

TS/ █████████████████████

who were involved in the decision process – including the President, the Director of the CIA, the General Counsels of the CIA and Defense Departments and the Legal Adviser to the State Department, and others (but not including the Attorney General) – have been made public, if only because those individuals have discussed their participation publicly and extensively, in dozens of subsequent interviews and in memoirs that line the bookshelves of those interested in national security policy. In this Circuit, at least, the CIA is collaterally estopped from denying that its Director was involved in the Aulaqi operation, because he "admitted" it on television. *NYT 1* at 119; *see also*, *New York Times Co. v. U.S. Dep't. of Justice*, 915 F.Supp2d at 530-531. Yet none of these individuals, some of whom have long since left Government service, has been harmed. Their lack of secrecy about their participation suggests that they do not believe it can "reasonably be expected" that their "life or physical safety" is endangered.

It is, therefore, all but impossible to ascertain a principled basis for the Government's assertion that PPG Working Group members can "reasonably be expected" to find themselves in greater danger to their "life or physical safety" than any of the rest of us are as a result of the decisions they make. As the Government offers not a scintilla of evidence to justify this proposition, this court cannot and will not defer to the Government's conclusory "assessment." The Government simply has not made the case for the proposition that failing to redact the job titles of the persons involved in the PPG Working Group will subject them to undue risk of harm.

So the question becomes whether there is any other basis under FOIA to withhold this information ██████████████████████████████
████████████████████ There is not.

—TS/ ██████████████

Shorn of the shield of the law enforcement exemption, the rest of the PPG participants can rely only on classification and Exemption (b)(1). The Government takes the position before this court that the job titles of the persons involved in the PPG process have never been made public and are, in fact, classified.

Well, it is not strictly true that this information has never been made public. The Fact Sheet, to take one example, discloses that decisions to capture or use force are made at the most senior levels in departments and agencies that have "relevant expertise and institutional roles." There really is no need to point out that "relevant expertise" in

███████████████████████████████

████████ that the State Department and National Security Council would have "institutional roles" to play in connection with inter-state security operations like these. Having publicly disclosed that (1) only the "most senior level" officials are involved in the PPG process, both on the policy side (which translates into the Secretary or Director and Deputy Secretary or Director) and on the legal side (the actual General Counsel, not some underling), as well as that (2) only those departments and agencies with "relevant expertise" and "institutional roles" are consulted, it really is not necessary for the Government to disclose a complete list of the players in order to waive classification of the identities of the PPG Working Group. What is affirmatively disclosed is sufficient to eliminate senior officials at the Department of Education and the Social Security Administration from consideration.

In fact, the identities of the "senior officials" in departments and agencies with "relevant expertise and institutional roles" have never been kept a secret by the Government. In a speech he gave in 2012 at Yale Law School, then-DoD General

—TS/ ████████████████

Counsel (and now Secretary of Homeland Security) Jeh Johnson identified the
"sophisticated consumers of legal advice" about national security matters – the people
who "scrutinize and challenge" the work of high level lawyers like himself – as "The
President, the Vice President, the National Security Adviser, the Vice President's
National security adviser, the Secretary of State, the Secretary of Defense, the Secretary
of Homeland Security." Spurlock Ex. 16 at 4/11. Those involved in lethal force targeting
are "the lawyers on the President's national security team." *Id.* at 8/11. In his 2012 speech
at The Wilson Center, John Brennan described in vague and general terms a decision
making process for lethal targeting operations – one that "is absolutely nothing casual"
but involves "the extraordinary care we take in making the decision to pursue an al-
Queda terrorist" -- that is in substance identical to the much more detailed PPG.
Spurlock Ex. 18 at 7/16.

But, says the Government, these are ancient disclosures. The PPG was not
promulgated until May 2013, and so the Government's position is that disclosures by or
about participants in earlier operations (like the Aulaqi operation, which took place in
2011) simply does not carry over to the promulgation of the PPG two years later.[16]

Unfortunately for the Government, that dog won't hunt.

The Government admits in its Vaughn Index and supporting papers that it has
"acknowledged generally the involvement of legal counsel and senior agency lawyers" in
the PPG process. Actually, it has done this and more. The Fact Sheet, a publicly-
disclosed document, says that decisions "to capture or otherwise use force against

---

[16] ████████████████████████████ anything that was officially acknowledged after
Aulaqi and in connection with the 2012 speeches would not constitute official acknowledgement of the
details of a policy that was not adopted until May 2013 – even if the list of decision makers includes many
of the same people who were involved in the Aulaqi operation.

TS/██████████████████████

individual terrorists outside the United States and areas of active hostilities are made at

the most senior levels of the U.S. Government, informed by department and agencies

with relevant experience and institutional roles. Senior national security officials –

including the deputies and heads of key departments and agencies – will consider

proposals to make sure that our policy standards are met, and attorneys – including the

senior lawyers of key departments and agencies – will review and determine the legality

of proposals." Spurlock Decl. Ex. 33, pages 2-3. The Fact Sheet specifically limits the

Working Group to "key" departments and agencies "with relevant experience and

institutional roles." There is no need to guess what those agencies and departments might

be; the Government has not even bothered to redact that information from the version of

the PPG that it plans to disclose! Available for public consumption are the job titles of

certain PPG decision-makers, including the President, the Secretary of Defense, the

National Security Council (whose members can be identified by a Google search), as

well as the "Principals" and "Deputies." The term "Principals" is a reference to the so-

called Principals Committee, which, according to publicly-available sources, consists of

the Secretaries of State, Defense and Homeland Security, the Chairman of the Joint

Chiefs of Staff, the Attorney General, the Director of National Security, the CIA and the

National Counterterrorism Center. The term "Deputies" refers to the corresponding

committee of their Deputy Secretaries. And every one of those agencies and departments

has "relevant experience and institutional roles" with the making of GWOT policy.

In short, it is perfectly obvious what lawyers and senior advisers work together

with these decision makers, whose identity was so obvious as not to require redaction.

They are the lawyers at OLC, the General Counsel to the Joint Chiefs of Staff, the Legal

TS/██████████████████████

TS/

Adviser to the State Department, the General Counsel of the CIA and the Defense

Departments, and the members of the National Security Council staff.  To be blunt, it

does not take a genius to figure out who is in the PPG Working Group. However, in its

effort to be at once "transparent" and secretive, the Government has given away the

game, by including the identities of most relevant decision-makers in the Fact Sheet. The

inconsistency between not redacting the identities of at least some PPG decision makers,

insisting that they rely on lawyers and senior advisers,  but redacting the identities of

those lawyers and senior advisers, is glaring.



Ruling: The Government may redact the Category III references to ▮▮▮▮

▮▮▮▮▮▮  It may not rely on FOIA Exemption (b)(7)(F) to shield the job titles

of those who participate in the PPG Working Group (Category VIII), and has long since

waived classification of the identities of the high level participants in the PPG Working

Group by disclosing that they are in fact senior (at the Secretary and Deputy level) and

persons at the highest level of departments and agencies with "relevant expertise and

institutional roles" in foreign affairs and counterterrorism. The Government may not

TS/ ███████████████████

*redact Category VIII information, except to the extent that Exemption (b)(3) applies. It*

*may redact references to* ████

**Category IV: References to** ████████████████

The Government asserts that references to ████████████████ in

the PPG include information regarding ████████████████ and are

exempt from disclosure, both because they are classified (Exemption (b)(1)) ████████

████████████████████

*Ruling: I agree that references* ████ ████ *as set forth at pages 15 and 16 of the*

*Hudson Declaration, should be redacted.*

**Category V: References to** ████ ████ ████████

There are several references in the PPG to ████████████████

████████████████████

████ is highly classified, ████████████████

████ The Government argues that disclosure of this classified fact could cause grave

damages to our relations with intelligence partners, and would reveal sensitive sources

and methods ████████████████ There are two such

references in the PPG; they are listed at page 17 of the Hudson Declaration.

*Ruling: These two references may be redacted under FOIA Exemptions (b)(1) and*

*(b)(3).*

**Category VI:** ████████████████

████████████

████████████████████

████████████████████████

TS/ ███████████████

TS/ ███████████████████

████████ ▌ The Government asserts that this fact is also classified and falls within Exemptions (b)(1) and (b)(3). I have no doubt that disclosure of this fact might well lead to "public backlash," as the Government puts it; that, however, is not a reason to exempt these references from disclosure. However, this fact has not been publicly disclosed.

   *Ruling: The five references at the bottom of page 19 of the Hudson Declaration may be redacted pursuant to Exemption (b)(1).*

### Category VII: Intelligence Criteria for Direct Targeting

   This category of references relates to the specific criteria that the Government uses to target terrorist suspects directly for lethal action (PPG Section 3.C.2). Assuming the items on this list of specific criteria were not previously publicly disclosed, it would certainly qualify for redaction under Exemptions (b)(1) and (b)(3). The Government did not bother to review for the court the various "disclosure" documents (other than the OLC-DoD Memorandum and the PPG Fact Sheet) when asserting that consideration of these criteria has not been publicly disclosed, so I did it myself. I conclude that this information has not been publicly disclosed.

   *Ruling: The information at PPG Section 3.C.2 may be redacted.*

### Category IX: ████████████

███████████████████████████████

███████████████████████ That fact is highly classified, and for good reason: ████████████████████████████████

████████████

   *Ruling: This information is exempt under Exemptions (b)(1) and (3) and may be redacted from the PPG before it is turned over.*

TS/ ███████████████████

TS/ ███████████████████

Category X: ████████████ █ ████████████

██████

████████████████████████████

██████ This fact is classified and has never been disclosed.

*Ruling: This information is exempt under Exemptions (b)(1) and (b)(3). It may be redacted when the PPG is publicly disclosed.*

### Category XI: Additional Information About Capture Operations

Finally, the Government asks for permission to redact additional information about capture operations. In this regard, it wishes to keep confidential ███████████

███████████████████████████

███████████████████████████

███████████████████████████

███████████████████████████

███████████████████████████

████████████████████

*Ruling: The details about* ████████ *are classified and highly sensitive;*

███████████████████████████

███████████████████████████

███████████████████████████

*They may be redacted pursuant to Exemptions (b)(1) and (3) before the PPG is produced.*

∗  ∗  ∗  ∗  ∗  ∗  ∗  ∗  ∗  ∗  ∗  ∗  ∗  ∗  ∗  ∗  ∗  ∗  ∗  ∗  ∗  ∗  ∗  ∗  ∗  ∗

One final word: the Government's release of the PPG no more declassifies or waives FOIA protection for details of how the PPG process was used to select particular

TS/▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

individuals for targeting, or how particular targeting operations were planned and carried
out, than the leak of the Draft White Paper and subsequent court-ordered release of the
OLC-DoD Memorandum waived FOIA protection for particular decisions made by the
Government applying the legal principles articulated in those documents. Any argument
to the contrary by the ACLU is hereby rejected.

### OLC Opinions Responsive to the Shane Request but not the previous ACLU Request (U):

Documents ▓▓▓▓▓▓▓ are formal final OLC memoranda providing legal advice
with respect to the targeted use of lethal force. These memoranda were addressed by the
Court on remand in the first *New York Times* and *ACLU* case, *see NY Times v. DOJ*, 1st
Remand Decision dated Sept 30, 2014, but were not responsive to the ACLU's request in
that matter (which was limited to memoranda related to the use of lethal force against
U.S. citizens). Accordingly, although the Court has previously held that these
memoranda were properly withheld in full, the ACLU has not previously had the
opportunity to litigate the propriety of these withholdings. ▓▓▓▓▓[17]

TS/▓▓▓▓▓▓▓▓▓▓▓▓



The Government argues that these documents are subject to the following FOIA exemptions[18]:

---

[18] Consistent with the procedure adopted by the Court in its previous decisions regarding these related FOIA matters, I have chosen simply to quote verbatim the Government's arguments, rather than to try to summarize them in my own words. This process expedites the opinion writing process and has the

TS/ ███████████

- **These documents are exempt in whole or in part under Section (b)(1) because** the documents discuss currently and properly classified information, ████████

████████████████████████████████
████████████████████████████████
████████████████████████████████
████████████████████████████████
████████████████████████████████
████████████████████████████████
████████████████████

- **These documents are exempt under Section (b)(5) and the deliberative process privilege because** they are formal OLC legal opinions provided to senior Executive Branch officials, providing confidential, predecisional legal advice regarding contemplated future counterterrorism operations or contemplated future counterterrorism policy determinations. As such, the opinions are both predecisional (because they are created in advance of a policy decision) and deliberative (because they provide advice to policy-makers), and appropriate to withhold in their entirety under (b)(5). Compelled disclosure would undermine the deliberative processes of the Executive Branch and chill the candid communication necessary for effective governmental decisionmaking. It is essential that the development of OLC's considered legal advice not be inhibited by concerns about compelled public disclosure of predecisional matters. (U)

- **These documents are exempt under Section (b)(5) and the attorney-client privilege because** they contain confidential final legal advice regarding contemplated future counterterrorism operations or policy determinations. As such, they reflect confidential client communications for the purpose of seeking and providing legal advice. OLC was serving in an advisory role as legal counsel to the Executive Branch and providing advice in response to specific legal questions. (U)

- ███████████ **are exempt under Section (b)(5) and the presidential communications privilege because** they are formal OLC legal opinions provided to either White House Counsel ███ or the NSC Legal Advisor ████████ in connection with a potential presidential decision regarding counterterrorism operations. These are direct, confidential communications from the President to

advantage of presenting the reviewing court with a single document in which all information necessary to a decision is contained.

TS/ ███████████

TS/ ████████████████████████

senior officials on sensitive topics, and disclosure would inhibit the President's ability to engage in effective communications and decisionmaking, ████████

- Although these documents contain previously acknowledged facts 1-4, such information cannot reasonably be segregated from material that has not been officially acknowledged and as to which FOIA exemptions have not been waived. Specifically, this material is also subject to the attorney-client and deliberative process privileges, and none of the legal advice contained in these records has been made public. The contents of these documents have not been officially disclosed, nor any applicable privileges waived. (U)

*Ruling: The Court has reviewed all of these documents. For the reasons articulated by the Government, these documents need not be disclosed.*

### Communications from OLC to Executive Branch Clients Containing Final Legal Advice (U):

These documents are emails from OLC to Executive Branch clients providing confidential legal advice regarding contemplated future counterterrorism operations or policy determination in response to specific client inquiries. (U)



TS/ ████████████████████████







The Government argues that these documents are subject to the following FOIA exemptions:

- **These documents are exempt under Section (b)(1) because the documents discuss currently and properly classified information.** ███████████████████████
███████████████████████████████
███████████████████████████████
███████████████████████████████
███████████████████████████████
███████████████████████████████
███████████████████████████████
███████████████████████████████
███████████████████████████████
███████████████████████████████
███████████████████████████████
███████████████████████████████
███████████████████████████████
███████████████████████████████
███████████████████████████████
███████████████████████████████
█████████████████



- **These documents are exempt under Section (b)(3) and the National Security Act** because the documents would reveal sensitive intelligence sources and methods.

- **These documents are exempt under Section (b)(5) and the deliberative process privilege because** they provide confidential, predecisional legal advice to Executive Branch decisionmakers regarding contemplated future counterterrorism operations or contemplated future counterterrorism policy determinations. As such, the documents are both predecisional (because they are created in advance of policy decisions) and deliberative (because they provide advice to policy-makers), and are appropriate to withhold in their entirety under (b)(5). Compelled disclosure would undermine the deliberative processes of the Executive Branch and chill the candid communication necessary for effective governmental decisionmaking. It is essential that the development of OLC's considered legal advice not be inhibited by concerns about compelled public disclosure of predecisional matters. Protecting these documents from compelled disclosure is critical to ensuring that Executive Branch attorneys will examine legal arguments and theories thoroughly, candidly, effectively, and in writing, and to ensuring that Executive Branch officials will seek legal advice from Executive Branch attorneys on sensitive matters. (U)

- **These documents are exempt under Section (b)(5) and the attorney-client privilege because** they contain confidential legal advice regarding contemplated future counterterrorism operations or policy determinations. As such, they reflect confidential attorney-client communications for the purpose of seeking and providing legal advice. OLC was serving in an advisory role as legal counsel to the Executive Branch and providing advice in response to specific legal questions. (U)

*Ruling: Although it is clear from the description in the Vaughn Index that these documents contain previously acknowledged facts 1-4, that information cannot reasonably be segregated from material that has not been officially acknowledged and as to which FOIA exemptions have not been waived. While a handful of targets that the United States has officially acknowledged, such as Anwar al-Aulaqi and Mokhtar Belmokhta, are mentioned in one or more of these documents, information about them is not segregable from otherwise*

TS/

T̶S̶/ ███████████████████

*exempt information, specifically information subject to the attorney-client and deliberative process privileges. I accept the Government's representation that none of the specific legal advice contained in these records has been made public, so the attorney client privilege has not been waived – even though it is entirely possible that the legal advice applicable to a specific potential target is predicated on the legal principles announced in the OLC-DoD Memorandum. The contents of these documents have not been officially disclosed, nor any applicable privileges waived. (U)*

### Classified OLC Informal Talking Points and Summaries Reflecting Legal Advice (U):

These documents, although less formal than the previous group of documents, represent legal advice provided by OLC during the course of ongoing interagency deliberations regarding contemplated future counterterrorism operations or policy determinations. (U)



T̶S̶/ ███████████████████

—TS/ 

The Government argues that these documents are subject to the following FOIA

exemptions:

- **These documents are exempt under Section (b)(1) because the documents discuss** currently and properly classified information.





- **These documents are exempt under Section (b)(3) and the National Security Act** because the documents would reveal sensitive intelligence sources and methods.

- **These documents are exempt under Section (b)(5) and the deliberative process privilege because** they provide confidential, predecisional legal advice to Executive Branch decisionmakers regarding contemplated future counterterrorism operations or contemplated future counterterrorism policy determinations. As such, the documents are both predecisional (because they are created in advance of a policy decision) and deliberative (because they provide advice to policy-makers), and are appropriate to withhold in their entirety under (b)(5). Compelled disclosure would undermine the deliberative processes of the Executive Branch and chill the candid communication necessary for effective governmental decisionmaking. It is essential that the development of OLC's considered legal advice not be inhibited by concerns about compelled public disclosure of predecisional matters. Protecting these documents from compelled disclosure is critical to ensuring that Executive Branch attorneys will examine legal arguments and theories thoroughly, candidly, effectively, and in writing, and to ensuring that Executive Branch officials will seek legal advice from Executive Branch attorneys on sensitive matters. (U)

- **These documents are exempt under Section (b)(5) and the attorney-client privilege because** they contain confidential legal advice regarding contemplated future counterterrorism operations or policy determinations. As such, they reflect confidential attorney-client communications for the purpose of seeking and providing legal advice. OLC was serving in an advisory role as legal counsel to the Executive Branch and providing advice in response to specific legal questions. (U)

- Although all of these documents contain previously acknowledged facts 1-4, such information cannot reasonably be segregated from material that has not been officially acknowledged and as to which FOIA exemptions have not been waived. Moreover, there are a handful of targets that the United States has officially acknowledged, such as Anwar al-Aulaqi and Mokhtar Belmokhtar, but that information is also not reasonably segregable. Specifically, this material is also

TS/███████████████

subject to the attorney-client and deliberative process privileges, and none of the legal advice contained in these records has been made public. The contents of these documents have not been officially disclosed, nor any applicable privileges waived. (U)

*Ruling: For the reasons set forth at pages 13-17, supra, there has been no waiver of privilege with respect to these particularized applications of the general legal principles announced in the OLC-DoD Memorandum. The documents need not be produced.*

**Documents Containing Legal Analysis Exchanged in Interagency Deliberations Related to Counterterrorism Operations (U):**

These documents were in OLC's possession and reflect confidential, predecisional legal advice conveyed during interagency deliberations regarding contemplated future counterterrorism operations or policy determinations. (U)

77

TS/



The Government argues that these documents are subject to the following FOIA exemptions:

- **These documents are exempt under Section (b)(1) because the documents discuss currently and properly classified information.**

TS/

—TS/ ██████████████



- **These documents are exempt under Section (b)(3) and the National Security Act** because the documents would reveal sensitive intelligence sources and methods.

- **These documents are exempt under Section (b)(5) and the deliberative process privilege because** they provide confidential, predecisional legal advice to Executive Branch decisionmakers regarding contemplated future counterterrorism operations or contemplated future counterterrorism policy determinations. As such, the documents are both predecisional (because they are created in advance of a policy decision) and deliberative (because they provide advice to policy-makers), and are appropriate to withhold in their entirety under (b)(5). Compelled disclosure would undermine the deliberative processes of the Executive Branch and chill the candid communication necessary for effective governmental decisionmaking. It is essential that the development of OLC's considered legal advice not be inhibited by concerns about compelled public disclosure of predecisional matters. Protecting these documents from compelled disclosure is critical to ensuring that Executive Branch attorneys will examine legal arguments and theories thoroughly, candidly, effectively, and in writing, and to ensuring that Executive Branch officials will seek legal advice from Executive Branch attorneys on sensitive matters. (U)

TS/ ██████████████

TS/

- These documents are exempt under Section (b)(5) and the attorney-client privilege because they contain confidential legal advice regarding contemplated future counterterrorism operations or policy determinations. As such, they reflect confidential attorney-client communications for the purpose of seeking and providing legal advice. OLC was serving in an advisory role as legal counsel to the Executive Branch and providing advice in response to specific legal questions. (U)

- These documents are exempt in part under Section (b)(6). The names and other identifying information of Department of Justice personnel who are not leadership nor part of the Senior Executive Service (SES) in this document are protected by Exemption 6. The names and other identifying information are subject to the privacy exemption because revelation of this information would constitute an unwarranted invasion of privacy.

*Ruling: Again, for the reasons discussed at pages 13-17 above, these documents need not be produced. To the extent that these documents contain previously acknowledged facts 1-4, and a few contain mention of acknowledged fact 5, I accept the Government's representation that this information cannot reasonably be segregated from material that has not been officially acknowledged and as to which FOIA exemptions have not been waived.   (U)*

### National Security Council Documents Reflecting
### Interagency Legal Deliberations (U):

These documents, circulated by the National Security Staff, all reflect interagency legal reviews conducted during the course of interagency deliberations on proposed counterterrorism operations or policy determinations. These documents generally reflect the process or the substance of legal advice provided to the NSC about proposed counterterrorism operations or policy determinations. (U)

TS/



The Government argues that these documents are subject to the following FOIA

exemptions:

- **These documents are exempt under Section (b)(1) because the documents discuss**
  **currently and properly classified information.**





- These documents are exempt under Section (b)(3) and the National Security Act because the documents would reveal sensitive intelligence sources and methods for the reasons described above. ████████████████████████████

- These documents are exempt under Section (b)(5) and the deliberative process privilege because they convey confidential Executive Branch deliberations regarding contemplated future counterterrorism operations or contemplated future counterterrorism policy determinations. The lawyers' group meets to provide legal advice to the Executive branch decisionmakers. As such, these documents are both predecisional (because they are created in advance of a policy decision) and deliberative (because they provide advice to policy-makers), and are appropriate to withhold in their entirety under (b)(5). Compelled disclosure would undermine the deliberative processes of the Executive Branch and chill the candid communication necessary for effective governmental decisionmaking. It is essential that the development of Executive Branch attorneys' legal advice not be inhibited by concerns about compelled public disclosure of predecisional matters. Protecting these documents from compelled disclosure is critical to ensuring that Executive Branch attorneys will examine legal arguments and theories thoroughly, candidly, effectively, and in writing, and to ensuring that Executive Branch officials will seek legal advice from Executive Branch attorneys on sensitive matters. (U)

- These documents are exempt under Section (b)(5) and the attorney-client privilege because they contain confidential communications among Executive Branch attorneys and their clients regarding contemplated future counterterrorism operations or policy determinations. As such, they reflect confidential attorney-client communications for the purpose of seeking and providing legal advice. These deliberations inevitably reflect the attorney's view regarding the appropriate legal analysis in the circumstances under deliberation, and thus contains implicit legal advice from the attorney to those clients. (U)

- Some documents are exempt in part under Section (b)(5) and the work-product privilege. Document 318 includes advice from civil division attorneys provided in connection with litigation. (U)

—TS/ ████████████████████

*Ruling: This ruling is identical to the rulings that immediately precede it. For the reasons discussed at pages 13-17, these documents need not be produced, because they contain case-specific attorney-client privileged matter as to which the privilege was not waived by the disclosure of the OLC-DoD Memorandum. To the extent that these documents contain previously acknowledged facts 1-4, I accept the Government's representation that this information cannot reasonably be segregated from material that has not been officially acknowledged. (U)*

### Classified Interagency Legal Deliberations Regarding the Legal Basis for the Use of Force against Particular Individuals or Groups (U):

The following documents all contain interagency legal deliberations about the use of lethal force against particular individuals or in particular circumstances and reflect the interagency process underlying the use of lethal force. Many, but not all, of these documents contain discussion of underlying intelligence for particular operations.



The Government argues that these documents are subject to the following FOIA exemptions:

- **These documents are exempt under Section (b)(1) because the documents discuss** currently and properly classified information. ████████████████ ████████████████████████████████ ████████████████████████████████

—TS/ ████████████████



- **These documents are exempt under Section (b)(3) and the National Security Act** because the documents would reveal sensitive intelligence sources and methods for the reasons described above. ████████████████████████████████████ ████████████████████████████████████████████████ ██████████████

- **These documents are exempt under Section (b)(5) and the deliberative process privilege** because they convey confidential Executive Branch deliberations regarding contemplated future counterterrorism operations or contemplated future counterterrorism policy determinations. As such, the opinions are both predecisional (because they are created in advance of a policy decision) and deliberative (because they provide advice to policy-makers), and are appropriate to withhold in their entirety under (b)(5). Compelled disclosure would undermine the deliberative processes of the Executive Branch and chill the candid communication necessary for effective governmental decisionmaking. It is essential that the development of Executive Branch attorneys' legal advice not be inhibited by concerns about compelled public disclosure of predecisional matters. Protecting these documents from compelled disclosure is critical to ensuring that Executive Branch attorneys will examine legal arguments and theories thoroughly, candidly, effectively, and in

-TS/

writing, and to ensuring that Executive Branch officials will seek legal advice from Executive Branch attorneys on sensitive matters.  (U)

- **These documents are exempt under Section (b)(5) and the attorney-client privilege** because they contain confidential communications among Executive Branch attorneys and their clients regarding contemplated future counterterrorism operations or policy determinations.  As such, they reflect confidential attorney-client communications for the purpose of seeking and providing legal advice.  These deliberations inevitably reflect the attorney's view regarding the appropriate legal analysis in the circumstances under deliberation, and thus contains implicit legal advice from the attorney to those clients.  (U)

- **These documents are exempt in part under Section (b)(6).**  The names and other identifying information of Department of Justice personnel who are not leadership nor part of the Senior Executive Service (SES) in this document are protected by Exemption 6.  The names and other identifying information are subject to the privacy exemption because revelation of this information would constitute an unwarranted invasion of privacy.

   *Ruling: Same as the three immediately preceding rulings.  (U)*

TS/ ███████████████

### OFFICE OF INFORMATION POLICY DOCUMENT

**OIP Document No. 2:** ████████████████████



The Government argues that this document is subject to the following FOIA exemptions:

- ████████████████ The document is exempt under (b)(1) because it discusses █████████████████████████████████



- ████████████████ The document is exempt under (b)(3), National Security Act, because they would disclose intelligence sources and methods. ███

- ████████ The document is exempt under (b)(5), the deliberative process privilege. The document sets forth the DOJ's views and recommendations, ████████ ███████████████████████████████████ The thoughts conveyed are pre-decisional, and their disclosure would chill the frank communications necessary for effective government decisionmaking.

TS/ ███████████

#37 ███████████████████████

- ███████ The document is exempt under (b)(5), the attorney client privilege. The document conveys confidential legal advice and facts from senior attorneys to their principal, ███████████████████████████████████████████ ██████████████████████ The confidentiality of these documents has been maintained.

- (U) This document contains previously acknowledged facts 1-4, *see ACLU v. U.S. Dep't of Justice*, Civil No. 12-794, at 5-11. Nevertheless, these facts are entirely intertwined with deliberative and classified material, for which FOIA exemptions have not been waived.

*Ruling: For the reasons articulated by the Government, this document need not be produced.*

## CENTRAL INTELLIGENCE AGENCY DOCUMENTS

**CIA Document No. 2:** ████████████████████████████████



The Government argues that this document is subject to the following FOIA exemptions:

- ████████████████████████████ This document is exempt under Exemption (b)(1) because it would reveal that ███████████████████ ██████████████████████████████████████████

TSA ██████████████████

—TS/



- ████████████████████ This document is exempt under Exemption (b) (3) (National Security Act) because it would reveal sensitive intelligence sources and methods employed ████████████████████

- (U) Exemption (b) (3) (Central Intelligence Agency Act) was asserted to protect the name, titles and specific job functions of CIA employees.

- (U) This document is exempt under Exemption (b) (5) (deliberative process privilege) to the extent that it contains handwritten notations from the General Counsel recommending a certain course of action to the Director of the National Clandestine Service and the Director of the CIA. This document is deliberative because it contains recommendations and legal advice prepared for decisionmakers, ████████████████████ Disclosure of this document would undermine the deliberative process privilege of the government and chill the frank communication necessary for effective governmental decisionmaking. Protecting this document from disclosure is

—TS/

TS/ ███████████████

critical to ensuring that government officials can provide thorough, candid, and effective assessments in writing without public scrutiny and that decisionmakers can seek recommendations in advance of final government action.

- (U) This document is exempt under Exemption (b) (5) (attorney-client privilege) to extent that it contains handwritten legal advice from the General Counsel recommending a certain course of action to ████████████████ ████████████████ the Director of the CIA. This document contains legal advice provided the General Counsel to decisionmakers ████████████ ████████████████ This document reflects confidential communications provided by the General Counsel to █████████████ the Director of the CIA in connection with a request for legal advice. The confidentiality of these communications has been maintained.

- ████████████████████ Although the document contains previously acknowledged facts 1-4 (see paragraph 14 of the CIA's classified declaration and paragraph 12 of the CIA's unclassified declaration), such information cannot reasonably be segregated from material that has not been "officially acknowledged" and as to which FOIA exemptions have not been waived.

  ██████████████████████ The information is also subject to the attorney-client and deliberative process privileges. The officially acknowledged material is inextricably intertwined with otherwise exempt information that this Court held in related litigation remains classified, statutorily-protected and/or privileged under FOIA Exemptions 1, 3 and 5.

*Ruling: This document encapsulates the conundrum that the court faces as a result of prior Second Circuit decisions.* ████████████████

████████████████████████
████████████████████████
████████████████████████████
████████████████████████
████████████████████████████
████████████████████████

TS/ ████████████

TS/



TS/



For this reason, I cannot hold, as the ACLU would have me do, that findings made in connection with the predecessor NYT matter means the classification relating to this document has been waived.

It is not necessary for the court to review the document in order to figure that out. This qualifies as an intelligence

TS/███████████████████████

*method employed by the CIA, which is exempt from disclosure under the National Security Act and Exemption (b)(3).*

*The deliberative process and attorney client privileges protect from disclosure the handwritten notes on the document, which were written by the General Counsel of the CIA to the Director and which, according to the Government, contain the General Counsel's legal advice. The handwritten notes are exempt under exemption (b)(5).*

*The document need not be disclosed. I accept the CIA's representation that information that has been acknowledged (such as references to Previously Acknowledged Facts 1-4 from the last lawsuits, which CIA admits are contained in this document) cannot reasonably be segregated from the rest of the analysis.*

**CIA Document No. 4:** ████████████████████████
███████████████████████████████████████
███████████████████████████████████████
████████████████████████████████████ ██ ██
███████████████████████████████████████
███████████████████████████████████████
███████████████████████████ █ █████████
█████████████████████████ █████████████

The Government argues that this document is subject to the following FOIA exemptions:

- ██████████████████████████ This document is exempt under Exemption (b) (1) because it would reveal that ████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████

92



- ████████████████████ This document is exempt under Exemption (b) (3) (National Security Act) because it would reveal sensitive intelligence sources and methods employed by the CIA. ████████████████████████

- (U) Exemption (b) (3) (Central Intelligence Agency Act) was asserted to protect the Agency Identification Number, which is associated with a specific CIA employee.

- ████████████████████ Although the document contains previously acknowledged facts 1-4 (see paragraph 14 of the CIA's classified declaration and paragraph 12 of the CIA's unclassified declaration), such information cannot reasonably be segregated from material that has not been "officially acknowledged" and as to which FOIA exemptions have not been waived.

████████████████████ The officially acknowledged material is inextricably intertwined with otherwise exempt information that this Court held in related litigation remains classified and statutorily-protected under FOIA Exemptions 1 and 3.

T̶S̶/̶ ███████████████

*Ruling: For the reasons set forth in connection with CIA Document 2, CIA Document 4 need not be disclosed.* ████████████ ██ ██ *is an intelligence method that has not been officially acknowledged and that is protected from disclosure by the National Security Act and exemption (b)(3).* ███████████

████████████████████████

████████████

**CIA Document No. 6:** ████████████████

████████████████████████

████████████████████████

████████████████████████

██████████

The Government argues that this document is subject to the following FOIA exemptions:

- ███████████████████ This document is exempt under Exemption (b) (1) because it would reveal that ██████████
████████████████████████
████████████████████████
████████████████████████
████████████████████████
████████████████████████
████████████████████████
████████████████████████
████████████████████████
████████████████████████
████████████████████████
████████████████████████

T̶S̶/̶ ████████████

TS/ ██████████████████████



- ████████████████████ This document is exempt under Exemption (b) (3) (National Security Act) because it would reveal sensitive intelligence sources and methods employed by the CIA. ███████████████████

- (U) Exemption (b) (3) (Central Intelligence Agency Act) was asserted to protect the Agency Identification Number, which is associated with a specific CIA employee.

- ████████████████████ Although the document contains previously acknowledged facts 1-4 (see paragraph 14 of the CIA's classified declaration and paragraph 12 of the CIA's unclassified declaration), such information cannot reasonably be segregated from material that has not been "officially acknowledged" and as to which FOIA exemptions have not been waived.

  ████████████████████ The officially acknowledged material is inextricably intertwined with otherwise exempt information that this Court held in related litigation remains classified and statutorily-protected under FOIA Exemptions 1 and 3.

  *Ruling: For the reasons discussed in connection with CIA Documenst 2 and 4,*

*CIA Document 6 need not be disclosed.*

**CIA Document No. 12:** ████████████████████

██████████████████████████

██████████████████████████

TS/ ██████████████████

TS/█████████████████████

████████████████████████████████████████████
████████████████████████████████████████████

The Government argues that this document is subject to the following FOIA

exemptions:

- ███████████████████████████████ This document is exempt under
Exemption (b) (1) because it would reveal that ████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████
█████████████████

- ████████████████████████) This document is exempt under Exemption
(b) (3) (National Security Act) because it would reveal sensitive intelligence
sources and methods employed by the CIA. ████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
███████████████████████████

TS/██████████████████

TS/ ████████████████████

- (U) Exemption (b) (3) (Central Intelligence Agency Act) was asserted to protect an Agency Identification Number, which is associated with a specific CIA employee.

- ████████████████████ Although the document contains previously acknowledged facts 1-4 (see paragraph 14 of the CIA's classified declaration and paragraph 12 of the CIA's unclassified declaration), such information cannot reasonably be segregated from material that has not been "officially acknowledged" and as to which FOIA exemptions have not been waived. █████████████████████████████████████████████ ████████ The officially acknowledged material is inextricably intertwined with otherwise exempt information that this Court held remains classified and statutorily-protected under FOIA Exemptions 1 and 3.

*Ruling: for the reasons discussed in connection with CIA Document 2 and 4, this document need not be disclosed.*

<u>CIA Document No. 13</u>: ████████████████ Document 13 is a Memorandum for the Record ████████████████████████ ████████████████████████████████████████████ ████████████████████████████████████████████ ████████████████████████████████████████████ ████████████████████████████████ ████████████ The Government argues that this document is subject to the following FOIA exemptions:

- ████████████████████████ This document is exempt under Exemption (b) (1) because it would reveal that ████████████ ████████████████████████████████████████ ██ █████████████████████████████████████████ ████████████████████████████████████████████ ████████████████████████████████████████████

TS/ ████████████████████



- ████████████████████ This document is exempt under Exemption (b) (3) (National Security Act) because it would reveal sensitive intelligence sources and methods employed by the CIA. ████████████████████

- (U) Exemption (b) (3) (Central Intelligence Agency Act) was asserted to protect the name, titles and specific job functions of CIA employees.

- (U) This document is exempt under Exemption (b) (5) because it is covered by the deliberative process privilege. This memorandum for the record, which documents discussions that arose in the context of a congressional briefing, is deliberative because it is used internally by CIA employees to inform current and future interactions with Congress, as well as Agency decisions on pending matters. Disclosure of this document would undermine the deliberative process privilege of the government and chill the frank communication necessary for effective governmental decisionmaking. Protecting this document from disclosure is critical to ensuring that government officials can provide thorough, candid, and effective assessments in writing without public scrutiny and that decisionmakers can seek recommendations in advance of final government action.

- Although the document contains previously acknowledged facts 1-4 (see paragraph 14 of the CIA's classified declaration and

TS/ ███████████████

paragraph 12 of the CIA's unclassified declaration), such information cannot reasonably be segregated from material that has not been "officially acknowledged" and as to which FOIA exemptions have not been waived. ████████████████████████████████████████████████

████████ The information is also subject to the deliberative process privilege. The officially acknowledged material is inextricably intertwined with otherwise exempt information that this Court held in related litigation remains classified, statutorily-protected and/or privileged under FOIA Exemptions 1, 3 and 5.

*Ruling: In addition to the reasons discussed in connection with CIA Document 2, this document need not be disclosed because there is absolutely nothing in the record, of this case or of its predecessors, suggesting that* ████████████████ ████████████████████████████████████████████

████████████████ *has even been publicly disclosed.* ████████████

████████████████████████████████████████████ ████████████████████████████████████████████

████████████ *The document need not be disclosed.*

**CIA Document No. 14:** ████████████████████ Document 14 is a

Memorandum for the Record ██████████████████████ ████████████████████████████████████████████ ████████████████████████████████████████████ ████████████████████████████████████████████ ████████████████████████████████

The Government argues that this document is subject to the following FOIA exemptions:

- ████████████████████████ This document is exempt under Exemption (b) (1) because it would reveal that ████████████████ ████████████████████████████████████████████

TS/ ███████████████████



- ● ███████████████████ This document is exempt under Exemption (b) (3) (National Security Act) because it would by the CIA. ██████████
███████████████████████████████
███████████████████████████████
███████████████████████████████
██████████████████████████

- ● (U) Exemption (b) (3) (Central Intelligence Agency Act) was asserted to protect the name, titles and specific job functions of CIA employees.

- ● (U) This document is exempt under Exemption (b) (5) because it is covered by the deliberative process privilege. This memorandum for the record, which documents discussions that arose in the context of a congressional briefing, is deliberative because it is used internally by CIA employees to inform current and future interactions with Congress, as well as Agency decisions on pending matters. Disclosure of this document would undermine the deliberative process privilege of the government and chill the frank communication necessary for effective governmental decisionmaking. Protecting this document from disclosure is critical to ensuring that government officials can provide thorough, candid, and

TS/ ████████████████

─TS/███████████████████

effective assessments in writing without public scrutiny and that decisionmakers can seek recommendations in advance of final government action,

- ████████████████████████ Although the document contains previously acknowledged facts 1-4 (see paragraph 14 of the CIA's classified declaration and paragraph 12 of the CIA's unclassified declaration), such information cannot reasonably be segregated from material that has not been "officially acknowledged" and as to which FOIA exemptions have not been waived.

█████████████████████████████████████████

████████ The information is also subject to the deliberative process privilege. The officially acknowledged material is inextricably intertwined with otherwise exempt information that this Court held in related litigation remains classified, statutorily-protected and/or privileged under FOIA Exemptions 1, 3 and 5.

*Ruling: For the reasons set forth in connection with Documents 2 and 4, this document need not be disclosed.*

**CIA Document No. 15**: ██████████████████ Document 15 is a Memorandum for the Record ███ ██ ██ ██ ██████████████████

██████████████████████████████████████████

███████████████████████████████████

███████████████████████████████████

███████████████████████████

The Government argues that this document is subject to the following FOIA exemptions:

- ██████████████████████████ This document is exempt under Exemption (b) (1) because it would reveal that ███████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████
████████████████████████████████████

─TS/███████████████████

TS/



- This document is exempt under Exemption (b) (3) (National Security Act) because it would reveal sensitive intelligence sources and methods employed by the CIA.

- (U) Exemption (b) (3) (Central Intelligence Agency Act) was asserted to protect the name, titles and specific job functions of CIA employees.

- (U) This document is exempt under Exemption (b) (5) because it is covered by the deliberative process privilege. This memorandum for the record, which documents discussions that arose in the context of a congressional briefing, is deliberative because it is used internally by CIA employees to inform current and future interactions with Congress, as well as Agency decisions on pending matters. Disclosure of this document would undermine the deliberative process privilege of the government and chill the frank communication necessary for effective governmental decisionmaking. Protecting this document from disclosure is critical to ensuring that government officials can provide thorough, candid, and effective assessments in writing without public scrutiny and that decisionmakers can seek recommendations in advance of final government action.

- Although the document contains previously acknowledged facts 1-4 (see paragraph 14 of the CIA's classified declaration and paragraph 12 of the CIA's unclassified declaration), such information cannot reasonably be segregated from material that has not been "officially acknowledged" and as to which FOIA exemptions have not been waived.

TS/

~~TS/~~ ████████████████████

████████████████████████████████████████

█████████ The information is also subject to the deliberative process privilege. The officially acknowledged material is inextricably intertwined with otherwise exempt information that this Court held in related litigation remains classified, statutorily-protected and/or privileged under FOIA Exemptions 1, 3 and 5.

*Ruling: The Court has reviewed this document in camera. In addition to containing information about previously acknowledged facts 1-4,* ████████████████

████████████████████████████████████████ *I agree with the Government that the type of information that was the subject* ████████████ *is far more specific than* ████████ ████████████████ *and has not been officially acknowledged. I also agree that any officially acknowledged information cannot reasonably be segregated from the unacknowledged information. Therefore, the document need not be disclosed.*

**CIA Document No. 16:** ████████████████████ Document 16 is the Memorandum for the Record ████████ ████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████

The Government argues that this document is subject to the following FOIA exemptions:

- ████████████████████████ This document is exempt under Exemption (b) (1) because it would reveal ████████████████

████████████████████████████████████████

████████████████████████████████████████





- ████████████████ This document is exempt under Exemption (b) (3) (National Security Act) because it would reveal sensitive intelligence sources and methods employed by the CIA. ████████████████████ ████████████████████████████████ ████████████████████████████ ████████████████████████████████ ████████████████████████████████ ██████████████████

- (U) Exemption (b) (3) (Central Intelligence Agency Act) was asserted to protect the name, titles and specific job functions of CIA employees.

- (U) This document is exempt under Exemption (b) (5) because it is covered by the deliberative process privilege. This memorandum for the record, which documents discussions that arose in the context of a congressional briefing, is deliberative because it is used internally by CIA employees to inform current and future interactions with Congress, as well as Agency decisions on pending matters. Disclosure of this document would undermine the deliberative process privilege of the government and chill the frank communication necessary for effective governmental decisionmaking. Protecting this document from disclosure is critical to ensuring that government officials can provide thorough, candid, and

TS/████████████

T-S/ ███████████████████

effective assessments in writing without public scrutiny and that decisionmakers can seek recommendations in advance of final government action.

- ████████████████████ Although the document contains previously acknowledged facts 1-4 (see paragraph 14 of the CIA's classified declaration and paragraph 12 of the CIA's unclassified declaration), such information cannot reasonably be segregated from material that has not been "officially acknowledged" and as to which FOIA exemptions have not been waived.
  ████████████████████████████

  ███████ The information is also subject to the deliberative process privilege. The officially acknowledged material is inextricably intertwined with otherwise exempt information that this Court held in related litigation remains classified, statutorily-protected and/or privileged under FOIA Exemptions 1, 3 and 5.

*Ruling: For the reasons articulated by the Government and those discussed in connection with Documents 2 and 4, this document need not be disclosed.*

**CIA Document No. 23:** ███████████████████
███████████████████████████
████████████████████████████████
███████████████████████████████
██████████████████████████
████████████████████████████
████████████████████

The Government argues that this document is subject to the following FOIA exemptions:

- ████████████████████ The document is exempt under Exemption (b) (1) because it ██████████████
  ████████████████████████████
  ███████████████████████████
  ████████████████████████████
  ████████████████████████████

T-S/ ███████████████████

TS/ ███████████████



- ████████████████ This document is exempt under Exemption (b) (3) (National Security Act) because it would reveal sensitive intelligence sources and methods employed by the CIA. ████████████

- (U) Exemption (b) (3) (Central Intelligence Agency Act) was asserted to protect an Agency Identification Number, which is associated with a specific CIA employee.

- ████████████████ Although the document contains previously acknowledged facts 1-4 (see paragraph 14 of the CIA's classified declaration and paragraph 12 of the CIA's unclassified declaration), such information cannot reasonably be segregated from material that has not been "officially acknowledged" and as to which FOIA exemptions have not been waived. The officially acknowledged material is inextricably intertwined with otherwise exempt information that this Court held in related litigation remains classified and statutorily-protected under FOIA Exemptions 1 and 3.

*Ruling: For the reasons set forth by the Government and those discussed in connection with Documents 2 and 4, the document need not be disclosed.*

TS/ ████████████████

TS/██████████████

**CIA Document No. 24:** ████████████████████

████████████████ █████ ███████████████ ██ ██

██████████████████████████████████████

██████████████████████████████████████

██████████████████████████████████████

██████████████████████████████████████

██████████████████████████████████████

The Government argues that this document is subject to the following FOIA

exemptions:

- ████████████████████ The document is exempt under
  Exemption (b) (1) because it █████████████████████████
  ████████████████████████████████████████████
  ████████████████████████████████████████████
  ████████████████████████████████████████████
  ████████████████████████████████████████████
  ████████████████████████████████████████████
  ████████████████████████████████████████████
  ████████████████████████████████████████████
  ████████████████████████████████████████████
  ████████████████████████████████████████████
  ████████████████████████████████████████████
  ████████████████████████████████████████████
  ████████████████████████████████████████████
  ████████████████████████████████████████████
  ████████████████████████████████████████████
  ████████████████████████████████████████████

- ████████████████████ This document is exempt under Exemption
  (b) (3) (National Security Act) because it would reveal sensitive intelligence
  sources and methods employed by the CIA. ████████████████████
  ████████████████████████████████████████████
  ████████████████████████████████████████████
  ████████████████████████████████████████████

TS/██████████████

████████████████████

████████████████████████████████████
████████

• ████████████████████████ ) This document is exempt under Exemption (b) (5) because it is covered by the deliberative process privilege. █████████

████████████████████████████████████

████████████████████ Disclosure of this document would undermine the deliberative process privilege of the government and chill the frank communication necessary for effective governmental decisionmaking.

• ████████████████████████ Although the document contains previously acknowledged facts 1-4 (see paragraph 14 of the CIA's classified declaration and paragraph 12 of the CIA's unclassified declaration), such information cannot reasonably be segregated from material that has not been "officially acknowledged" and as to which FOIA exemptions have not been waived. ████████

██████████████████████████████████

████████████████████ The information is also subject to the deliberative process privilege. The officially acknowledged material is inextricably intertwined with otherwise exempt information that this Court held in related litigation remains classified, statutorily protected and privileged under FOIA Exemptions 1, 3 and 5.

*Ruling: For the reasons articulated by the Government, this document need not be disclosed.*

**CIA Document No. 27:** ████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

TS/ ████████████████

—TS/█████████████

█████████████████████████████

████████████

The Government argues that this document is subject to the following FOIA

exemptions:

- ████████████████████████ This document is exempt under
Exemption (b) (1) because it would reveal ████████████████████
████████████████████████████████████
████████████████████████████████████
████████████████████████████████████
████████████████████████████████████
████████████████████████████████████
████████████████████████████████████
████████████████████████████████████
████████████████████████████████████
████████████████████████████████████
████████████████████████████████████
█████████

- ████████████████████ This document is exempt under Exemption
(b) (3) (National Security Act) because it would reveal sensitive intelligence
sources and methods employed by the CIA. ████████████████
████████████████████████████████████
████████████████████████████████████
████████████████████████████████████
████████████████████

- ████████████████████This document is exempt under Exemption
(b) (5) because it is covered by the deliberative process privilege, ████████████
████████████████████████████████Disclosure of
this document would undermine the deliberative process privilege of the
government and chill the frank communication necessary for effective
governmental decisionmaking.

TS/█████████████

T0/ ████████████████████

• ████████████████ Although the document contains previously acknowledged facts 1-4 (see paragraph 14 of the CIA's classified declaration and paragraph 12 of the CIA's unclassified declaration), such information cannot reasonably be segregated from material that has not been "officially acknowledged" and as to which FOIA exemptions have not been waived. ████████████████████████████ ████████████████████████████ ████████████████████████ This document is also protected by the deliberative process privilege. The officially acknowledged material is inextricably intertwined with otherwise exempt information that this Court held in related litigation remains classified, statutorily-protected and privileged under FOIA Exemptions 1, 3 and 5.

*Ruling: For the reasons articulated by the Government, this document need not be disclosed.*

<u>CIA Document No. 29</u>: ████████████████████████

████████████████████████████

███████████████████████████████

███████████████████████████

███████████████████████████████

███████████████████████████████

██████████████

The Government argues that this document is subject to the following FOIA exemptions:

• ████████████████████████ This document is exempt under Exemption (b) (1) because it would reveal that ████████████ ████████████████████████████████ ████████████████████████████████ ████████████████████████████████ ████████████████████████████████ ████████████████████████████████ ████████████████████████████████

TS/ ████████████████████



- This document is exempt under Exemption (b) (3) (National Security Act) because it would reveal sensitive intelligence sources and methods employed by the CIA.

- Although the document contains previously acknowledged facts 1-4 (see paragraph 14 of the CIA's classified declaration and paragraph 12 of the CIA's unclassified declaration), such information cannot reasonably be segregated from material that has not been "officially acknowledged" and as to which FOIA exemptions have not been waived.

The officially acknowledged material is inextricably intertwined with otherwise exempt information that this Court held in related litigation remains classified, statutorily-protected and/or privileged under FOIA Exemptions 1, 3 and 5.

—TS/ ███████████████

*Ruling: For the reasons articulated by the Government, this document need not be disclosed.*

**CIA Document No. 30**: 

The Government argues that this document is subject to the following FOIA exemptions:

- ████████████████████ ) This document is exempt under Exemption (b) (1) because it would reveal that ██████████ 

—TS/ ███████████████



This document is exempt under Exemption (b) (3) (National Security Act) because it would reveal sensitive intelligence sources and methods employed by the CIA.

Although the document contains previously acknowledged facts 1-4 (see paragraph 14 of the CIA's classified declaration and paragraph 12 of the CIA's unclassified declaration), such information cannot reasonably be segregated from material that has not been "officially acknowledged" and as to which FOIA exemptions have not been waived.

The officially acknowledged material is inextricably intertwined with otherwise exempt information that this Court held in related litigation remains classified, statutorily-protected and/or privileged under FOIA Exemptions 1, 3 and 5.

*Ruling: For the reasons articulated by the Government, this document need not be disclosed.*

113

TS/ ██████████████████

### DEPARTMENT OF DEFENSE DOCUMENTS

**DoD Document No. 1:** ████ Classified Memorandum, ████████████

████████████████████████████

████████████████████████████

███████████████████████████

████████████████

The Government argues that this document is subject to the following FOIA

exemptions:

- ████████ This document is exempt under Section (b)(1) because it discusses currently and properly classified operational details concerning ████████ ████████████████████████████████ ████████████████████████████████ ████████████████████████████████ ███████████████████████████ the information pertains to military plans and foreign activities of the United States, and its disclosure could reasonably be expected to harm national security. The revelation of this detailed material regarding operational planning would provide valuable information to our adversaries and allow them to alter their activities in an attempt to avoid U.S. operations, and thus harm national security.

  ████████ The document also contains currently and properly classified information pertaining to intelligence sources and methods. Moreover, disclosure of this information could reflect the facts available to DoD at a specific point in time, which could show the breadth, capabilities, and limitations of the U.S. military and its intelligence collection apparatus. Accordingly, disclosure of this information would reveal sensitive intelligence sources and methods employed by DoD and the intelligence community, which would undermine national security.

- ████████ This document is exempt under Section (b)(5) and the presidential communications privilege because it reflects a communication between DoD and senior administration officials for the purpose of presidential decision-making. ████████████████████████████ Disclosure of such presidential

TS/ ██████████████████

—TS/ ████████████████████████

communications would inhibit the President's ability to engage in effective communication and decision-making on matters of national security.

- (U)  Although the document contains previously acknowledged facts 1-4 (see paragraph 32 of DoD's unclassified declaration), such information cannot reasonably be segregated from material that has not been "officially acknowledged" and as to which FOIA exemptions have not been waived. Specifically, this document contains currently and properly classified information, and the acknowledged facts are inextricably intertwined with this otherwise classified information.

*Ruling: In addition to containing information relating to previously acknowledged facts 1-4, this document may contain information relating* ████████ ███████████████████████████████████████████████ ████████████ *However, for the reasons articulated by the Government, and especially given its subject matter –* ████████████████████████████████████ ███████████████████████████████████████████████ ████████████████ *– it need not be disclosed.*

**DoD Document No. 3:** ████████  Classified memorandum, ████████████, titled "Review of Implementation of the Presidential Policy Guidance on Direct Action," addressing the PPG Process as it relates to DoD and suggesting reforms to the process.

The Government argues that this document is subject to the following FOIA exemptions:

- ████████  **This document is exempt under Section (b)(1) because the document** discusses currently and properly classified information ████████████████████ In particular, the memorandum addresses the PPG process's effect on conducting counterterrorism operations ████████████████████████████████████████ The memorandum, for example, ████████████████████████ ████████████████████████████████████ The memorandum also identifies ██████████████████████ Moreover, the memorandum summarizes

—TS/ ████████████████████████

—TS/ ███████████████

███████████████████   As this document discusses Department of Defense operations and proposed operations ████████████ the information pertains to military plans and foreign activities of the United States, and its disclosure could reasonably be expected to harm national security. The revelation of this detailed material would provide valuable information to our adversaries about ███████████████████ which would ████████████████ ███████████████ harm national security.

- ██████   This document is exempt under Section (b)(5) and the deliberative process privilege because it suggests changes to the PPG process contemplated by DoD, which represents an interim stage in intra-agency discussions preceding a final recommendation about reforms to the PPG process. The disclosure of such deliberations would have a chilling effect on candid internal discussions about ███████████ ███████████ ███████████ Finally, revealing these preliminary suggestions could cause confusion about the true composition of the PPG requirements.

- (U) Although the document contains previously acknowledged facts 1-4 (see paragraph 32 of DoD's unclassified declaration), such information cannot reasonably be segregated from material that has not been "officially acknowledged" and as to which FOIA exemptions have not been waived. Specifically, this document contains currently and properly classified information, and the acknowledged facts are inextricably intertwined with otherwise classified information. Moreover, the document remains exempt in its entirety under FOIA exemption 5 and the deliberative process privilege.

*Ruling: for the reasons articulated by the Government, particularly with respect to Exemption (b)(5) and the deliberative process privilege, this document need not be disclosed.*

**DoD Document No. 4**: ████████████████ Classified memorandum, undated, titled ██████████████████████

███████████████████████████████

The Government argues that this document is subject to the following FOIA exemptions:

TS/ ███████████████████████

- ████████████████ **This document is exempt under Section (b)(1)** because the document discusses currently and properly classified information when analyzing ███████████████████████████ ██████ █████ ███████████████████████████████████ ████████████████████████████████████████ ████████████████████████████████████ ███████ . As this document discusses ███████████████ ███████████████████ the information pertains to military plans and foreign activities of the United States, and its disclosure could reasonably be expected to harm national security.  The revelation of this detailed material would provide valuable information to our adversaries ████████ █████████████ and thus harm national security.

The document also contains currently and properly classified information pertaining to intelligence sources and methods employed when gathering information about ████████████ And more specifically, ████████████████████████ Revealing this information would ██████████████████ used to obtain that specific intelligence. Moreover, disclosure of this information could reflect the facts available to DoD at a specific point in time, which could show the breadth, capabilities, and limitations of the U.S. military and its intelligence collection apparatus. Accordingly, disclosure of this information would reveal sensitive intelligence sources and methods employed by DoD and the intelligence community, which would undermine national security.

- █████████████████████ **This document is exempt under Exemption (b)(3) (National Security Act)** because it would reveal sensitive intelligence sources and methods employed the United States government. ██████████████████ ███████████████████████████████████████████ █████████████████████

- █████████████████████ **This document is exempt under Exemption (b)(5)** and the deliberative process privilege because the document constitutes an interim viewpoint reached by the inter-agency group prior to a final decision. This document reflects a preliminary stage in the inter-agency discussions preceding a final recommendation about ████████████████████████ ████████████████ The disclosure of such deliberations would have a chilling effect on candid discussions about whether to approve or disapprove

TS/ ████████████████████

TS/ ███████████████

counterterrorism operations. Indeed, pre-decisional communications between government officials responsible for national security decisions is an integral part of the give-and-take of deliberations that would be curtailed if such dialogue is disclosed.

• ███████████████ This document is exempt under Section (b)(5) and the attorney-client privilege because it reflects confidential communications ████████████████████ ████████████████████ The confidentiality of these communications was maintained and the contents of this document were not shared beyond the interested parties. Revealing such communications would inhibit open communication between client-agencies and their lawyers.

• (U) Although the document contains previously acknowledged facts 1-4 (see paragraph 32 of DoD's unclassified declaration), such information cannot reasonably be segregated from material that has not been "officially acknowledged" and as to which FOIA exemptions have not been waived. Specifically, this document contains currently and properly classified information, and the acknowledged facts are inextricably intertwined with this otherwise classified information. Moreover, the document remains exempt in its entirety under FOIA exemption 5 and the deliberative process privilege and the attorney-client privilege.

*Ruling: For the reasons articulated by the Government, this document need not be disclosed.*

**DoD Document No. 5:** Classified memorandum to the record from Jeh C. Johnson, Department of Defense General Counsel, ██████████████████ ████████████████████

The Government argues that this document is subject to the following FOIA exemptions:

• ███████████████ This document is exempt under Section (b)(1) because the document discusses currently and properly classified information addressing whether ████████████████████ More specifically, the memorandum addresses whether ██████████████████

TS/ ███████████████

T̶S̶/ ███████████████████



███████████████████████████████████████
███████████████████████████████████████
███████████████████████████████
███████████████████████████████████████  the information pertains to military plans and foreign activities of the United States, and its disclosure could reasonably be expected to harm national security.  The revelation of this detailed material would provide valuable information to our adversaries about ████████████████████████ ███████████████████ which would allow them to ████████████████ ████████████████ thus causing harm to national security. ███████

████████████████████████  The document also contains currently and properly classified information pertaining to intelligence sources and methods used to obtain information about ████████████████ More specifically, the document discusses classified intelligence that was collected using ████████ ██████ Revealing this information would compromise ████████████████████████████  Moreover, disclosure of this information could reflect the facts available to DoD about ████████████████████ which could show the breadth, capabilities, and limitations of the U.S. military and its intelligence collection apparatus.  Accordingly, disclosure of this information would reveal sensitive intelligence sources and methods employed by DoD and the intelligence community, which would undermine national security.

- ████████████████████████  This document is exempt under Exemption (b)(3) (National Security Act) because it would reveal sensitive intelligence sources and methods employed the United States government.  In particular, the document contains ████████████████████████ ████████████████████████████

- (U)  Although the document contains previously acknowledged facts 1-4 (see paragraph 32 of DoD's unclassified declaration), such information cannot reasonably be segregated from material that has not been "officially acknowledged" and as to which FOIA exemptions have not been waived. Specifically, this document contains currently and properly classified information, and the acknowledged facts are inextricably intertwined with this otherwise classified information.

*Ruling: For the reasons articulated by the Government, this document need not be disclosed.*

T̶S̶/ ████████████████████

**DoD Document No. 6:** ██████ Classified memorandum, dated 12 December 2013, for

the Chairman of the Joint Chiefs of Staff, Under Secretary of Defense for Policy, Under

Secretary of Defense for Intelligence, Commanders of the Combatant Commands, and

General Counsel of DoD, with the subject, "Department of Defense Implementation of

the Presidential Policy Guidance on 'Procedures for Approving Direct Action Against

Terrorist Targets Located Outside the United States and Areas of Active Hostilities.'"

The Government argues that this document is subject to the following FOIA

exemptions:

- ████ **This document is exempt under Section (b)(1) because the document** discusses currently and properly classified information addressing DoD's implementation of the PPG.  Specifically, the memorandum addresses the classified ██████████████████████  As this document discusses DoD's process ██████████████████ ████████ information pertains to ███████ ██████ the United States, and its disclosure could reasonably be expected to harm national security.  The revelation of this detailed material would provide valuable information to our adversaries about ████████████████ ███████████████ which would allow ██████████████ ████████████████ and thus harm national security.

- ████ Although the document contains previously acknowledged facts 1-4 (see paragraph 32 of DoD's unclassified declaration), such information cannot reasonably be segregated from material that has not been "officially acknowledged" and as to which FOIA exemptions have not been waived. Specifically, this document contains currently and properly classified information, and the acknowledged facts are inextricably intertwined with otherwise classified information.

*Ruling: This document is one of four (including also DoD 7, 8 and 9) that the Government has concluded can be partially declassified and partially disclosed to the ACLU as a result of the declassification and partial disclosure of the PPG. DoD 6 describes the process that "will guide DoD staffing actions and timelines to facilitate*

—TS/█████████████

*obtaining decisions on direct action proposals or requests to which the PPG applies." It is, in other words, an implementation document, arguably responsive to the second, third and fourth of the ACLU's broad requests for information. Much of this document remains classified (unlike DoD 7, 8 and especially 9), and so is subject to the (b)(1) exemption in the absence of waiver. One of the two substantive paragraphs in the document that DoD proposes to disclose (Paragraph 7) simply parrots the fact that the PPG requires that Congress be notified promptly when authority for directing lethal force to targets other than High Value Targets is expanded and also after direct operations are concluded. The identities of the notifiers, the time period within which notification must be made, and the contents of the notification are all withheld as classified. The problem is that DoD 9 contains exactly the same information, but that information has been declassified to the extent of identifying who writes the report and provides the notifications – which information DoD intends to disclose to the ACLU. The redactions to DoD 6 should be amended to conform to DoD 9 in this regard (not vice versa!). As for Paragraph 9, which deals with Post-Operation Reports to the National Security Staff within 48 hours, the declassified information therein that the Government proposes to redact █████████ █████████████████████████████ is perfectly appropriate, and subparagraphs (a) and (b), while seemingly innocuous, remain classified and so are subject to the (b)(1) exemption. I note that the portions of this paragraph that the Government has agreed to disclose include the fact that the NSS will be notified within 48 hours after the conclusion of an operation, in accordance with the PPG. That information is not classified. See below, discussion of DoD 9.*

—TS/█████████████

TS/ ██████

**DoD Document No. 7:** ████ Classified letters, dated 23 July 2014, from Michael D. Lumpkin, Assistant Secretary of Defense, to Senator Carl Levin, Senator Richard J. Durbin, and Congressman Howard P. McKeon, forwarding classified Report on Associated Forces, in accordance with the National Defense Authorization Act for Fiscal Year 2014. DoD has released this document in part.

The Government argues that this document is subject to the following FOIA exemptions:

- ████ **This undisclosed information in this document is exempt under Section (b)(1)** because the attached report contains classified information requested by the Senate's Committee on Foreign Relations and the House of Representative's Committee on Foreign Affairs. Specifically the report addresses Congress's request for information about ████████ ████████████████████ ████████. To that end, the report discusses specific terrorist organizations and ████████████, if any. This document discusses whether DoD considers ████ ████████ and thus, the information pertains to military plans and foreign activities of the United States, and its disclosure could reasonably be expected to harm national security. The revelation of the undisclosed information would provide valuable information to our adversaries about how they could avoid being designated an affiliated or associated force, and thus harm national security.

  ████ The classified report also contains currently and properly classified information pertaining to intelligence sources and methods employed to assemble information about ████████ Disclosure of this information could reflect the facts available to DoD at a specific point in time, which could show the breadth, capabilities, and limitations of the U.S. military and its intelligence collection apparatus. Accordingly, disclosure of this information would reveal sensitive intelligence sources and methods employed by the intelligence community, which would undermine national security.

- (U) Although the document contains previously acknowledged facts 1-4 (see paragraph 32 of DoD's unclassified declaration), such information cannot reasonably be segregated from material that has not been "officially acknowledged" and as to which FOIA exemptions have not been waived.

TS/█████████████████████

Specifically, this document contains currently and properly classified information, and the acknowledged facts are inextricably intertwined with this otherwise classified information.

*Ruling: The court has reviewed this document in camera. For the reasons articulated by the Government, the portions of this document that the Government does not propose to disclose contain information that is FOIA exempt, the disclosure of which could endanger the national security of the United States and impede classified operations. Aside from the last paragraph in the document, which the Government intends to disclose pursuant to its letter to the court dated March 4, 2016, the undisclosed portions of this document need not be disclosed.*

**DoD Document No. 8:** █████ Department of Defense Report, dated 6 March 2014, on the Process for Determining Targets of Lethal or Capture Operations, in accordance with the National Defense Authorization Act for Fiscal Year 2014. DoD released this document in part.

The Government argues that this document is subject to the following FOIA exemptions:

- ██████ The undisclosed information in this document is exempt under Section (b)(1) because the attached report contains classified information requested by the Senate's Committee on Foreign Relations and the House of Representative's Committee on Foreign Affairs. Specifically, the report addresses Congress's request for information about ████████████ ██████████ █ The report includes a classified discussion about the legal and policy considerations for █████████████ Because the report addresses ███████████████████ the document pertains to military plans and foreign activities of the United States, and its disclosure could reasonably be expected to harm national security. The revelation of the undisclosed information would provide valuable information to our adversaries ███████████████████████ and thus harm national security.

TS/███████████████████

~~TS/~~

- (U)  Although the document contains previously acknowledged facts 1-4 (see paragraph 32 of DoD's unclassified declaration), such information cannot reasonably be segregated from material that has not been "officially acknowledged" and as to which FOIA exemptions have not been waived. Specifically, this document contains currently and properly classified information, and the acknowledged facts are inextricably intertwined with this otherwise classified information.

*Ruling: The fate of the redactions in this document, which the court has reviewed in camera, is not as clear as was the case with DoD Document No. 7.*

*Significant portions of this document (specifically the information under the heading "Approval Process" that appears on pages 5-6) appears to be withheld because they contain what I will refer to as "Category VIII Information" -- the reference being to Category VIII of the eleven reasons why the Government hopes to redact information from any publicly disclosed version of the PPG (OLC Document 306). The disclosed, or (in the opinion of the Government) disclosable, portions of the PPG outline in some detail the decision-making process for approving lethal action and/or capture of suspected terrorists located abroad. DoD Document No. 8 outlines the Defense Department's guidance for implementing its role in that disclosed or disclosable process. The Government offers no convincing reason why DoD's method of devising its input into the disclosed PPG decision-making process should be more highly classified than is the actual "Playbook" itself.*

*But the paragraphs outlining the "Approval Process" that have been redacted from this document, for the most part, identify who is involved in the process at the Pentagon (by job title). For the reasons discussed above in connection with OLC Document 306, this court has definitively concluded that the identities of these individuals are not protected by FOIA Exemption (b)(7)(F), and that to the extent this*

124

~~TS/~~

~~TS/~~ ████████████████████

*information could be deemed classified, the protections of Exemption (b)(1) have been*

*waived. DoD personnel are not entitled to the benefit of FOIA Exemption (b)(3).*

*Therefore this information may not be redacted.*

*The Government seeks to redact the definition of "imminent" as used at page 3 of*

*DoD 8. It may not do so, because the definition contained in this document (and*

*redacted) is identical (virtually in haec verba) with the description of "imminence" used*

*by Attorney General Eric Holder in his 2012 speech at Northwestern Law School*

*(Spurlock Ex. 17 at 6 of 8). In that speech, General Holder said that deciding whether*

*someone presented an "imminent threat" "incorporates considerations of the relevant*

*window of opportunity to act, the possible harm that missing the window would cause to*

*civilians, and the likelihood of heading off disastrous future attacks against the United*

*States." The portion of DoD 8 that speaks to imminence, and that the Government seeks*

*to redact, says "Whether a threat is 'imminent' incorporates consideration of the*

*relevant window of opportunity to act, the possible harm that missing the window would*

*cause to civilians, and the likelihood of heading off future disastrous attacks against the*

*United States." Quod erat demonstrandum.*

*Therefore, I rule that some but not all of the portions of this document that have*

*not already been disclosed are FOIA exempt and need not be disclosed. The government*

*intends to disclose the highlighted portions of the document on pages 1, 3 and 4, as*

*indicated in its letter to the court dated March 4, 2016. In addition, the court finds the*

*following heretofore undisclosed portion of the document not to be FOIA exempt: the*

*redactions from the third paragraph on page 1; the proposed redactions in the second*

*full paragraph on page 3 relating to the word "imminent," and the first and third*

~~TS/~~ ████████████████████

─TS/██████████████████████

*paragraphs under the heading "Approval Process" beginning at page 5 and carrying*

*over to page 6. Redaction of the fact that ███████████████████████ █*

*████████████████████████████████████████████ are*

*permitted for the reasons discussed in connection with OLC Document 306 (the PPG),*

*Category III.*

**DoD Document No. 9:** ████████ Department of Defense Report dated 26 March 2014

on Congressional Notification of Sensitive Military Operations and Counterterrorism

Operational Briefings, in accordance with the National Defense Authorization Act for

Fiscal Year 2014. DoD released this document in part.

    The Government argues that this rest of this document is subject to the following

FOIA exemptions:

-   ████████ **The undisclosed information in this document is exempt under Section (b)(1)** because the attached report contains classified information requested by the Senate's Committee on Foreign Relations and the House of Representative's Committee on Foreign Affairs. The report specifically discusses DoD's procedures for notifying in writing the congressional defense committees about certain military operations under the PPG. The document also addresses the requisite substance of the congressional notifications. The undisclosed information pertains to military plans and foreign activities of the United States because, as addressed above, it specifically contemplates congressional notification of U.S. military operations conducted abroad. The revelation of the undisclosed information would provide valuable information to our adversaries ███████████████████████████████ and thus harm national security.

-   (U) Although the document contains previously acknowledged facts 1-4 (see paragraph 32 of DoD's unclassified declaration), such information cannot reasonably be segregated from material that has not been "officially acknowledged" and as to which FOIA exemptions have not been waived. Specifically, this document contains currently and properly classified information, and the acknowledged facts are inextricably intertwined with otherwise classified information.

─TS/██████████████████

—TS/▮▮▮▮▮▮▮▮▮▮▮

*Ruling: As with the other documents in this group (DoD 6-8), the Government has recently declassified all or part of the document and is prepared to produce significant portions of the document to the ACLU. As a result, the justifications for withholding set forth above are no longer operative.*

*The Government proposes to withhold two bits of information that are no longer classified. The first is the exact amount of time after a lethal operation by which the Under Secretary of Defense for Policy must deliver a written notification to the Chairman and Ranking Minority Members of the Armed Services and Defense Appropriations Subcommittees. That period is 48 hours. The Government also proposes not to disclose the fact that notifications for new operational plans or expansion of authorities for such operations will be submitted to Congress within seven days after receipt of notification of approval from the NSC staff.*

*The Government has not provided any justification for withholding the fact that lethal operations must be reported to Congress within two days, or that expansions of authority for lethal operations must be reported to Congress within seven days. I see no reason why that information would ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮ ▮▮▮▮" which is the only substantive justification for withholding the information. As noted above, the fact that the National Security Staff must be notified of a lethal operation within 48 hours after its conclusion is not classified and is being disclosed in connection with DoD 6; the Government offers no reason why the fact that Congress will be notified in the same 48 hour period is such a big secret. The information is no longer classified, and as far as the court can tell, this*

TS/ ███████████████

*information does not fall within any other FOIA exemption. Therefore, now that it has
been declassified, it must be disclosed.*

*The Government also proposes to withhold the four things that the notice to
Congress must contain, which facts remain classified. I cannot fathom the justification
for the continued classification of these four facts about an already–completed operation:
except (arguably) for item 1* ████████████████████████
*none of the facts the Government seeks to withhold* █████████████████████
████████████████████████████████████████ *which is
the only substantive justification for withholding the information. However, I am not the
classifying authority, and as long as this information remains classified it is subject to the
(b)(1) exemption unless that exemption has been waived. It has not.*

**DoD Document No. 14:** ██████████████████ Classified memorandum,
undated, from Jeh Johnson, General Counsel for DoD, to the Interagency Lawyers'
Group ████████████████████

The Government argues that this document is subject to the following FOIA
exemptions:

- ██████████████████████ **This document is exempt under Section (b)(1)**
  because the document discusses currently and properly classified information
  regarding ████████████ ███████ ███████████████████
  The memorandum specifically addresses classified intelligence products that
  discuss ████████████████████████████ Moreover, because this document
  discusses ████████████████ the information pertains to military plans and foreign activities of
  the United States, and its disclosure could reasonably be expected to harm
  national security. The revelation of this information would inform our adversaries
  ████████████████████████████████████ █

TS/ ███████████████████

██████████████████████████████████████ and thus harm national security.

███████████████ The document also contains currently and properly classified information pertaining to ███████████████████ ███████████ More specifically, the document discusses classified intelligence ████████ ██████ Revealing this information would compromise ███████████████████████████████████████████ Moreover, disclosure of this information could reflect the facts available to DoD at a specific point in time, which could show the breadth, capabilities, and limitations of the U.S. military and its intelligence collection apparatus. Accordingly, disclosure of this information would reveal sensitive intelligence sources and methods employed by DoD and the intelligence community, which would undermine national security.

- ████████████████████ This document is exempt under Exemption (b)(3) (National Security Act) because it would reveal sensitive intelligence sources and methods employed by the United States government. In particular, the document contains information ████████████████ ██████████ as well as sensitive information ██████████████ ██████████████████

- (U) This document is exempt under Section (b)(5) and the deliberative process privilege because the document conveys a preliminary legal viewpoint reached by one agency submitted to the Executive Branch's inter-agency lawyers group. Thus, the communication represents an interim stage in inter-agency discussions preceding a final recommendation about a possible counterterrorism operation. The disclosure of such deliberations would have a chilling effect on candid discussions about whether to approve or disapprove counterterrorism actions. Indeed, pre-decisional communications between government officials responsible for national security decisions is an integral part of the give-and-take of deliberations that would be curtailed if such dialogue is disclosed.

- (U) This document is exempt under Section (b)(5) and the attorney-client privilege because it reflects confidential communications between DoD General Counsel and the Interagency Lawyers' Group in connection with legal advice ██████████ The confidentiality of these communications was maintained and the contents of this document were not shared beyond the interested parties.

- (U) Although the document contains previously acknowledged facts 1-4 (see paragraph 32 of DoD's unclassified declaration), such information cannot

TS/ ███████████████████

TS/█████████████████

reasonably be segregated from material that has not been "officially acknowledged" and as to which FOIA exemptions have not been waived. ███ ████████████████████████████████ But this document contains currently and properly classified information, and the acknowledged facts are inextricably intertwined with this otherwise classified information. Moreover, the document remains exempt in its entirety under FOIA exemption 5 and the deliberative process privilege and the attorney-client privilege.

*Ruling: For the reasons articulated by the Government, this document need not be disclosed.*

**DoD Document No. 15:** ███ Classified memorandum, undated, from Jeh Johnson, General Counsel for DoD, ████████████████████████████████ ████████████████████████

The Government argues that this document is subject to the following FOIA exemptions:

- ████████████████ **This document is exempt under Section (b)(1) because the document discusses currently and properly classified information regarding** ██████████████████████████ The memorandum addresses classified intelligence productions and ██████ ███████████████████ For example, the memorandum discusses ████████████████████ Moreover, because this document discusses ████████████ ████████ ████████ the information pertains to military plans and foreign activities of the United States, and its disclosure could reasonably be expected to harm national security. The revelation of this information would inform our adversaries █████████████████████████ ██████ ████████ and thus harm national security.

  ████████████████ The document also contains currently and properly classified information pertaining to ████████████████ More specifically, the document discusses classified intelligence that █████████████ Revealing this information would compromise ████████████████████████████

TS/██████████████

████████ Moreover, disclosure of this information could reflect the facts
available to DoD at a specific point in time, which could show the breadth,
capabilities, and limitations of the U.S. military and its intelligence collection
apparatus. Accordingly, disclosure of this information would reveal sensitive
intelligence sources and methods employed by DoD and the intelligence
community, which would undermine national security.

- ████████████████████ This document is exempt under Exemption
  (b)(3) (National Security Act) because it would reveal sensitive intelligence
  sources and methods employed the United States government. In particular, the
  document contains information ████████████████████████
  ████████████████████

- ██ This document is exempt under Section (b)(5) and the deliberative
  process privilege because it reflects preliminary inter-agency discussions about
  whether ████████████████████████ ██████, which
  represents an interim stage in inter-agency discussions preceding a final
  government decision. ████████████████████████
  ████████ are preliminary because the memorandum has not been
  coordinated with any intelligence analysts. The disclosure of such deliberations
  would have a chilling effect on candid inter-agency discussions prior to a final
  government decision. Not to mention, disclosure of this preliminary assessment
  prior to a final decision could cause confusion about the ultimate assessment as to
  whether ████████████████████████

- ██ This document is exempt under Section (b)(5) and the attorney-client
  privilege because it reflects confidential communications between DoD General
  Counsel and the Interagency Lawyers' Group in connection with legal advice
  pertaining to ████████████████████████████████
  ████████ The confidentiality of these communications was maintained and the
  contents of this document were not shared beyond the interested parties.

- (U) Although the document contains previously acknowledged facts 1-4 (see
  paragraph 32 of DoD's unclassified declaration), such information cannot
  reasonably be segregated from material that has not been "officially
  acknowledged" and as to which FOIA exemptions have not been waived.
  Specifically, this document contains currently and properly classified information,
  and the acknowledged facts are inextricably intertwined with this otherwise
  classified information. Moreover, the document remains exempt in its entirety
  under FOIA exemption 5 and the deliberative process privilege and the attorney-
  client privilege.

TS/ ▮▮▮▮▮▮▮▮▮▮

*Ruling: For the reasons articulated by the Government, this document need not*

*be disclosed.*

**DoD Document No. 16:** ▮▮▮  Classified Memorandum, ▮▮▮▮▮▮▮ titled

"Department of Defense ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮

The Government argues that this document is subject to the following FOIA

exemptions:

- ▮▮▮▮  **This document is exempt under Section (b)(1) because** it discusses
  currently and properly classified operational details concerning possible
  counterterrorism operations ▮▮▮▮▮▮▮▮▮. Specifically, the
  memorandum discusses ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮

  ▮▮▮▮▮▮▮▮ the information pertains to military plans and foreign
  activities of the United States, and its disclosure could reasonably be expected to
  harm national security. Moreover, the memorandum specifically ▮▮▮▮▮▮

  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ The revelation of
  this detailed material regarding operational planning would provide valuable
  information to our adversaries and allow them to alter their activities in an attempt
  to avoid U.S. operations, and thus harm national security.

  ▮▮▮▮  The document also contains currently and properly classified information
  pertaining to intelligence sources and methods ▮▮▮▮▮▮▮▮ Disclosure of this information
  could reflect the facts available to DoD at a specific point in time, which could
  show the breadth, capabilities, and limitations of the U.S. military and its
  intelligence collection apparatus. Accordingly, disclosure of this information
  would reveal sensitive intelligence sources and methods employed by the
  intelligence community, which would undermine national security.

TS/ ▮▮▮▮▮▮▮▮▮▮

TS/████████████████

- ██████ This document is exempt under Section (b)(5) and the presidential communications privilege because it reflects a communication between DoD and senior administration officials for the purpose of presidential decision-making. ████████████████████████████ ██████████████████████████████ Disclosure of such presidential communications would inhibit the President's ability to engage in effective communication and decision-making on matters of national security.

- (U) Although the document contains previously acknowledged facts 1-4 (see paragraph 32 of DoD's unclassified declaration), such information cannot reasonably be segregated from material that has not been "officially acknowledged" and as to which FOIA exemptions have not been waived. Specifically, this document contains currently and properly classified information, and the acknowledged facts are inextricably intertwined with otherwise classified information.

    *Ruling: For the reasons articulated by the Government, this document need not be disclosed.*

**DoD Document No. 18:** ██████ Classified Memorandum, undated, titled "Department of Defense ████████████████████████████████████ ██████████████████████████████████████████████ ██████████████████████████████████████

The Government argues that this document is subject to the following FOIA exemptions:

- ██████ This document is exempt under Section (b)(1) because it discusses currently and properly classified operational details concerning possible counterterrorism operations ██████████████████████████ ██████████████████████████████ ██████████████████████████ ██████████ ██████ The memorandum also explains that the military will ██████████████ ██████ As this document relates to contemplated Department of Defense ██████████████ the information pertains to military plans and foreign activities of the United States, and its disclosure could reasonably be expected to harm national security. ████████████████████

TS/ ██████████

██████████████████████████
██████████████████████████
██████████████████████████
██████████ and thus harm national security.

- ██████ **This document is exempt under Section (b)(5) and the presidential communications privilege because it reflects a communication between DoD and senior administration officials for the purpose of presidential decision-making.** ██████████ Disclosure of such presidential communications would inhibit the President's ability to engage in effective communication and decision-making on matters of national security.

- ██████ Although the document contains previously acknowledged facts 1-4 (see paragraph 32 of DoD's unclassified declaration), such information cannot reasonably be segregated from material that has not been "officially acknowledged" and as to which FOIA exemptions have not been waived. Specifically, this document contains currently and properly classified information, and the acknowledged facts are inextricably intertwined with otherwise classified information.

*Ruling: For the reasons articulated by the Government, this document need not be disclosed.*

**DoD Document No. 21:** ██ Classified memorandum, undated, titled "Department of Defense ██████████████████████████
██████████████████████████

The Government argues that this document is subject to the following FOIA exemptions:

- ██████ **This document is exempt under Section (b)(1) because the document** discusses currently and properly classified information regarding ██████████

The memorandum specifically ██████████
██████████████████████████
██████████████████████ **And** because the document discusses ██████████ █

TS/ ██████████

███ ████████████████████████

████ the classified information pertains to military plans and foreign activities of the United States, and its disclosure could reasonably be expected to harm national security. The revelation of this information would inform our adversaries about ███████████████████████ and thus harm national security.

- ██████████ **This document is exempt under Section (b)(5) and the deliberative process privilege because it constitutes a preliminary recommendation** ████ ███████████████████ which represents an interim stage in inter-agency discussions preceding a final government decision. The disclosure of such deliberations would have a chilling effect on candid inter-agency discussions prior to a final government decision. In addition, disclosure of this preliminary recommendation prior to a final decision could cause confusion about the scope of the government ultimate determination about ██████████ ████████████████

- (U) Although the document contains previously acknowledged facts 1-4 (see paragraph 32 of DoD's unclassified declaration), such information cannot reasonably be segregated from material that has not been "officially acknowledged" and as to which FOIA exemptions have not been waived. Specifically, this document contains currently and properly classified information, and the acknowledged facts are inextricably intertwined with otherwise classified information. Moreover, the document remains exempt in its entirety under FOIA exemption 5 and the deliberative process privilege.

*Ruling: For the reasons articulated by the Government, this document need not be disclosed.*

**DoD Document No. 24**██ Classified Memorandum for the Record, ████████ ██ ██ █████████ Department of Defense Acting General Counsel, with the subject ████████████████████████

The Government argues that this document is subject to the following FOIA exemptions:

- ███████████ **This document is exempt under Section (b)(1) because it discusses currently and properly classified information** ████████████ ████████████████ ██████████████ The memorandum specifically discusses

135

TS/ ████████████████████

whether ████████████ ████████████
████████ and, in doing so, addresses classified intelligence products detailing
████████████████████████ Moreover, the
memorandum addresses ██████████████████████
██████████████████████████████
████ The memorandum also confirms that ████████████████
██████████████████████ As
this document relates to ██████████████
██████████████ the information pertains to military plans and foreign activities
of the United States, and its disclosure could reasonably be expected to harm
national security.  The revelation of this ██████████████
████████████████████████████
████████████████████████, and thus harm national
security.

████████████████ The document also contains currently and properly
classified information pertaining to intelligence sources and method utilized to
collect the information ██████████████ In particular, the document discusses
████ Revealing this information would compromise █████████
████████████ Further,
disclosure of this information could reflect the facts available to DoD at a specific
point in time, which could show the breadth, capabilities, and limitations of the
U.S. military and its intelligence collection apparatus.  Accordingly, disclosure of
this information would reveal sensitive intelligence sources and methods
employed by DoD and the intelligence community, which would undermine
national security.

- ██████████████ This document is exempt under Exemption (b)(3)
(National Security Act) because it would reveal sensitive intelligence sources
and methods employed by the United States government.  In particular, the
document contains ████████████████████

- (U)  This document is exempt under Section (b)(5) and the deliberative
process privilege because it was created by DoD at an interim stage in inter-
agency discussions preceding a final decision regarding a proposed
counterterrorism operations.  Because this memorandum constitutes only one step
in the larger inter-agency process for approving a counterterrorism operation, the
memorandum is both pre-decisional and deliberative.  This type of inter-agency
dialogue between agencies delegated to make national security decisions form an
integral part of the give-and-take of inter-agency deliberations, which would be
curtailed if these deliberative documents were disclosed.

TS/ ████████████████

TS/ ███████████████████████████

- (U) **This document is exempt under Section (b)(5) and the attorney-client privilege because it reflects confidential communications between DoD General Counsel and other components within the U.S. government in connection with a** ███████████████████████████████████ The confidentiality of these communications was maintained and the contents of this document were not shared beyond the interested parties.

- (U) Although the document contains previously acknowledged facts 1-4 (see paragraph 32 of DoD's unclassified declaration), such information cannot reasonably be segregated from material that has not been "officially acknowledged" and as to which FOIA exemptions have not been waived. For example, the United States government ███████████████ ██████████████████ But this document contains currently and properly classified information, and the acknowledged facts are inextricably intertwined with otherwise classified information. Moreover, the document remains exempt in its entirety under FOIA exemption 5 and the deliberative process privilege and the attorney-client privilege.

*Ruling: For the reasons articulated by the Government, this document need not be disclosed.*

**DoD Document No. 25:** ███████ One-page excerpt with handwritten comments from classified draft memorandum, ██████████ titled "Department of Defense ███████████████████████████████████ ███████████████████████████████████ ████████████████████

The Government argues that this document is subject to the following FOIA exemptions:

- ███████ **This document is exempt under Section (b)(1) because it discusses currently and properly classified** ████████████ The memorandum also notes that the ███████████████████ ██████████ The memorandum discusses █████████████ ███████████████████████████████████ ████████████ Further, the memoranda explain that the military will

TS/ ███████████████████████

TS/ ███████████████

████████████████████████████████
████████████████████████████████
███████████ the information necessarily pertains to military plans and foreign activities of the United States, and its disclosure could reasonably be expected to harm national security. By disclosing this information, our adversaries could learn how to alter their activities in an attempt to avoid U.S. counterterrorism operations, and thus harm national security.

███████ ) This document also contains currently and properly classified information pertaining to intelligence sources and methods ██████ ████████████████████ Disclosure of this information could reflect the facts available to DoD at a specific point in time, which could show the breadth, capabilities, and limitations of the U.S. military and its intelligence collection apparatus. Accordingly, disclosure of this information would reveal sensitive intelligence sources and methods employed by the intelligence community, which would undermine national security.

• ███████ This document is exempt under Section (b)(5) and the deliberative process privilege because it is a draft that represent an interim stage in inter-agency discussions preceding a final decision regarding ███████ ████████████████████ In fact, the one-page excerpt contains handwritten comments, demonstrating that pre-decisional nature of the document. The disclosure of this draft could cause confusion about ████████ ████████████████████ And disclosing drafts of this type of document would hinder the intra-agency deliberative process preceding a final decision by making the sharing of drafts less likely.

• ███████ This document is exempt under Section (b)(5) and the presidential communications privilege because it is a draft of communications intended for senior administration officials for the purpose of presidential decision-making. ████████████████████████ Disclosure of such presidential communications would inhibit the President's ability to engage in effective communication and decision-making on matters of national security.

• (U) Although the document contains previously acknowledged facts 1-4 (see paragraph 32 of DoD's unclassified declaration), such information cannot reasonably be segregated from material that has not been "officially acknowledged" and as to which FOIA exemptions have not been waived. Specifically, this document contains currently and properly classified information, and the acknowledged facts are inextricably intertwined with this otherwise classified information. Moreover, the document remains exempt in their entirety under FOIA exemption 5 and the deliberative process privilege.

138

─TS/ ███████████████████

*Ruling: For the reasons articulated by the Government, this document need not be disclosed. I note that the date of the document* ─ ████████ *and its forward-looking nature make it unlikely that this document contains information relating to* ███████████████ *if it did, that would not alter my conclusion.*

**DoD Document No. 27:** ██████ Classified memorandum, ██████████████, titled "Department of Defense ██████████████████████████

█████████████████████████████████████

███████████████████████████████████████

██████████████

The Government argues that this document is subject to the following FOIA exemptions:

- ████████ **This document is exempt under Section (b)(1) because it discusses currently and properly classified** ███████████ ████████████████ ████████████████ The memorandum discusses ██████████████████████████████ The memorandum also explains that the military will seek ██████████████ ████████████████████ ████████████ **the information** necessarily pertains to military plans and foreign activities of the United States, and its disclosure could reasonably be expected to harm national security. By disclosing this information, our adversaries could learn how to alter their activities in an attempt to avoid U.S. counterterrorism operations, and thus harm national security.

  ████████ The document also contains currently and properly classified information pertaining to intelligence sources and methods ██████████████████ ████████████████████ Disclosure of this information could reflect the facts available to DoD at a specific point in time, which could show the breadth, capabilities, and limitations of the U.S. military and its intelligence collection apparatus. Accordingly, disclosure of this information would reveal sensitive intelligence sources and methods employed by the intelligence community, which would undermine national security.

─TS/ ██████████████████

TS/ █████████████████████████

- ███████ This document is exempt under Section (b)(5) and the presidential communications privilege because it reflects a communication between DoD and senior administration officials for the purpose of presidential decision-making. ██████████████████████████████ Disclosure of such presidential communications would inhibit the President's ability to engage in effective communication and decision-making on matters of national security.

- (U)  Although the document contains previously acknowledged facts 1-4 (see paragraph 32 of DoD's unclassified declaration), such information cannot reasonably be segregated from material that has not been "officially acknowledged" and as to which FOIA exemptions have not been waived. Specifically, this document contains currently and properly classified information, and the acknowledged facts are inextricably intertwined with otherwise classified information.

*Ruling: For the reasons articulated by the Government, this document need not be produced.*

**DoD Document No. 28:** ███ Classified memorandum for the National Security Advisor, ██████████████ ███████████ Department of Defense Acting General Counsel, regarding legal review of Department of Defense proposal for █████████ ████████████████████████████████████████████ ████████████████████████████████████████ ███████

The Government argues that this document is subject to the following FOIA exemptions:

- ████████████████ This document is exempt under Section (b)(1) because it discusses currently and properly classified information about █████ ██████████ ████████████████████ The memorandum details ████████████ ████████████████████████████████████ In doing so, the memorandum discusses classified information about ██████████████ In particular, the memorandum states ██████████████████████████

TS/ ███████████████████

that ████████████████████████████████████████ the
█████████████████ information necessarily pertains to military plans and foreign activities of the
United States, and its disclosure could reasonably be expected to harm national
security. ████████████████████████████████████████
███████████████████████████████████████████████
████████████████████████ and thus harm national security. ██████████
██████████████████████████████████

██████████████████ The document also contains currently and properly
classified information pertaining to intelligence sources and methods. For
example, the document contains information about ███████████████████
█████████████████████████████████████ And similarly, the document contains
██████████████████████████████████
Revealing this information would compromise ██████████████████
████████████████████████████████ Finally, disclosure of
this information could reflect the facts available to the U.S. government ████████
██████████████████████████████ which could show the breadth, capabilities, and
limitations of the U.S. intelligence collection apparatus.  Accordingly, disclosure
of this information would reveal sensitive intelligence sources and methods
employed by the intelligence community, which would undermine national
security.

• ██████████████████████████ This document is exempt under
   Exemption (b)(3) (National Security Act) because it would reveal sensitive
   intelligence sources and methods employed by the United States government.  In
   particular, the document contains information ███████████████████
   ████████████████████████ as well as sensitive information ████████████
   ██████████████████████████

• ██████ This document is exempt under Section (b)(5) and the deliberative
   process privilege because it represents an interim stage in inter-agency
   discussions preceding a final decision regarding ███████████████████
   ██████████████████████████████ The disclosure of this memorandum
   could cause confusion about the ultimate decision about whether the U.S.
   government ████████████████████████ Revealing this sort of document
   could also chill the inter-agency back-and-forth vital in the preliminary stages of
   making a decision about whether ████████████████████████████

—TS/█████████████████

- █████ This document is exempt under Section (b)(5) and the attorney-client privilege because it reflects confidential communications between DoD Acting General Counsel and the National Security Staff Legal Advisor and the United States Department of Justice requesting ███████████████████ ███████████████ The disclosure of this memorandum would inhibit open communication between client-agencies and their lawyers, depriving agencies of unimpeded counsel. The confidentiality of these communications was maintained and the contents of this document were not shared beyond the interested parties.

- █████ This document is exempt under Section (b)(5) and the presidential communications privilege because it reflects a communication between DoD Acting General Counsel and the National Security Advisor for the purpose of presidential decision-making about████████████████ The communication was received by the President's advisor, who is responsible for formulating advice on issues affecting national security. Disclosure of such presidential communications would inhibit the President's ability to engage in effective communication and decision-making on matters of national security.

- (U) Although the document contains previously acknowledged facts 1-4 (see paragraph 32 of DoD's unclassified declaration), such information cannot reasonably be segregated from material that has not been "officially acknowledged" and as to which FOIA exemptions have not been waived. Specifically, this document contains currently and properly classified information, and the acknowledged facts are inextricably intertwined with otherwise classified information. Moreover, the document remains exempt in its entirety under FOIA exemption 5 and the deliberative process privilege and attorney-client privilege.

*Ruling: For the reasons articulated by the government, this document need not be produced.*

**DoD Document No. 29:** ███ Classified memorandum for the National Security Advisor, ████████████        ████████████                        Department of Defense Acting General Counsel, regarding ██████████████████████████████

███████████████████████████████████████████

████████████████████████████████

████████████████████████████████████████

—TS/█████████████████

TS/ ████████████████████

████████ The memorandum concludes that ████████████████████

███████████████████

The Government argues that this document is subject to the following FOIA

exemptions:

- ██████████████████ This document is exempt under Section
(b)(1) because it discusses currently and properly classified information █████
███████████████████████ In particular,
the memorandum states that █████████████████████
██████████████████ the information necessarily pertains
to military plans and foreign activities of the United States, and its disclosure
could reasonably be expected to harm national security. By disclosing this
information, ████████████████
█████████████, not to mention provide our adversaries with insight into
██████████████████████, and
thus harm national security.

  ██████████████████ ) The document also contains currently and
properly classified information pertaining to intelligence sources and methods.
For example, the document contains ██████████████████
████████ Revealing this information would compromise ██████
██████████████ used to obtain that specific intelligence. Finally,
disclosure of this information could reflect the facts available to the U.S.
government about █████████ ████ which could show the
breadth, capabilities, and limitations of the U.S. intelligence collection apparatus.
Accordingly, disclosure of this information would reveal sensitive intelligence
sources and methods employed by the intelligence community, which would
undermine national security.

- ██████████████████ This document is exempt under Exemption
(b)(3) (National Security Act) because it would reveal sensitive intelligence
sources and methods employed by the United States government. In particular,
the document contains ██████████████████████

- ████ This document is exempt under Section (b)(5) and the deliberative
process privilege because it represents an interim stage in inter-agency
discussions preceding a final decision regarding ████████████
█████████████ The disclosure of this memorandum could
cause confusion about the ultimate decision about ███████████████████

TS/ ████████████████

TS/████████████████████████████

████████████████████████ Revealing this sort of document could also chill the inter-agency back-and-forth vital in the preliminary stages of making a decision about █████████████████████████

- ███ **This document is exempt under Section (b)(5) and the attorney-client privilege because** it reflects confidential communications between DoD Acting General Counsel and the National Security Staff Legal Advisor providing legal advice in response to a request for legal analysis about ████████████████ ████ The disclosure of this memorandum would inhibit open communication between client-agencies and their lawyers, depriving agencies of unimpeded counsel. The confidentiality of these communications was maintained and the contents of this document were not shared beyond the interested parties.

- ███**This document is exempt under Section (b)(5) and the presidential communications privilege because** it reflects a communication between DoD Acting General Counsel and the National Security Advisor for the purpose of presidential decision-making. The communication was received by the President's advisor, who is responsible for formulating advice on issues affecting national security. Disclosure of such presidential communications would inhibit the President's ability to engage in effective communication and decision-making on matters of national security.

- (U) Although the document contains previously acknowledged facts 1-4 (see paragraph 32 of DoD's unclassified declaration), such information cannot reasonably be segregated from material that has not been "officially acknowledged" and as to which FOIA exemptions have not been waived. Specifically, this document contains currently and properly classified information, and the acknowledged facts are inextricably intertwined with otherwise classified information. Moreover, the document remains exempt in its entirety under FOIA exemption 5 and the deliberative process privilege and attorney-client privilege.

*Ruling: For the reasons articulated by the Government, this document need not be produced.*

**DoD Document No. 30:** ███ Classified memorandum for the National Security Advisor, ████████████████ ███████████ Department of Defense Acting General Counsel, regarding ████████████████████████ █████████████████████████ The memorandum details the

TS/████████████████████████

TS/ ███████████████

████████████████████████████████████████████

███████████████████████████ The memorandum concluded

that ████████████████████████████████████████

██████ ████████████

The Government argues that this document is subject to the following FOIA

exemptions:

- ██████████████ This document is exempt under Section (b)(1) because
it discusses currently and properly classified information about ████████
████████████████████████████████████████
████████████████████████ In particular, the memorandum
states that █████████████████████████████████████
████████████████████████████████████████████
████████████████████████ the information necessarily pertains to military
plans and foreign activities of the United States, and its disclosure could
reasonably be expected to harm national security.  By disclosing this information,
████████████████████████████████████████████
██████ not to mention provide our adversaries with insight ████████████
████████████████████████████ and thus harm national
security.

  ████████████ The document also contains currently and properly
classified information pertaining to intelligence sources and methods.  For
example, the document contains ████████████████████████
██████████ Revealing this information would compromise ██████████
████████████ Finally, disclosure of this information could reflect the facts
available to the U.S. government ████████ ████████ ██ ████, which could
show the breadth, capabilities, and limitations of the U.S. intelligence collection
apparatus.  Accordingly, disclosure of this information would reveal sensitive
intelligence sources and methods employed by the intelligence community, which
would undermine national security.

- ████████████████ This document is exempt under Exemption (b)(3)
(National Security Act) because it would reveal sensitive intelligence sources
and methods employed by the United States government.  In particular, the
document contains information ████████████████████████████

TS/ ████████████████

TS/ ███████████████████

████████████ as well as sensitive information ████████████
███████████

- ███ **This document is exempt under Section (b)(5) and the deliberative process privilege because it represents an interim stage in inter-agency discussions preceding a final decision regarding** ██████████
████ ████████ The disclosure of this memorandum could cause confusion about the ultimate decision about whether █████████████
████████████ Revealing this sort of document could also chill the inter-agency back-and-forth vital in the preliminary stages of making a decision about whether to approve a counterterrorism operation.

- ███ **This document is exempt under Section (b)(5) and the attorney-client privilege because it reflects confidential communications between DoD Acting General Counsel and the National Security Staff Legal Advisor providing legal advice in response to a request for legal analysis** ████████████
███ The disclosure of this memorandum would inhibit open communication between client-agencies and their lawyers, depriving agencies of unimpeded counsel. The confidentiality of these communications was maintained and the contents of this document were not shared beyond the interested parties.

- ███ **This document is exempt under Section (b)(5) and the presidential communications privilege because it reflects a communication between DoD Acting General Counsel and the National Security Advisor for the purpose of presidential decision-making** █████████████ ███ The communication was received by the President's advisor, who is responsible for formulating advice on issues affecting national security. Disclosure of such presidential communications would inhibit the President's ability to engage in effective communication and decision-making on matters of national security.

- (U) Although the document contains previously acknowledged facts 1-4 (see paragraph 32 of DoD's unclassified declaration), such information cannot reasonably be segregated from material that has not been "officially acknowledged" and as to which FOIA exemptions have not been waived. Specifically, this document contains currently and properly classified information, and the acknowledged facts are inextricably intertwined with otherwise classified information. Moreover, the document remains exempt in its entirety under FOIA exemption 5 and the deliberative process privilege and attorney-client privilege.

*Ruling: For the reasons articulated by the Government, this document need not be produced.*

TS/ ███████████████

TS/ ███████████████████

### General Counsel Memoranda to the Secretary of Defense (U):

**DoD Document No. 31:** ██ Memorandum for the Secretary of Defense, ████████ █████████, from Stephen W. Preston, DoD General Counsel, ████████████ ███████████████████████████████████████████████████████ ████████████████████████████ The memorandum details the ████████████████████████████████████████████████████ ████████████████████████████████████████ The memorandum concluded that █████████████████████████████████████ ███████████████████████████████████████

**DoD Document No. 32:** ██ Memorandum for the Secretary of Defense, ████████ ████████ ████████ DoD Principal Deputy General Counsel, ██████████ ████████████████████████████████████████████████████████ ██████████████████████████ The memorandum details the legal rationale for DoD ████████████████████████████████████████████ ████████████████████████████. The memorandum concluded ████████████████████████████████████████████████████████ ███████████████████████████

**DoD Document No. 33:** ████████████████ Memorandum for the Secretary of Defense, ████████████████████ DoD Principal Deputy General Counsel, regarding ██████████████████████████████████████████████ ██████████████████████ The memorandum details ██████████████ ████████████████████████████████████████████████████ ██████████████████████████ The memorandum concluded that ███

TS/ ████████████████████

TS/ ███████████

████████████████████████████

███████████████

**DoD Document No. 34:** ██ Memorandum for the Secretary of Defense, ████████

████ ██████ ███ DoD Principal Deputy General Counsel, ████████

████████████████████████████

████████████████ The memorandum details ████████

████████████████████████████

████████████ The memorandum concluded that

████████████████████████████

███████████████

**DoD Document No. 35:** ████████████ Memorandum for the Secretary of Defense,

dated 8 May 2014, from Stephen W. Preston, DoD General Counsel, ████████

████████████████████████████

███████████ ██ The memorandum details the ████████████

████████████████████████████

████████████ The memorandum concluded that ████

████████████████████████████

███████████████

**DoD Document No. 36:** ██ Memorandum for the Secretary of Defense, ████ ████

████ from Stephen W. Preston, DoD General Counsel, ████████████

████████████████████████████

████████████ The memorandum details the ████████████

████████████████████████████

TS/ ███████████

TS/ ███████████████

███████ █ ███ The memorandum concluded that ████████████████

████████████████████████████████

████████████

**DoD Document No. 37:** ████████ Memorandum for the Secretary of Defense,

██████████████ ████████ DoD Principal Deputy General Counsel,

regarding the ████████████████████████████

████████████████████ The memorandum details the

████████████████████████████████

████████████████ The memorandum

concluded that ████████████████████████

███████████ ████ ████████

**DoD Document No. 38:** ██ Memorandum for the Secretary of Defense, ████████

███ from Stephen W. Preston, DoD General Counsel, ████████████

████████████████████████████

████████████ The memorandum details ████████████

████████████████████████████████

████████████ The memorandum concluded that ████████

████████████████████████████████

███ ████████

**DoD Document No. 39:** ██ Memorandum for the Secretary of Defense, ████████

████████ from Stephen W. Preston, DoD General Counsel, ████████████

████████████████████████████████

████████████████████████████

TS/███████████████████

████████████████████████ The memorandum details ████████████

██████████████████████████████████████████████

█████████████████████████████████████████ The

memorandum concluded that ████████████████████████████████

████████████████████████ ███████████████

████████████

**DoD Document No. 40:** █ Memorandum for the Secretary of Defense, ██████

████████ from Stephen W. Preston, DoD General Counsel, ██████████

████████████████████████████████████████████

█████████████████████████ The memorandum details the

████████████████████████████████████████████████████

█████████████████████████████ The memorandum

concluded that ███████████████████████████████████████

███████████████████████

**DoD Document No. 41:** █ Memorandum for the Secretary of Defense, ██████

████████ from Stephen W. Preston, DoD General Counsel, ██████████

████████████████████████████████████████████

████████████████████ The memorandum details ███████████

████████████████████████████████████

█████████████████ The memorandum concluded that ██████

██████████████████████████████████████████████

████████████████████████

TS/███████████████████

TS/ ████████████████████

**DoD Document No. 42**: ████████████ Memorandum for the Secretary of Defense, ███ ██ ████ from Stephen W. Preston, DoD General Counsel,

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

█████████████████████████ The memorandum

concluded that ██████████████████████████████

█████████████████████████

**DoD Document No. 43**: █ Memorandum for the Secretary of Defense, undated, from Stephen W. Preston, DoD General Counsel, ███████████████

████████████████████████████████████████

█████████████████ The memorandum details the █████████

████████████████████████████████████████

█████████████████████ The memorandum concluded that

████████████████████████████████████████

██████████████

**DoD Document No. 44**: █ Memorandum for the Secretary of Defense, undated, from Stephen W. Preston, DoD General Counsel, ██████████████

████████████████████████████████████████

██████████████ The memorandum details the █████████

████████████████████████████████████████

█████████████████████ The memorandum concluded that

TS/ ████████████████████

TS/ ████████████████████████████

████████████████████████████████ ████ ████████

████████████████████████

The Government argues that these documents are subject to the following FOIA exemptions:

- ███████ Document Nos. 31–44 are exempt under Section (b)(1) because these documents discuss currently and properly classified information regarding the ██████████████████████████████████████ These documents discuss ████████████████████████████ ███████, the information pertains to military plans and foreign activities of the United States, the disclosure of which could reasonably be expected to harm national security. The revelation of this information would inform our adversaries about ██████████████████████████████████████ ████ ████████ and thus harm national security.

  ███████ Document Nos. 31–44 also contains currently and properly classified information pertaining to intelligence sources and methods used ████████ ██████████████████████ Disclosure of this information could reflect the facts available to DoD at a specific point in time, which could show the breadth, capabilities, and limitations of the U.S. military and its intelligence collection apparatus. Accordingly, disclosure of this information would reveal sensitive intelligence sources and methods employed by the intelligence community, which would undermine national security.

- ███████ Document Nos. 31–44 are exempt under Exemption (b)(3) (National Security Act) because they would reveal sensitive intelligence sources and methods employed by the United States government. In particular, the documents contain ████████████████████████████████ ████████████████

- ███████ Document Nos. 31–44 are exempt under Section (b)(5) and the deliberative process privilege because they are legal memorandum created by the Office of General Counsel for the Secretary of Defense, which represents an interim stage in intra-agency discussions preceding a final recommendation about ████████████████████████████████████████

  ███████ The disclosure of such deliberations would discourage full and frank discussion among agency personnel about whether to approve or disapprove nominations before a final agency decision. Indeed, pre-decisional communications between government officials responsible for national security

TS/ ███████████████████████

decisions is an integral part of the give-and-take of deliberations that would be curtailed if such dialogue is disclosed.

- ████ Document Nos. 31–44 are exempt under Section (b)(5) and the attorney-client privilege because it reflects confidential communications between the DoD General Counsel and the Secretary of Defense in response to a request for legal advice pertaining to ██████████████████ The confidentiality of these communications was maintained and the contents of this document were not shared beyond the interested parties. Revealing such communications would inhibit open communication between client-agencies and their lawyers, thereby depriving the agencies of the full and frank counsel of its attorneys.

- (U) Although Document Nos. 31–44 contain previously acknowledged facts 1-4 (see paragraph 32 of DoD's unclassified declaration), such information cannot reasonably be segregated from material that has not been "officially acknowledged" and as to which FOIA exemptions have not been waived. Specifically, this document contains currently and properly classified information, and the acknowledged facts are inextricably intertwined with otherwise classified information. Moreover, the document remains exempt in its entirety under FOIA exemption 5 and the deliberative process privilege and the attorney-client privilege.

   *Ruling: For the reasons articulated by the Government, and most especially for the reasons discussed at pages 13-17, supra, these documents need not be produced.*

<u>DoD Document No. 45:</u> ███ Memorandum for the Secretary of Defense, ████████ DoD Principal Deputy General Counsel, memorializing the ████████████████████████████████ ████████████████████████████████ ████████████████████████████████ ████████████████████████████████ ███████████████████████ ██ ████ The memorandum concluded that ████████████████████

TS/ ██████████████████████

TS/ ████████████████████

████████████████████████████

**DoD Document No. 46**: ████████████ Memorandum for the Secretary of
Defense, ████████████ from Stephen W. Preston, DoD General Counsel,
████████████████████████████████
████████████████████████████
████████████████████████████
████████████████████████████████
████████████████████████████
████████████████████ The memorandum concluded
that ████████████████████████████
████████████████████████████

The Government argues that these documents are subject to the following FOIA
exemptions:

- ████████████████ Document Nos. 45 and 46 are exempt under Section
  (b)(1) because these documents discuss currently and properly classified
  information regarding ████████████████████████
  ████████ In particular, the memorandums address classified intelligence
  detailing ████████████████ As these documents discuss ████████
  ████████████████ the information pertains to military plans and
  foreign activities of the United States, the disclosure of which could reasonably be
  expected to harm national security. The revelation of this information would
  ████████████████████████████
  ████████████████████████████
  ████████████████████████ and
  thus harm national security.

  ████████████████ The document also contains currently and properly
  classified information pertaining to intelligence sources and methods used to
  collect information ████████████████████ Disclosure of this
  information could reflect the facts available to DoD at a specific point in time,

TS/ ████████████████████

TS/██████████████████

which could show the breadth, capabilities, and limitations of the U.S. military and its intelligence collection apparatus. Accordingly, disclosure of this information would reveal sensitive intelligence sources and methods employed by the intelligence community, which would undermine national security.

- ██████████ Document Nos. 45 and 46 are exempt under Exemption (b)(3) (National Security Act) because they would reveal sensitive intelligence sources and methods employed by the United States government. In particular, the document contains sensitive information ████████████████████████ ██████████████

- ████████████████ Document Nos. 45 and 46 are exempt under Section (b)(5) and the deliberative process privilege because they are legal memorandum created by the Office of General Counsel for the Secretary of Defense, which represents an interim stage in intra-agency discussions preceding a final recommendation ████████████████████████ ████████████████████ The disclosure of such deliberations would discourage full and frank discussion among agency personnel about whether to approve or disapprove requests before a final agency decision. Indeed, pre-decisional communications between government officials responsible for national security decisions is an integral part of the give-and-take deliberations that would be curtailed if such dialogue is disclosed.

- ████████████████ Document Nos. 45 and 46 are exempt under Section (b)(5) and the attorney-client privilege because it reflects confidential communications between the DoD General Counsel and the Secretary of Defense in response to a request for legal advice pertaining to ████████████ ████████████████████████ The confidentiality of these communications was maintained and the contents of this document were not shared beyond the interested parties. Revealing such communications would inhibit open communication between client-agencies and their lawyers, thereby depriving the agencies of the full and frank counsel of its attorneys.

- (U) Although Document Nos. 45 and 46 contain previously acknowledged facts 1-4 (see paragraph 32 of DoD's unclassified declaration), such information cannot reasonably be segregated from material that has not been "officially acknowledged" and as to which FOIA exemptions have not been waived. Specifically, this document contains currently and properly classified information, and the acknowledged facts are inextricably intertwined with otherwise classified information. Moreover, the document remains exempt in its entirety under FOIA exemption 5 and the deliberative process privilege and the attorney-client privilege.

TS/██████████

*Ruling: For the reasons articulated by the Government, and more specifically the reasons discussed at pages 13-17, supra, these documents need not be produced.*

**CENTCOM Memoranda for the Record Regarding Legal Review (U):**

<u>DoD Document No. 47</u>: ██████ Memorandum for the Record from United States Central Command, ██████████ ██ . ████████████
████████████████████████████
████████████ ██ ██████████████
████████████████████ The
memorandum concurs that ██████████████████
██████████████████████████
██████████

<u>DoD Document No. 48</u>: ████ Memorandum for the Record from United States Central Command, ██████ ████ ██████████████
████████████████████
████████ █ █ █ ████████████
████████████████████
██████████████ The memorandum
concurs that ██████████████████
██████████████████████

<u>DoD Document No. 49</u>:    Memorandum for the Record from United States Central Command, ██████ ██ ████████████
████████████████████████

TS/██████████

TS/ ███████████████

███████████████████████████
███████████████████████████
███████████████████████████
██████ The memorandum concurs that ██████████████
█████████████████████████████████████
███████████████████████

The Government argues that these documents are subject to the following FOIA

exemptions:

- ██████ **Document Nos. 47–49 are exempt under Section (b)(1) because these documents discuss currently and properly classified information regarding the** ████████████████ **In particular, the memorandums address classified intelligence** ████████████████ **As these documents discuss** ████████████ the information pertains to military plans and foreign activities of the United States, the disclosure of which could reasonably be expected to harm national security. The revelation of this information ████████████████ ████████████████████████ ████████████████ and thus harm national security.

  ██████████ The documents also contain currently and properly classified information pertaining to intelligence sources and methods used to ████████████. Disclosure of this information could reflect the facts available to DoD at a specific point in time, which could show the breadth, capabilities, and limitations of the U.S. military and its intelligence collection apparatus. Accordingly, disclosure of this information would reveal sensitive intelligence sources and methods employed by the intelligence community, which would undermine national security.

- ██████ **Document Nos. 47–49 are exempt under Exemption (b)(3) (National Security Act) because they would reveal sensitive intelligence sources and methods employed by the United States government. In particular, the document contains sensitive information** ████████████████ ████████████

─TS/ ████████████████████

- ████  **Document Nos. 47–49 are exempt under Section (b)(5) and the deliberative process privilege** because they are legal memoranda created by United States Central Command, which represents an interim stage in intra-agency discussions preceding a final recommendation about ████████████ ████████████████████████████  The disclosure of such deliberations would discourage full and frank discussion among agency personnel about whether to approve or disapprove requests before a final agency decision. Indeed, pre-decisional communications between government officials responsible for national security decisions is an integral part of the give-and-take of deliberations that would be curtailed if such dialogue is disclosed.

- ████  **Document Nos. 47–49 are exempt under Section (b)(5) and the attorney-client privilege** because it reflects a confidential communication from United States Central Command in response to a request for legal advice pertaining to the ████████████████. The confidentiality of these communications was maintained and the contents of this document were not shared beyond the interested parties. Revealing such communications would inhibit open communication between client-agencies and their lawyers, thereby depriving the agencies of the full and frank counsel of its attorneys.

- Although Document Nos. 47–49 contain previously acknowledged facts 1-4 (see paragraph 32 of DoD's unclassified declaration), such information cannot reasonably be segregated from material that has not been "officially acknowledged" and as to which FOIA exemptions have not been waived. Specifically, this document contains currently and properly classified information, and the acknowledged facts are inextricably intertwined with otherwise classified information. Moreover, the document remains exempt in its entirety under FOIA exemption 5 and the deliberative process privilege and the attorney-client privilege. (U)

*Ruling: For the reasons articulated by the Government, and most particularly for the reasons discussed at pages 13-17, supra, these documents need not be produced.*

**DoD Document No. 50:** ████ Memorandum for the Record ████████

████████████ ████████ ████████████████████

████████████████████████████████████████████

████ The memorandum details

─TS/ ████████████████████

TS/ ████████████████████

████████████████████████████████████

████████████  The memorandum concluded that ████████████████

████████████████████████████████████████

████████████

The Government argues that this document is subject to the following FOIA

exemptions:

- ████████████████ This document is exempt under Section (b)(1) because the document discusses currently and properly classified information regarding

  ████████████████████████████████████
  ████████████ █ ████████████████████
  ████████████████████████████████████
  ████████████████████████████

  ████████████  As this document discusses ████████████████
  ████████ the information pertains to military plans and foreign activities of the United States, the disclosure of which could reasonably be expected to harm national security.  The revelation of this information would inform our adversaries about how DoD seeks approval to conduct counterterrorism operations against a proposed high value terrorist, which would allow our adversaries to alter their activities in an attempt to avoid U.S. operations, and thus harm national security.

  ████████  The document also contains currently and properly classified information pertaining to intelligence sources and methods used to ████████
  ████████████████████████  Disclosure of this information could reflect the facts available to DoD at a specific point in time, which could show the breadth, capabilities, and limitations of the U.S. military and its intelligence collection apparatus.  Accordingly, disclosure of this information would reveal sensitive intelligence sources and methods employed by the intelligence community, which would undermine national security.

- ████████  This document is exempt under Exemption (b)(3) (National Security Act) because it would reveal sensitive intelligence sources and methods employed by the United States government.  In particular, the document contains information ████████████████████████ as well as sensitive information ████████████████████████

- ████████  This document is exempt under Section (b)(5) and the deliberative process privilege because they are legal memoranda ████ █ ████████

TS/ ████████████████

T̶S̶/ ███████████████

████████████ which represents an interim stage in intra-agency discussions preceding a final recommendation about ███████████████████ The disclosure of such deliberations would discourage full and frank discussion among agency personnel about the legality of certain actions before a final agency decision. Indeed, pre-decisional communications between government officials responsible for national security decisions is an integral part of the give-and-take of deliberations that would be curtailed if such dialogue is disclosed.

- ██████ This document is exempt under Section (b)(5) and the attorney-client privilege because it reflects a confidential communication ███████ ████████████████████ in response to a request for legal advice pertaining to the ████████████████████ The confidentiality of these communications was maintained and the contents of this document were not shared beyond the interested parties. Revealing such communications would inhibit open communication between client-agencies and their lawyers, thereby depriving the agencies of the full and frank counsel of its attorneys.

- (U) This document contains previously acknowledged facts 1-4 (see paragraph 32 of DoD's unclassified declaration), such information cannot reasonably be segregated from material that has not been "officially acknowledged" and as to which FOIA exemptions have not been waived. Specifically, this document contains currently and properly classified information, and the acknowledged facts are inextricably intertwined with otherwise classified information. Moreover, the document remains exempt in its entirety under FOIA exemption 5 and the deliberative process privilege and the attorney-client privilege.

*Ruling: For the reasons articulated by the Government, this document need not be produced.*

~~TS/~~ █████████████████

## DEPARTMENT OF STATE DOCUMENTS

**State Document No. 1:** ███████████████████████

███████████████████████████
███████████████████████████
█████████████████████████████
███████████████████████████
█████████████████████████████
███████████████████████████████
█████████████████████████████
████████████████████

The Government argues that this document is subject to the following FOIA

exemptions:

- ██████████████ **This document is exempt under Section b(1) because it contains currently and properly classified information pertaining to intelligence sources and methods.** ████████████████
███████████████████████████
███████████████████████████

  █████ As such, release of this information could reasonably be expected to cause damage, including exceptionally grave damage, to national security.

  ████████████████ Moreover, the document is exempt under Section b(1) because it contains currently and properly classified information pertaining to the military operations and foreign activities of the United States. ██
  ██████████████████████████████
  ██████████████████████████████
  ██████████████████████████████

- ██████████████████████████████
  ██████████████████████████

~~TS/~~ ███████████████



TS/ ▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

- ▮▮▮▮▮▮ This attachments to this document are exempt under Section (b)(5) and the deliberative process privilege because the paper was created by the Department of State at an interim stage inter-agency discussions. The memoranda are both pre-decisional and deliberative because ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ the disclosure of this information would chill the deliberative process by making agency officials less inclined to share preliminary viewpoints. And the disclosure of preliminary recommendations could cause confusion in the public about the ultimate position ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

- (U)  Although the document contains previously acknowledged facts 1-4 (see pages 5-11 of the revised Memorandum Decision and Order, dated June 23, 2015, issued in *ACLU v. U.S. Dep't of Justice*, Civil No. 12-794), such information cannot reasonably be segregated from material that has not been officially acknowledged and as to which FOIA exemptions have not been waived. Specifically, this document contains currently and properly classified information, and the acknowledged facts are inextricably intertwined with otherwise classified information. Moreover, the document remains exempt in its entirety under FOIA exemption 5 and the deliberative process privilege.

*Ruling: For the reasons articulated by the Government, this document need not be produced.*

**State Document No. 2:** ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

TS/ ▮▮▮▮▮▮▮▮▮▮▮▮

TS/ ██████████████████

████████████████████████████████████████████

███████████████████

The Government argues that this document is subject to the following FOIA

exemptions:

- ██████████████████ **This document is exempt under Section b(1)** because it contains currently and properly classified information pertaining to intelligence sources and methods. ████████████████████
██████████████████████████
██████████████████████████
█████████████████████████████
███████████████████████████
█████████████████████████

    ████████████████████████████████ █ █
    ─ ─ ─ ─ ─ ─ ─ ─ ─██████████████████
    ████████████████████████

- ████████████████████████
████████████████████████████
████████████████████████
██████████████████████████
████████████████████████████
██████████████████████████
████████████████████████████
██████████████████
████████

- ██████████████████████ **This document is exempt under Section** **(b)(5) and the deliberative process privilege because it involves** ██████████ ████████████████████████████ which represents an interim stage in intra and inter-agency discussions preceding a final decision. The disclosure of such deliberations would have a chilling effect on candid discussions about ██████████████ ██████████ Indeed, pre-decisional communications between government officials responsible for national security decisions is an integral part of the give-and-take

TS/ ████████████████

TS/████████████

of deliberations that would be curtailed if such dialogue is revealed.  And the disclosure of this interim decision could lead to confusion about whether the proposal was ultimately approved, and under what terms, if any.

- (U)  Although the document contains previously acknowledged facts 1-4 (see pages 5-11 of the revised Memorandum Decision and Order, dated June 23, 2015, issued in *ACLU v. U.S. Dep't of Justice*, Civil No. 12-794), such information cannot reasonably be segregated from material that has not been "officially acknowledged" and as to which FOIA exemptions have not been waived. Specifically, this document contains currently and properly classified information, and the acknowledged facts are inextricably intertwined with otherwise classified information.  Moreover, the document remains exempt in its entirety under FOIA exemption 5 and the deliberative process privilege.

*Ruling: For the reasons articulated by the Government, this document need not be produced.*

**State Document No. 3:** ████████████████████████

████████████████████████████

████████████████████████████

████████████████████████████

████████████████████████████

██████ ██████████ ████████████

████████████████████████████████

████████████████████████████

█████████████████████████████████

████████████████████████████

████████████████████████████████

███████████████████████████

██████████████████

TS/████████████████

TS/███████████████

The Government argues that this document is subject to the following FOIA exemptions:

- ████████████████████ This document is exempt under Section b(1) because it contains currently and properly classified information pertaining to intelligence sources and methods. ████████████████████ ████████████████████ ████████████████████ ████████████████████ ████████████████████ As such, release of this information could reasonably be expected to cause damage, including exceptionally grave damage, to national security.

████████████████████

- ████████████████████ This attachments to this document are exempt under Section (b)(5) and the deliberative process privilege because the memoranda were created by the Department of State at an interim stage in intra-agency discussions preceding a final decision████████████████████ The memoranda are both pre-decisional and deliberative because they make recommendations ████████████████████

TS/███████████████

TS/ ███████████████████████

███████████████████████████ **This type of**
intra-agency dialogue forms an integral part of the give-and-take of internal
agency deliberations. And the disclosure of preliminary recommendations could
cause confusion in the public about the ultimate position of the United States
government.

- (U) Although the document contains previously acknowledged facts 1-4 (see
pages 5-11 of the revised Memorandum Decision and Order, dated June 23, 2015,
issued in *ACLU v. U.S. Dep't of Justice*, Civil No. 12-794), such information
cannot reasonably be segregated from material that has not been "officially
acknowledged" and as to which FOIA exemptions have not been waived.
Specifically, this document contains currently and properly classified information,
and the acknowledged facts are inextricably intertwined with otherwise classified
information. Moreover, the document remains exempt in its entirety under FOIA
exemption 5 and the deliberative process privilege.

*Ruling: For the reasons articulated by the Government, this document need not*

*be produced.*

**State Document No. 4:** ██████████████████████████

██████████████████████████████████████

████████████████████████████████

██████████████████████████████████

████████████████████████████████

██████

The Government argues that this document is subject to the following FOIA

exemptions:

- ████████████████████ **The document is exempt under Section**
**(b)(1)** because the document discusses currently and properly classified
information ████████████████████████████████
████████████████████████████████████
████████████████████████████████████

TS/ ████████████████████



- ███████████████████████ **This document is exempt under Exemption (b)(3) (National Security Act) because it would reveal sensitive intelligence sources and methods employed by the United States government. In particular, the document contains information** ████████████ **as well as sensitive information** ████████ █████████████████████

- **(U) This document is exempt under Section (b)(5) and the deliberative process privilege because it conveys** ████████████████████ ████████ **which represents an interim stage in inter-agency discussions preceding a final decision. The disclosure of such deliberations would have a chilling effect on candid discussions about whether to approve or disapprove counterterrorism operations. Indeed, pre-decisional communications between government officials**

TS/ ██████████████

─TS/█████████████████

responsible for national security decisions is an integral part of the give-and-take of deliberations that would be curtailed if such dialogue is disclosed.

- ████████████████████ This document is exempt under Section (b)(5) and the attorney-client privilege because it reflects confidential communications between the Department of State and the legal advisor for the National Security Council in connection with legal advice pertaining to █████████ ████████████████ The confidentiality of these communications was maintained and the contents of this document were not shared beyond the interested parties. Revealing such communications would inhibit open communication between client-agencies and their lawyers.

- ████████████████████ This document is exempt under Section (b)(5) and the presidential communications privilege because it reflects a communication between the Department of State and the legal advisor for the National Security Council for purposes of presidential decision-making. The communication was received by the President's advisor, who is responsible for formulating advice on issues affecting national security.

- (U) Although the document contains previously acknowledged facts 1-4 (see pages 5-11 of the revised Memorandum Decision and Order, dated June 23, 2015, issued in *ACLU v. U.S. Dep't of Justice*, Civil No. 12-794), such information cannot reasonably be segregated from material that has not been "officially acknowledged" and as to which FOIA exemptions have not been waived. Specifically, this document contains currently and properly classified information, and the acknowledged facts are inextricably intertwined with otherwise classified information. Moreover, the document remains exempt in its entirety under FOIA exemption 5 and the deliberative process privilege, the attorney-client privilege, and the presidential communications privilege.

*Ruling: For the reasons articulated by the Government, including especially the deliberative process privilege and Exemption (b)(5), this document need not be produced.*

**State Document No. 5:** ████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████████

─TS/████████████████

─TS/███████████████████

The Government argues that this document is subject to the following FOIA exemptions:

- ███████████████ **The document is exempt under Section (b)(1)** because the document discusses currently and properly classified information ████████████████████████████████████
████████████████████████████████
████████████████████████████████████
████████████████████████████████████
████████████████████████████████████
████████████████████████████████████
████████████████████████████████████
████████████████████████████████████
████████████████████████████████████
████████████████████

  ████████████ The document also contains currently and properly classified information pertaining to intelligence sources and methods used to obtain information████████████ More specifically, the document discusses classified intelligence ██████████████████████████
████████████████████████████████████
████████████████████████████████████
████████████████████████████████████
████████████████████████████████████
████████████████████████████████
Accordingly, disclosure of this information would reveal sensitive intelligence sources and methods employed by the intelligence community, which would undermine national security.

- ███████████████ **This document is exempt under Exemption (b)(3) (National Security Act)** because it would reveal sensitive intelligence sources and methods employed by the United States government. In particular, the document contains information ██████████████████

─TS/███████████████

TS/███████████

████████████ as well as sensitive information ████████████

- **(U)  This document is exempt under Section (b)(5) and the deliberative process privilege because it conveys** ████████████████ which represents an interim stage in inter-agency discussions preceding a final decision.  The disclosure of such deliberations would have a chilling effect on candid discussions about whether to approve or disapprove counterterrorism operations.  Indeed, pre-decisional communications between government officials responsible for national security decisions is an integral part of the give-and-take of deliberations that would be curtailed if such dialogue is disclosed.

- **(U)  This document is exempt under Section (b)(5) and the presidential communications privilege because it reflects a communication between the** Department of State and the National Security Council for purposes of presidential decision-making.  The communication was received by the President's advisor, who is responsible for formulating advice on issues affecting national security.

- **(U)**  Although the document contains previously acknowledged facts 1-4 (see pages 5-11 of the revised Memorandum Decision and Order, dated June 23, 2015, issued in *ACLU v. U.S. Dep't of Justice*, Civil No. 12-794), such information cannot reasonably be segregated from material that has not been "officially acknowledged" and as to which FOIA exemptions have not been waived.  Specifically, this document contains currently and properly classified information, and the acknowledged facts are inextricably intertwined with otherwise classified information.  Moreover, the document remains exempt in its entirety under FOIA exemption 5 and the deliberative process privilege.

*Ruling: For the reasons articulated by the Government, this document need not be produced.*

**State Document No. 9:** ████████████████████

████████████████████████
████████████████████████
████████████████████████
████████████████████

TS/███████████

TS/ ███████████████████

████████████████████████████████
███████████████████████████████
██████████████████

The Government argues that this document is subject to the following FOIA

exemptions:

- ████████████████████ **This document is exempt under Section b(1)**
  **because it contains currently and properly classified information pertaining to**
  **intelligence sources and methods.** ████████████████
  ████████████████████████████
  ████████████████████████████████
  ███████████████████████████████
  ████████████████████████████████
  ██████████████████████████

  ████████████████████████████████
  ████████████████████████████████
  ████████████████████████████████

- ████████████████████████████████
  ████████████████████████████████
  █ █ ██ ████████████████████████
  ████████████████████████████████
  ████████████████████████████████
  ████████████████████████████████
  ██████████████████████████
  ████████

- ████████████████ **The document is exempt under Section**
  **(b)(5) and the deliberative process privilege because the memorandum and**
  **attached paper ask for** ██████████████████████
  ████████████████████████████

TS/ ██████████████████

—TS/█████████████████

████████████████████████████ demonstrating that the
document reflects an interim stage in the inter-agency decision-making process
regarding whether ██████████████████████████████

- (U)  This document is exempt under Section (b)(5) and the presidential
  communications privilege because it provides presidential direction to his most
  senior advisors.  These are confidential communications from the President to
  senior officials on sensitive topics, and disclosure would inhibit the President's
  ability to engage in effective communications and decision-making.

- (U)  Although the document contains previously acknowledged facts 1-4 (see
  pages 5-11 of the revised Memorandum Decision and Order, dated June 23, 2015,
  issued in *ACLU v. U.S. Dep't of Justice*, Civil No. 12-794), such information
  cannot reasonably be segregated from material that has not been officially
  acknowledged and as to which FOIA exemptions have not been waived.
  Specifically, this document contains currently and properly classified information,
  and the acknowledged facts are inextricably intertwined with otherwise classified
  information.  Moreover, the document remains exempt in its entirety under FOIA
  exemption 5 and the deliberative process privilege and the presidential
  communications privilege.

  *Ruling: For the reasons articulated by the Government, the document need not be*

*disclosed.*

**State Document No. 10:** (██████████████████████████████
████████████████████████████████
████████████████████████████████████
████████████████████████████████████
████████████████████████████████████
████████████████████████████████████
███████████████████████

     The Government argues that this document is subject to the following FOIA

exemptions:

—TS/█████████████████

TS/ █████████████████████

- █████ **The document is exempt under Section b(1) because it contains** currently and properly classified information pertaining to the military operations and foreign activities of the United States. █████████████████████



- █████ **The document is exempt under Section (b)(5) and the deliberative process privilege because the** █████████████████████ which represents an interim stage in the decision-making process. The disclosure of this type of pre-decisional and deliberative record would chill the full and frank discussion among agency personnel before a final agency decision. By revealing this document, the public may be confused about the U.S. government's actual position by prematurely disclosing preliminary views that could be interpreted as final decisions.

- (U) This document is exempt under Section (b)(5) and the presidential communications privilege because it reflects a communication from the Deputies and the Principals for purposes of presidential decision-making. The communication was received by the President's advisors, who are responsible for formulating advice on issues affecting national security.

- (U) Although the document contains previously acknowledged facts 1-4 (see pages 5-11 of the revised Memorandum Decision and Order, dated June 23, 2015, issued in *ACLU v. U.S. Dep't of Justice*, Civil No. 12-794), such information cannot reasonably be segregated from material that has not been officially acknowledged and as to which FOIA exemptions have not been waived. Specifically, this document contains currently and properly classified information, and the acknowledged facts are inextricably intertwined with otherwise classified information. Moreover, the document remains exempt in its entirety under FOIA exemption 5 and the deliberative process privilege.

*Ruling: For the reasons articulated by the Government, the document need not be disclosed.*

TS/ █████████████████████

TS/ ███████████████████

**State Document No. 11:** ████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

██████████████████████████████████████

████████████████████████████████████████

█████████████████████████

**State Document No. 12:** ███████████████████████

██████████████████████████████████

██████████████████████████████████

████████████████████████████████████████

████████████████████████████████

████████████████████████████████████████

█████████████████████████

The Government argues that these documents are subject to the following FOIA

exemptions:

- ███████████████████████████) Documents Nos. 11 and 12 are exempt under Section b(1) because they contain currently and properly classified information pertaining to intelligence sources and methods. ███████████
████████████████████████████████████████
████████████████████████████████████████
██████████████████████████████████████
███████████████████████████████████
██████████████████████████████████
████████████████████████████████████████
██████████████████

TS/ ████████████████████





The documents are also exempt under Section b(1) because it contains currently and properly classified information pertaining to the military operations and foreign activities of the United States.

- (U) Document Nos. 11 and 12 are exempt under Section (b)(5) and the deliberative process privilege because the summaries memorialize the Deputies' and Principals' preliminary approval of the supplemental guidance prior to a final decision by the President, which represents an interim stage in the decision-making process. The disclosure of this type of pre-decisional and deliberative records would chill the full and frank discussion among agency personnel before a final agency decision. By revealing these documents, the public may be confused about the U.S. government's actual position by prematurely disclosing preliminary views that could be interpreted as final decisions.

- (U) Document Nos. 11 and 12 are exempt under Section (b)(5) and the presidential communications privilege because they reflect communications from the Deputies and the Principals for purposes of presidential decision-making. The communications were received by the President's advisors, who are responsible for formulating advice on issues affecting national security.

- (U) Although Document Nos. 11 and 12 contain previously acknowledged facts 1-4 (see pages 5-11 of the revised Memorandum Decision and Order, dated June 23, 2015, issued in *ACLU v. U.S. Dep't of Justice*, Civil No. 12-794), such information cannot reasonably be segregated from material that has not been officially acknowledged and as to which FOIA exemptions have not been waived.

TS/

TS/██████████████

Specifically, these documents contain currently and properly classified information, and the acknowledged facts are inextricably intertwined with otherwise classified information. Moreover, the documents remain exempt in its entirety under FOIA exemption 5 and the deliberative process privilege and presidential communications privilege. (U)

*Ruling: For the reasons articulated by the Government, the documents need not be disclosed.*

**State Document No. 13**: ████████████████████

████████████████████████

████████████████████

████████████████████

███████████

The Government argues that this document is subject to the following FOIA exemptions:

- ██████████████ **This document is exempt under Section b(1) because it contains** currently and properly classified information pertaining to intelligence sources and methods. ████████████████
████████████████████████
████████████████████████
███████████████████████
████████████████████████
████████████████ As such, release of this information could reasonably be expected to cause damage, including exceptionally grave damage, to national security.

- ████████████ ██████ ████ ███ ████
████████████████████████
████████████████████████
████████████████████████

Jul. 25. 2016                    ─TS/█████████████████                   P. 7/21

████████████████████████████████████████████████
████████████████████████████████████
████████████████

- ██████████████████ **The document is exempt under Section (b)(5) and the deliberative process privilege because the memorandum** ██████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████ The disclosure of this type of record would undermine the Executive Branch's ability to formulate and implement a confidential deliberative process, not to mention inhibit the frank communications and free exchange of ideas that the privilege is designed to protect.

- (U) Although the document contains previously acknowledged facts 1-4 (see pages 5-11 of the revised Memorandum Decision and Order, dated June 23, 2015, issued in *ACLU v. U.S. Dep't of Justice*, Civil No. 12-794), such information cannot reasonably be segregated from material that has not been officially acknowledged and as to which FOIA exemptions have not been waived. Specifically, this document contains currently and properly classified information, and the acknowledged facts are inextricably intertwined with otherwise classified information. Moreover, the document remains exempt in its entirety under FOIA exemption 5 and the deliberative process privilege.

*Ruling: For the reasons articulated by the Government, this document need not be disclosed.*

<u>State Document No. 17</u>: ████████████████████████████



The Government argues that this document is subject to the following FOIA exemptions:

─TS/█████████████████

T-S/ ███████████████████



- ██████ The document is exempt under Section (b)(1) because the document discusses currently and properly classified information █████████████████
███████████████████████████
███████████████████████████
███████████████████████████████
████████████████████████████████
████████████████████████████
██████████████████

- (U) The document is exempt under Section (b)(5) and the deliberative process privilege because it summarizes the decision-making process of the ██████ █ █████████████
████████████████████████████
██████████████████████ disclosure would inhibit the frank communications and free exchange of ideas that the privilege is designed to protect. Finally, by revealing this document, the public may be confused about the U.S. government's actual position by prematurely disclosing preliminary views that could be interpreted as final decisions.

- (U) Although the document contains previously acknowledged facts 1-4 (see pages 5-11 of the revised Memorandum Decision and Order, dated June 23, 2015, issued in *ACLU v. U.S. Dep't of Justice*, Civil No. 12-794), such information cannot reasonably be segregated from material that has not been officially acknowledged and as to which FOIA exemptions have not been waived. Specifically, the document remains exempt in its entirety under FOIA exemption 5 and the deliberative process privilege.

*Ruling: For the reasons articulated by the Government, this document need not be disclosed.*

**State Document No. 18:** █████████████████████
███████████████████████████████
███████████████████████
████████████████████████████████

T-S/ ███████████████

TS/ ███████████████████

████████████████████████████████████

████████████

The Government argues that this document is subject to the following FOIA

exemptions:

- ███████████████████ **The document is exempt under Section (b)(1) because it contains currently and properly classified information pertaining to intelligence sources and methods.** ███████████████
████████████████████████████
████████████████████████████
████████████████████████**As such,**
release of this information could reasonably be expected to cause damage,
including exceptionally grave damage, to national security.
████████████████ Moreover, the document is exempt under
Section (b)(1) because it contains currently and properly classified information
pertaining to military operations and foreign activities of the United States.███
████████████████████████████
████████████████████████████
████████████████████████████
████████████████████████████
████████████

- ████████████████████████████
████████████████████████
████████████████████████████
████████████████████████
████████████████████████████
████████████████

- **(U)  This document is exempt under Section (b)(5) and the deliberative process privilege because the memorandum forwards recommended guidanc from the Deputies and the Principals prior to a final decision by the President,**

TS/ █████████████████

—TS/ ██████████████████

which represents an interim stage in the inter-agency decision-making process. The disclosure of this type of pre-decisional and deliberative record would chill the full and frank discussion among senior agency officials before a final agency decision. Further, by revealing this document, the public may be confused about the U.S. government's actual position by prematurely disclosing preliminary views that could be interpreted as final decisions.

- (U) This document is exempt under Section (b)(5) and the presidential communications privilege because it reflects communications from the Deputies and the Principals for purposes of presidential decision-making. The communications were received by the President's advisors, who are responsible for formulating advice on issues affecting national security.

- (U) Although the document contains previously acknowledged facts 1-4 (see pages 5-11 of the revised Memorandum Decision and Order, dated June 23, 2015, issued in *ACLU v. U.S. Dep't of Justice*, Civil No. 12-794), such information cannot reasonably be segregated from material that has not been officially acknowledged and as to which FOIA exemptions have not been waived. Specifically, this document contains currently and properly classified information, and the acknowledged facts are inextricably intertwined with otherwise classified information. The document also remains exempt in its entirety under FOIA exemption 5 and the deliberative process privilege and presidential communications privilege.

*Ruling: For the reasons articulated by the Government, this document need not be disclosed.*

**State Document No. 21:** ( ██████████████████████████

██████████████████████████████████

████████████████████████████████████████

██████████████████████████████████

██████████████████████████████████████

██████████████████████████████

**State Document No. 22:** ( ██████████████████████████

██████████████████████████████████████

—TS/ ██████████████████



The Government argues that these documents are subject to the following FOIA exemptions:

- ███████████████ Document Nos. 21 and 22 are exempt under Section (b)(1) because they contain currently and properly classified information pertaining to intelligence sources and methods. ███████████████ ███████████████████████████████ ███████████████████████████████ ███████████████████████████████ ████████████████████ As such, release of this information could reasonably be expected to cause damage, including exceptionally grave damage, to national security. ████████████████ The documents are also exempt under Section (b)(1) because they contain currently and properly classified information pertaining to military operations and foreign activities of the United States. ██

-

T̶S̶/ ███████████████████

- ███████████████████ **Document Nos. 21 and 22 are exempt under Section (b)(5) and the deliberative process privilege because** ███████
  ████████████████████████████████
  ████████████████████████████████
  which represents an interim stage in the inter-agency decision-making process. The disclosure of those types of pre-decisional and deliberative records would chill the full and frank discussion among the intelligence community before a final decision. Further, by revealing this document, the public may be confused about the U.S. government's actual position by prematurely disclosing preliminary views that could be interpreted as final decisions.

- ██████████████████ **Document Nos. 21 and 22 are exempt under Section (b)(5) and the attorney-client privilege because they reflect**
  ████████████████████████ █ ████ **The confidentiality of this guidance** has been maintained and the contents of this document were not shared beyond the interested parties. Revealing such communications would inhibit open communication between client-agencies and their lawyers.

- (U)  Although Document Nos. 21 and 22 contain previously acknowledged facts 1-4 (see pages 5-11 of the revised Memorandum Decision and Order, dated June 23, 2015, issued in *ACLU v. U.S. Dep't of Justice*, Civil No. 12-794), such information cannot reasonably be segregated from material that has not been officially acknowledged and as to which FOIA exemptions have not been waived. Specifically, this document contains currently and properly classified information, and the acknowledged facts are inextricably intertwined with otherwise classified information. The document also remains exempt in its entirety under FOIA exemption 5 and the deliberative process privilege and presidential communications privilege.

  *Ruling: For the reasons articulated by the Government, these documents need not*
  be disclosed.

T̶S̶/ ███████████████

TS/ ███████████████

## NATIONAL SECURITY DIVISION DOCUMENTS

███████████████████████

**NSD Document No. 1:** ████████████████████

████████████████████████████████

██████████████████████████

████████████████████████

**NSD Document No. 2:** ████████████████ █████████

████████████████████████████████

██████████████████████████████

██████████████████████████

██████████

**NSD Document No. 3:** █████████████████████ ████████

██████████████████████████████████

█████████████████████████████

███████████████████████████

█████████████████

**NSD Document No. 4:** ████████████████████

██████████████████████████████████

██████████████████████████████████

██████████████████████████████████

████████████████████

**NSD Document No. 5:** ████████████████ ███████████

████████████████████████████████

TS/ ███████████████

—TS/ ███████████████

████████████████████████████████████

████████████████████████████████████

██████

**NSD Document No. 6:** ████████████████ ████████████

████████████████████████████████████

████████████████████████████████████

███████████████████████████

**NSD Document No. 7:** ████████████████████████

████████████████████████████████████

██████████████████████████████████

████████████████████████

**NSD Document No. 8:** ████████████████████████

████████████████████████████████████

█████████████████████████████████

████████████████████████

The Government argues that these documents are subject to the following FOIA

exemptions:

- ██████████████████████████████████████
  ██████████████████████████████████████
  ██████████████████████████████████████
  ██████████████████████████████████████

- ████████████████████████ These documents are classified in full and
  exempt under (b)(1). They contain sensitive information about sources and
  methods, specifically ████████████████████████████████

—TS/ ████████████████

~~TS/~~ ██████████████████



- ████████████████ These documents are exempt under (b)(3), the National Security Act, because they disclose sensitive intelligence sources and methods, ██████████████████████████████████

- ████████████ These documents are exempt under (b)(5), the deliberative process privilege. ████████████████████████████████ The memoranda present relevant facts, law and policy for the Attorney General's consideration, and expressly speak in terms of recommendations. In addition, Documents 4, 5, 6 and 8 are marked "Draft." Documents 4 and 8 contain underlining and handwritten annotations, and Document 6 includes highlighting. These memoranda constitute pre-decisional views presented to a higher level decisionmaker, and their disclosure would chill the frank communications necessary for effective governmental decisionmaking.

- ████████████ These documents are exempt under (b)(5), the attorney client privilege. Each memorandum contains confidential legal advice from attorneys in the National Security Division, to their client, the Attorney General. ████████████████████████ The confidentiality of the document has been maintained.

185

—TS/█████████████████

- (U) These memoranda contain previously acknowledged facts 1-4, *see ACLU v. U.S. Dep't of Justice,* Civil No. 12-794, at 5-11. Nevertheless, those facts are entirely intertwined with material that is classified and privileged under the deliberative process and attorney client privileges, for which FOIA exemptions have not been waived.

*Rulings: For the reasons articulated by the Government, and most particularly for the reasons discussed at pages 13-17, supra, these documents need not be produced.*

██████████████████████████████

**NSD Document No. 9:** ████████████████████████

████████████████████████████████

████████████████████████████████

██████████

**NSD Document No. 10:** ████████████████████████

████████████████████████████████

█████████████████████████████ ████████

████████████████████

**NSD Document No. 11:** ████████████████ ████████████

████████████████████████████████

████████████████████████████████

████████

**NSD Document No. 12:** ███████████████████████

███████████████████████ █ ████████████

██████████████████████████████████████

TS/█████████████████

TS/███████████████████

**NSD Document No. 13:** ███████████████

██████████████████████

█████████████████████████

███████

**NSD Document No. 14:** ███████████████

███████████████████████

████████████████████

**NSD Document No. 15:** ███████████████

███████████████████████

███████████████████ ██ ██████

███████

The Government argues that these documents are subject to the following FOIA

exemptions:




) These documents are classified in full and exempt under (b)(1). They contain sensitive information about sources and methods, specifically

TS/████████████████

—TS/ ███████████████



- ███████████████ These documents are exempt under (b)(3), the National Security Act, because they disclose sensitive intelligence sources and methods. ████████████████████████████████████████████ ████████████████████████████████████████████ ████████████████████████████

- ██████ These documents are exempt under (b)(5), the deliberative process privilege. ████████████████████████████████████████████ ████████████████████████ The memoranda present relevant facts, law and policy for the Assistant Attorney General's consideration, and expressly speak in terms of recommendations. In addition, each document, except Document 10, is expressly marked "Draft." Documents 9, 13, 14 and 15 contain underlining and/or handwritten annotations, and Document 14 includes highlighting. These memoranda constitute pre-decisional views presented to a higher level decisionmaker, and their disclosure would chill the frank communications necessary for effective governmental decisionmaking.

- ██████ These documents are exempt under (b)(5), the attorney client (privilege. Each memorandum contains confidential legal advice from attorneys in the National Security Division, to their client, the Assistant Attorney General. █████ ████████████████████████ The confidentiality of the documents has been maintained.

- (U) These memoranda contain previously acknowledged facts 1-4, *see ACLU v. U.S. Dep't of Justice*, Civil No. 12-794, at 5-11. Nevertheless, those facts are entirely intertwined with material that is classified and privileged under the deliberative process and attorney client privileges, for which FOIA exemptions have not been waived.

188

TS/ ███████████████████

*Ruling: For the reasons articulated by the Government, and most particularly for the reasons discussed at pages 13-17, supra, these documents need not be produced.*

**Policy Memoranda (U):**

**NSD Document No. 16:** ████████████████ ██████ ████████
████████████████████████████████
█████████████████████████████████
██████████████████████████████
███████████████████████████
███████

**NSD Document No. 17:** ████████████████████████
████████████████████ ██████ ██████
█████████████████████████████
█████████████████████████████
████████████

**NSD Document No. 18:** ██████████████████████
█████████████████████████████
██████████████████████████████
██████████████████████████████
████████████ ████████████ ███ ████████
████████████████████████

The Government argues that these documents are subject to the following FOIA exemptions:

TS/ ████████████████

TS/███████████████████

- ████████████████ These documents are classified in full and exempt under (b)(1). They contain sensitive information about sources and methods,

███████████████████████████████████████
███████████████████████████████████████
███████████████████████████████████████
███████████████████████████████████████
███████████████████████████████████████
███████████████████████████████████████

- ████████████████ These documents are exempt under (b)(3), the National Security Act, because they disclose sensitive intelligence sources and methods,

███████████████████████████████████████
███████████████████████████████████████
███████████████████████████████████████

- ██████████ These documents are exempt under (b)(5), the deliberative process privilege.

███████████████████████████████████████
███████████████████████████████████████ Accordingly, each policy recommendation is predecisional to the Attorney General's ultimate decision. The memoranda present relevant facts, law and policy for the Assistant Attorney General's consideration, and expressly speak in terms of recommendations. In addition, each document, except Documents 16-18, is expressly marked "Draft." These memoranda constitute pre-decisional views presented to a higher level decisionmaker, and their disclosure would chill the frank communications necessary for effective governmental decisionmaking.

- ██████████ These documents are exempt under (b)(5), the attorney client privilege. Each memorandum contains confidential legal advice from attorneys in

TS/████████████████

TS/

the National Security Division, to their client, the Assistant Attorney General. The memoranda present facts, law, and policy to inform and advise the Assistant Attorney General in reaching a decision on the position of the National Security Division with respect to the particular policy issue. The confidentiality of the documents has been maintained.

- (U) These memoranda contain previously acknowledged facts 1-4, *see ACLU v. U.S. Dep't of Justice*, Civil No. 12-794, at 5-11, and two contain acknowledged fact 5. Nevertheless, those facts are entirely intertwined with material that is classified and privileged under the deliberative process and attorney client privileges, for which FOIA exemptions have not been waived.

*Rulings: For the reasons articulated by the Government, these documents need not be produced.*

### CONCLUSION

Except insofar as is specifically stated in connection with the ruling on a particular document, the Government's motion for summary judgment is granted and the ACLU's motion for summary judgment is denied.

This constitutes the decision and order of the court.

The Clerk is directed to remove the motions at Docket #32 and #37 from the Court's list of open motions.

Dated: July 21, 2016

*Signed August 8, 2016 and filed publicly.*

_____

United States District Chief Judge

BY ECF AFTER REDACTION

TS/